# *United States District Court
## For the
## District of Columbia

<table>
<tr><td></td><td>)</td><td>Case: 1:16-cv-02207     (H-Deck)</td></tr>
</table>

| | | |
|---|---|---|
| | ) | Case: 1:16-cv-02207 (H-Deck) |
| | ) | Assigned To : Boasberg, James E. |
| Marvin C. Arnold 4844 T6x45 Av/6- S.6. | ) | Assign. Date : 11/4/2016 |
| W.\>H/6'TD/J, D.C. | ) | Description: Employ Discrim. Jury Demand |
| Plaintiff 2oc/9 | ) | |
| | ) Jury Trial: Yes | |
| -v- | ) | |
| | ) | |
| | ) | |
| Ash Carter — Secretary of Defense | ) | |
| | ) | |
| Eric Fanning — Secretary of the Army | ) | |
| | ) | |
| Gen. Mark A. Milley-Army Chief of Staff | ) | |
| | ) | |
| LTC Nadja West-Army Surgeon General | ) | |
| | ) | |
| Defendants | ) | |

## COMPLAINT FOR A CIVIL ACTION

**The Parties to This Complaint.**

**A. The Plaintiff**

Marvin C. Arnold

4844 Texas Avenue, S.E.

Washington, D.C. 20019

314-667-5577

*format adopted from Pro Se 1 (Rev. 09/16) Complaint for a Civil Case, Pro Se Non Prisoner Handbook

1

## B. The Defendants

Defendant No. 1

Ash Carter, Secretary of Defense — Organization

1000 Defense Pentagon

Washington, D.C. 20301-1010

Defendant No. 2

Eric Fanning, Secretary of the Army — Organization

101 Army Pentagon

Washington, D.C. 20310-0101

Defendant No. 3

General Mark A. Milley, Army Chief of Staff— Organization

200 Army Pentagon

Washington, D.C. 20310-0200

Defendant No. 4

LTC General Nadja West, Surgeon General of the Army — Organization

7700 Arlington Boulevard, Suite 112

Defense Health Headquarters (DHHQ)

Falls Church, VA 22042

## II. Basis for Jurisdiction- Federal Question

Civil Rights Act of 1964 (P.L. 88-352, 78 Stat./241. July 2, 1964. Civil Rights Act of 1866, 14

Stat. 27-30, April 9, 1866. Age Discrimination in Employment Act of 1967, P.L. 90-202.

## III. Statement of Claim

As a result of persistent institutionally oriented, Racial/Age Discrimination that was accompanied by Employment Discrimination the Plaintiff was denied substantive employment related and Army benefits. As a result of bringing these discriminatory practices to light the Plaintiff had to constructively resign from his employment with the U.S. Army Europe. Plaintiff has filed a complaint with the Office of the Pentagon to no avail. Plaintiff Appealed to the Secretary of the Army to no avail and Plaintiff asked for assistance from the Surgeon General's Office channeling this information through the Equal Employment Office (EEO). Not only did Plaintiff seek assistance to no avail, one of the primary players who was involved when this complaint originated was subsequently hired as the Chief of Staff of the Office of the Army Surgeon General. This is not to besmirch this individual but to point out relevant information that may bear on this case.

## IV. Relief

This case was originated in September 2012 and has gone on for over 3 years with Plaintiff suffering. Plaintiff has gone through the entire government process of Commanders, Inspectors General, the EEO Office, Merit System Protection and the Equal Employment Opportunity Commission (EEOC) to no avail. Plaintiff has suffered tremendously in terms of loss wages, extreme grief to include pain and suffering. Plaintiff is asking the Court for relief in the amount of $25,000,000 for all damages to include punitive, punitive money and exemplary damages. It should be noted that in the most recent Decision of the EEOC (Encl 1), the Commission did not mention any of the evidence Plaintiff submitted as the Appellant in the earlier Appeal (See Appeal dated 3 June 2015 (Encl 2), and Reply to The Agency's Response to Appellant's Appeal, dated 15 Sep 2015 (Encl 3). Indeed in spite of the Plaintiff receiving a letter from the Assistant Direct of Compliance and Control Division saying all of the evidence would be considered (Encl 4), none of the evidence was mentioned in the Decision. The

3

evidence came from the original Report of Investigation (ROI) and it is relevant, so it should have been considered; it wasn't.

## V. Certification and Closing

Under Federal Rule of Civil Procedure, I certify to the best of my knowledge, information and belief that complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a non-frivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of appropriate Court Rules. Plaintiff has attached (enclosures/exhibits), EEOC ligation to support his complaint. Plaintiff will Move the Court to include these enclosures as evidence in future litigation.

Plaintiff agrees to provide the Clerk's Office with any changes in address where case-related papers may be served.

Marvin C. Arnold

Attorney Pro Se


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY THAT A TRUE AND CORRECT COPY OF THE FOREGOING COMPLAINT FOR A CIVIL ACTION WAS SERVED BY FIRST-CLASS MAIL, POSTAGE PREPAID, ON THE 4TH DAY OF NOVEMBER, 2016, UPON:

Ash Carter, Secretary of Defense

1000 Defense Pentagon

Washington, D.C. 20301-1010

Eric Fanning, Secretary of the Army

101 Army Pentagon

Washington, D.C. 20310-0101

General Mark A. Milley, Army Chief of Staff

200 Army Pentagon

Washington, D.C, 20310-0200

LTC General Nadja West, Surgeon General of the Army

7700 Arlington Boulevard, Suite 112

Defense Health Headquarters (DHHQ)

Falls Church, VA 22042

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**WASHINGTON FIELD OFFICE**
131 M Street, N.E. Room 4NW02F
Washington, D.C. 20507

| | | |
|---|---|---|
| Marvin Arnold, | ) | |
| Complainant, | ) | EEOC No. 570-2013-00934X |
| | ) | Agency No. ARENANS12OCT04343 |
| v. | ) | |
| | ) | AJ: Monique Cioffalo |
| John McHugh, Secretary, | ) | |
| U.S. Army, | ) | |
| Agency. | ) | June 3, 2015 |
| | ) | |

## ORDER ENTERING JUDGMENT

For the reasons set forth in the enclosed Decision dated June 3, 2015, judgment in the above-captioned matter is hereby entered. A Notice To The Parties explaining their appeal rights is attached to the Decision.

This office is also enclosing a copy of the Hearings Record (documents generated during the hearing process) for the Agency only.

It is so **ORDERED**.

For the Commission:

Monique Cioffalo
Administrative Judge

## CERTIFICATE OF SERVICE

For timeliness purposes, it shall be presumed that the parties received the foregoing ORDER

ENTERING JUDGMENT within five (5) calendar days after the date it was sent *via* first class

mail, or on the same date sent *via* email.

*Via U.S. Mail to:*

Department of the Army
EEO Compliance and Complaints Review
5825 21st Street, Building 214, Room 129
ATTN:SAMR-EO-CCR
Fort Belvoir, VA 22060-5921

*Via Email to·*

Joanne Dekker, Rosemary Dettling
Complainant's Representatives
JDekker@felsc.com, RDettling@felsc.com

David H. Roberts
Agency Representative
David.H.Roberts2.civ@mail.mil

| | | |
|---|---|---|
| Marvin Arnold, | ) | |
| Complainant, | ) | EEOC No. 570-2013-00934 |
| | ) | Agency No. AREUANS12OCT04343 |
| v. | ) | |
| | ) | AJ: Monique Cioffalo |
| John McHugh, Secretary, | ) | |
| U.S. Department of the Army, | ) | |
| Agency. | ) | June 3, 2015 |
| | ) | |

## DECISION

This Decision is issued without a hearing pursuant to 29 C.F.R. 1614.109(g)(2014)

Complainant has satisfied the procedural prerequisites for a hearing, but, after reviewing the

record before me, there are no issues of material fact or credibility and the evidence does not

warrant a hearing. *Anderson v Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v.

Catrett*, 477 U.S. 317 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587

(1986).[1]

---

[1] The Commission's regulations are patterned after the procedures and guidelines for summary judgment set forth in the Federal Rules of Civil Procedure *Pederson v Reno, Attorney General*, EEOC Request No. 05943334 (Feb 24, 1995). Summary judgment is appropriate if the pleadings, answers to interrogatories, admissions, affidavits and other materials show that there is no genuine issue as to any material fact, or credibility, and a party is entitled to judgment as a matter of law Fed. R. Civ. P. 56(c). Summary judgment is proper if a party fails to establish an essential element of her/his case on which s/he bears the burden of proof. *Celotex*, 477 U.S. at 323. In making this determination, the trier of fact must draw inferences from the record in the light most favorable to the opposing party. *Anderson*, 477 U.S at 255; *Celotex Corp.*, 477 U.S. at 330 n.2 (Brennan, J., concurring).

Only disputes over facts that might affect the outcome of the suit under governing law will preclude summary judgment. *Anderson*, 477 U.S. at 248. There is no genuine issue of *material* fact if the relevant evidence in the record, taken as a whole, indicates that a reasonable fact-finder could not return a verdict for the party opposing summary judgment. *Id.*, *Matsushita*, 475 U.S. at 587. Where the evidence is merely colorable or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249-50. Where the factual context renders her/his position implausible, the party opposing summary judgment must come forward with strong persuasive evidence to defeat it. *Matsushita*, 475 U S. at 587.

When opposing a properly supported motion for summary judgment, a party must respond with *specific facts* showing that there is a genuine issue of material fact and that the moving party is not entitled to judgment as a

On December 3, 2014, Administrative Judge ("AJ") Monique Cioffalo issued an Order of Acknowledgment and Scheduling of Initial Teleconference. On February 17, 2015, the Agency filed a Motion for Summary Judgment ("Agency's Motion"). On March 4, 2015, Complainant filed an Opposition to the Agency's Motion for Summary Judgment ("Complainant's Opposition"). On March 9, 2015, the Agency filed a Reply to the Complainant's Opposition.

I find that the investigative record has been adequately developed. The parties had the opportunity to engage in discovery for both complaints; Complainant was given ample notice of the Agency's Motion; the Agency provided a comprehensive statement of the allegedly undisputed facts; and the Complainant responded to the Agency's Motion. *Petty, Jr v. Department of Defense*, EEOC Appeal No. 01A24206 (July 11, 2002); *see also Murphy v Department of the Army*, EEOC Appeal No. 01A04099 (July 11, 2003). After consideration of the entire record (Report of Investigation, and the parties' submissions), and taking the facts in the light most favorable to Complainant, I hereby **GRANT** the Agency's Motion.

## ISSUES

Whether Complainant was discriminated against on the basis of his age (DOB: 08/23/1945) when on September 26, 2012 he was notified that he was not selected for the Supervisory Social Worker (Family Advocacy), GS-0185-13 position in Vilseck, Germany?

---

matter of law. *Anderson*, 477 U.S. at 250. An opposing party may not rest upon mere allegations or denials in the pleadings or upon conclusory statements in affidavits; rather, s/he must go beyond the pleadings and support her/his contentions with proper documentary evidence. *Celotex Corp.*, 477 U.S. at 324. To defeat summary judgment, a party must show that there is sufficient material evidence supporting the claimed factual dispute to require a fact finder to resolve the parties' differing versions of the truth at trial. *Anderson*, 477 U.S at 248-49.

**FINDINGS AND ANALYSIS**

A. Background[2]

1. On June 25, 2012, the Agency issued Job Announcement No. EUJJ12726235689646R for the position of Supervisory Social Worker (Family Advocacy), GS-0185-14 in Vilseck, Germany.

2. The Position Description for the Supervisory Social Worker position indicates seven basic duties: (1) Supervision and Family Advocacy Program (FAP) Management; (2) Risk and Clinical Assessment; (3) Compilation, Analysis, Decision Making, and Case Management; (4) Crisis Intervention; (5) Treatment; (6) Record Keeping; and (7) Training. The vacancy announcement further states that, among other requirements, applicants "must be able to obtain and maintain current Basic Life Support (BLS) Training and certification."

3. Complainant (DOB: 08/23/1945) timely applied for the vacancy. At the time of his application, Complainant had been a Family Advocacy Clinical Social Worker, GS-0185-12 in Bamburg, Germany since February 2010, and worked as a Family Advocacy Program Therapist in Bamburg, Germany since June 2009. Complainant's work history includes many years of related family advocacy and supervisory experience prior to holding these positions with the Agency.

4. Don L. Kreager ("Selectee") (Caucasian, YOB: 1965) also timely applied for the vacancy. At the time of his application, Selectee had been a Program Specialist with the Family Advocacy Program since May 2011, and serving as the Acting Program Manager since August

---

[2] The following facts are taken from the pleadings and exhibits submitted in this case and have been construed in the light most favorable to the Complainant.

2011. Selectee's resume also indicates several years of experience in clinical social working and supervisory experience in various other positions.

5. On July 9, 2013, the Agency's Human Resources office issued a Certificate of Eligibles, listing twelve eligible candidates for the position, including Complainant and the Selectee.

6. Brian Olden (Caucasian, YOB: 1948) was the Selecting Official for the position. Olden reviewed the applications of the referred candidates and decided to interview two candidates: Complainant and the Selectee.

7. Olden formed an interview panel consisting of himself, Deborah Scholz (Caucasian, YOB:1948), Anne Felde (White, YOB: 1965), Danya Stettler (Caucasian, YOB: 1968), Danielle Maaks (Caucasian, YOB: 1978), Elizabeth Foxall (White, YOB: 1948) and Heidi Johnson (White, YOB: 1975).

8. At the time of the interviews, Scholz was Complainant's first level supervisor. Felde served as the OIC of the Vilsek Behavioral Health Clinic, and would have some supervisory oversight of the eventual selectee. The remaining panel members would be the subordinates of the selectee.

9. The panel conducted the interviews in August 2012. The panel members asked the interviewees the same 12 questions, all of which were developed by Olden.

10. Following the interviews, the panel members provided Olden with their opinions of the candidates. All panel members provided their input via emails, with the exception of Felde and Foxhall, who provided their feedback orally. The panel members all provided feedback indicating that Complainant was not the best candidate for the position, with the exception of Foxhall, who stated that either candidate would be suitable for the position. Maaks did not

-4-

participate in the Selectee's interview, but provided feedback on Complainant's interview indicating that she would not recommend him for the position.

11. Several panel members included in their feedback that Complainant did not answer the interview questions as well as the Selectee, and that Complainant expressed negative views of the Army and the program at issue.

12. Several panel members expressed concern regarding the Selectee's less significant family advocacy experience relative to the Complainant, but nevertheless preferred him for the position.

13. Olden contacted references for both Complainant and the Selectee.

14. Regarding the Complainant, Olden received negative reports from Sholtz and Complainant's former supervisor, both of whom stated that they would not recommend him for the position. Both supervisors referenced Complainant's poor interpersonal skills. Complainant's listed references provided good feedback for Complainant, and one stated she would recommend him for the position.

15. Regarding the Selectee, Olden contacted his current and former supervisors. Both references gave positive feedback for the Selectee and both recommended Selectee for the position.

16. Olden ultimately selected the Selectee for the position. Complainant was informed of this decision via USAJobs on or about September 26, 2012.

B.    Analysis

In the absence of direct evidence, Complainant initially must establish, by a preponderance of the evidence, at least a *prima facie* case of discrimination. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 507 (1993); *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981); *McDonnell Douglas Corp v Green*, 411 U.S.792, 802 (1973). For a

case involving different treatment regarding terms and conditions of employment, Complainant may do so by proving that as a member of a protected group, he was treated differently than similarly situated persons not of his protected group. *Furnco Constr. Co. v. Waters*, 438 U.S. 567 (1978). Complainant may also show a *prima facie* case by setting forth sufficient evidence to create an inference of discrimination. *Burdine*, 450 U.S. at 254 n.7, *McDonnell Douglas*, 411 U.S. AT 802-03. With respect to age discrimination, Complainant may present a *prima facie* case by presenting evidence that he was treated differently from someone significantly younger. *O'Connor v. Consolidated Coin Caterers Inc.*, 517 U.S. 308, 313 (1996).

If Complainant establishes a *prima facie* case of discrimination, the burden then is on the Agency to articulate a legitimate, nondiscriminatory reason for its challenged actions. *Burdine*, 450 U.S. at 253-54; *McDonnell Douglas*, 411 U.S. at 802. If the Agency does so, the *prima facie* inference drops from the case. *Hicks*, 509 U.S. at 507, 510-11. Complainant then has to prove by a preponderance of the evidence that the proffered explanation is a pretext for unlawful discrimination. *Hicks*, 509 U.S. at 511; *Burdine*, 450 U.S. at 252-53; *McDonnell Douglas*, 411 U.S. at 804. Complainant always retains the ultimate burden of persuading the trier of fact that the agency unlawfully discriminated against her/him. *Hicks*, 509 U.S. at 511; *United States Postal Service Bd of Governors v. Aikens*, 460 U S. 711, 715 (1983).

Although the initial inquiry in a discrimination case usually focuses on whether Complainant has established a *prima facie* case, following this order of analysis is unnecessary when the Agency, as in this case, has articulated legitimate, nondiscriminatory reasons for its actions. *See Washington v Department of the Navy*, EEOC Petition No. 03900056 (May 31, 1990). In such cases the inquiry shifts from whether Complainant has established a *prima facie* case to whether she demonstrated by a preponderance of the evidence that the Agency's reasons

for its actions was merely a pretext for unlawful discrimination. *Cobb v. U.S.P.S*, EEOC Request No. 05A10393 (June 19, 2001). *Davis v. Dep't of the Army*, EEOC Appeal No. 01A10462 (June 19, 2002).

### Agency's Legitimate, Non-Discriminatory Reasons

Assuming, *arguendo*, that Complainant can establish a *prima facie* case of age discrimination, I find that the Agency has proffered a legitimate non-discriminatory reason for its actions. Specifically, Olden states that the Selectee provided better answers to interview questions than did the Complainant, in that the Selectee's answers were more specific and positive. Complainant's answers were more vague, pessimistic, condescending, and negative toward the Agency in general Olden also stated that he received only positive feedback from the Selectee's references, whereas the Complainant's current and former supervisors told Olden that they would not recommend Complainant for the position.

### Pretext

As the Agency has met its burden of articulation, to survive summary judgment the Complainant must establish a material fact at issue with respect to pretext. *United States Postal Service Bd of Gov. v. Aikens*, 460 U.S. 711, 717 (1983). Complainant has failed to present any evidence, and I otherwise find no evidence in the record to suggest that the Agency's proffered reasons for its actions are pretext for age discrimination.

It is well settled that the EEOC does not sit as a super-personnel department over any agency; the Agency may exercise its discretion in filling its vacancies, absent evidence of unlawful motivation. *Texas Dep't of Community Affairs v. Burdine*, 450 U S. 248, 259 (1981). *Texas Dep't of Community Affairs v Burdine*, 450 U.S. 248, 259 (1981). The Agency may exercise even more discretion when making selection for supervisory positions. Pretext may be

-7-

found where the complainant's qualifications are demonstrably superior to the selectee's. *See Bauer v. Bailar*, 647 F.2d 1037, 1048 (10th Cir. 1981); *Burdine*, 450 U.S. at 259.

Complainant has failed to show such a disparity in his qualifications and those of the selectee. Complainant argues that the Selectee is not basically qualified for the position because the Selectee did not have a BLS certification, which the Complainant did have. However, Complainant has failed to establish that the BLS certification was required for this position. Nothing in the vacancy announcement indicates that applicants must currently hold a BLS certification at the time of their application in order to be qualified for the position.[3]

Complainant also argues that he has far more experience with the Family Advocacy Program and as a supervisor than the Selectee. However, years of experience alone does not create a triable issue of fact. *See, e.g, Collins v. Dep't of Treasury*, EEOC Request No. 05A41248 (Oct 5, 2004), *Ropelewski v. U.S Postal Serv.*, EEOC Request No. 05940313 (Nov. 23, 1994). The Selectee had been working as an Acting Program Manager in Family Advocacy at the time of the selection, and had several years of social worker and supervisory experience prior to holding that position. The Agency acknowledged, both now and during the selection process, that Complainant had more technical experience with Family Advocacy and in supervision than the Selectee. However, the Selecting Official determined that Complainant's inferior interview performance, which he personally observed, and poor interpersonal skills, as reported by two of Complainant's three references, led to his conclusion that the Complainant was not the best applicant for the position. The Commission has held that reliance on supervisor

---

[3] Even if a BLS certification qualification was required at the time of application, as Complainant seems to argue, it is undisputed that the Agency's human resources staff rating Complainant as qualified and referred him to the Selecting Official. Complainant has not presented any facts suggesting that human resources was motivated by age discrimination in including the Selectee on the list of qualified applicants. Nor is there any indication that the Selecting Official's acceptance of the Selectee as a qualified applicant was in bad faith

recommendations is appropriate, and has upheld summary judgment where a complainant was not selected, despite far more years of experience, due in part to lower supervisor ratings. *See Taylor v. Soc. Sec. Admin.*, EEOC Appeal No. 0120093451(May 17, 2011).

The Complainant has not presented any evidence that the Agency's consideration of Complainant's interview performance and poor interpersonal skills was a pretext for age discrimination. Complainant does not dispute that he provided answers during his interview that could have been construed as negative, and admits that he was critical of the status quo in his responses. Though the panel members did not retain their written notes of the interviews, most of the panel members emailed the Selecting Official within days of Complainant's interview with their impressions of the candidates. Those emails also indicate Complainant's negative responses to the interview questions. Complainant also does not dispute the information provided by his current and former supervisors regarding his poor interpersonal skills. Rather, Complainant appears to argue that his technical experience should have been more important However, Complainant's mere disagreement regarding the Agency's assessment of his suitability for the position is not probative of pretext. Complainant's subjective belief that he was more qualified, however genuine, does not constitute evidence of pretext. *See Mroz v. Dep't of Defense*, EEOC Appeal No. 01A33187 (Jan. 23, 2004)

## CONCLUSION

The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1988). Complainant has failed to present any evidence creating a triable issue of fact with respect to the pretext of the Agency's legitimate reason for its actions or otherwise any evidence of

discriminatory motivation. As such, an award of summary judgment in favor of the Agency is appropriate.

It is so **ORDERED**:

For the Commission:

Monique Cioffalo
Administrative Judge
Monique.Cioffalo@eeoc.gov
Telephone: 202-419-0746
Facsimile: 202-419-0739
Monique.Cioffalo@eeoc.gov

-10-

**NOTICE TO THE PARTIES**

*TO THE AGENCY:*

Within forty (40) days of receiving this decision and the hearing record, you are required to issue a final order notifying the complainant whether or not you will fully implement this decision. You should also send a copy of your final order to the Administrative Judge.

Your final order must contain a notice of the complainant's right to appeal to the Office of Federal Operations, the right to file a civil action in a federal district court, the name of the proper defendant in any such lawsuit, the right to request the appointment of counsel and waiver of court costs or fees, and the applicable time limits for such appeal or lawsuit. A copy of EEOC Form 573 (Notice of Appeal/Petition) must be attached to your final order.

If your final order does not fully implement this decision, you must simultaneously file an appeal with the Office of Federal Operations in accordance with 29 C.F.R. 1614.403, and append a copy of your appeal to your final order. *See* EEOC Management Directive 110, November 9, 1999, Appendix O. You must also comply with the Interim Relief regulation set forth at 29 C.F.R. § 1614.505.

*TO THE COMPLAINANT*

You may file an appeal with the Commission's Office of Federal Operations when you receive a final order from the agency informing you whether the agency will or will not fully implement this decision. 29 C.F.R. § 1614.110(a). From the time you receive the agency's final order, you will have thirty (30) days to file an appeal. If the agency fails to issue a final order, you have the right to file your own appeal any time after the conclusion of the agency's (40) day period for issuing a final order. *See* EEO MD-110, 9-3. In either case, please attach a copy of this decision with your appeal.

Do not send your appeal to the Administrative Judge. Your appeal must be filed with the Office of Federal Operations at the address set forth below, and you must send a copy of your appeal to the agency at the same time that you file it with the Office of Federal Operations. In or attached to your appeal to the Office of Federal Operations, you must certify the date and method by which you sent a copy of your appeal to the agency.

*WHERE TO FILE AN APPEAL*

All appeals to the Commission must be filed by mail, hand delivery or facsimile.

BY MAIL:

Director, Office of Federal Operations
Equal Employment Opportunity Commission
Suite 5SW 12G
131 M Street, N.E.
Washington, D.C. 20507

BY FACSIMILE:

Number: (202) 663-7022

*Facsimile transmissions of more than ten (10) pages will not be accepted.*

## COMPLIANCE WITH AN AGENCY FINAL ACTION

Pursuant to 29 C.F.R. § 1614.504, an agency's final action that has not been the subject of an appeal to the Commission or a civil action is binding on the agency. If the complainant believes that the agency has failed to comply with the terms of this decision, the complainant shall notify the agency's EEO Director, in writing, of the alleged noncompliance within 30 days of when the complainant knew or should have known of the alleged noncompliance. The agency shall resolve the matter and respond to the complainant in writing. If the agency has not responded to the complainant, in writing, or if the complainant is not satisfied with the agency's attempt to resolve the matter, the complainant may appeal to the Commission for a determination of whether the agency has complied with the terms of its final action. The complainant may file such an appeal 35 days after serving the agency with the allegations of non-compliance, but must file an appeal within 30 days of receiving the agency's determination. A copy of the appeal must be served on the agency, and the agency may submit a response to the Commission within 30 days of receiving the notice of appeal.

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**WASHINGTON FIELD OFFICE**
131 M Street, N.E. Room 4NW02F
Washington, D.C. 20507

| | | |
|---|---|---|
| Marvin Arnold, | ) | |
| Complainant, | ) | EEOC No. 570-2013-00934X |
| | ) | Agency No. ARENANS12OCT04343 |
| v. | ) | |
| | ) | AJ: Monique Cioffalo |
| John McHugh, Secretary, | ) | |
| U.S. Army, | ) | |
| Agency. | ) | June 3, 2015 |
| | ) | |

### ORDER ENTERING JUDGMENT

For the reasons set forth in the enclosed Decision dated June 3, 2015, judgment in the above-captioned matter is hereby entered. A Notice To The Parties explaining their appeal rights is attached to the Decision.

This office is also enclosing a copy of the Hearings Record (documents generated during the hearing process) for the Agency only.

It is so **ORDERED**.

For the Commission:

Monique Cioffalo
Administrative Judge

**CERTIFICATE OF SERVICE**

For timeliness purposes, it shall be presumed that the parties received the foregoing ORDER

ENTERING JUDGMENT within five (5) calendar days after the date it was sent *via* first class

mail, or on the same date sent *via* email.

*Via U S. Mail to.*

Department of the Army
EEO Compliance and Complaints Review
5825 21st Street, Building 214, Room 129
ATTN:SAMR-EO-CCR
Fort Belvoir, VA 22060-5921

*Via Email to·*

Joanne Dekker, Rosemary Dettling
Complainant's Representatives
JDekker@felsc.com, RDettling@felsc.com

David H. Roberts
Agency Representative
David.H.Roberts2.civ@mail.mil

| | | |
|---|---|---|
| Marvin Arnold, | ) | EEOC Case No. 570-2013-00934X |
| Complainant, | ) | |
| | ) | Agency No. AREUANS12OCT04343 |
| vs. | ) | |
| | ) | |
| JOHN MCHUGH, Secretary, | ) | |
| U.S. DEPARTMENT OF THE ARMY, | ) | |
| Agency. | ) | Date: February 17, 2015 |
| | ) | |

## MOTION SUMMARY JUDGMENT

The Department of the Army (herein "Agency"), through its undersigned

representative, respectfully moves, pursuant to 29 C.F.R. § 1614.109(g), for issuance of a

recommended decision finding no discrimination, on the written record and without a

hearing. The Agency is entitled to judgment as a matter of law, because Complainant

cannot meet his burden of proving discrimination under any reasonable interpretation of the

undisputed facts.

## I.    STATEMENT OF UNDISPUTED MATERIAL FACTS

1.  From February 13, 2010 to October 13, 2013, Complainant was employed by the

    Agency as a Social Worker in the Federal Republic of Germany (Bamberg and

    Schweinfurt). Investigative File (IF) pg. 304[1].

2.  On June 25, 2012, the Agency issued Job Announcement EUJJ12726235689646R

    to recruit a Supervisory Social Worker in the Federal Republic of Germany

    (Vilseck). IF pgs. 207-213.

---

[1] References to the Investigative File refer to the page number in the lower right corner of the report.

3. On July 9, 2013, the Human Resources Office issued a Certificate of Eligibles, listing all of the eligible candidates that applied for the position. Twelve applicants were listed as eligible for selection. IF pgs. 216-218.

4. Brian Olden (White, Born in 1948), Chief Bavaria Behavioral Health served as the selecting official for Vacancy Announcement EUJJ12726235689646R. IF pgs. 312-313.

5. Mr. Olden reviewed the resumes looking for candidates with Family Advocacy Program (FAP) experience, selected two (2) candidates (Complainant and Mr. Kreager) to be interviewed, initiated reference checks for the selected interviewees and established a seven (7) person interview panel to conduct the interviews and make a hiring recommendation. IF pgs 313, 315-316, 257-267.

6. The reference checks resulted in Mr. Kreager receiving two (2) positive references, both asserting that they would hire Mr. Kreager for a management position. Complainant received three (3) less positive references, two of which stated they would not hire him again (Scholz) or recommend him for a management position (Adams). IF pgs 257-267.

7. The interview panel consisted of Brian Olden, Deborah Scholz, Anne Felde, Danya Stettler, Danielle Maaks, Elizabeth Foxall and Heidi Johnson; all of whom were employed by the Agency's Department of Behavioral Health. IF pgs. 251, 315-316.

8. The interview panel utilized a pre-determined list of questions to use during the interviews. IF pgs, 316, 323

2

9. The interview panel conducted the interviews of Complainant and Mr. Kreager. Afterwards they provided feedback to Mr.Olden and a recommendation on who should be selected for the position.

10. Ms. Johnson emailed Mr. Olden and recommended hiring Mr. Kreager, stating "[Complainant] had a seemingly pessimistic view of Army systems and leadership, organization....I did not feel that [Complainant] gave solid, concrete answers to anyone's questions...I was particularly concerned with his response about the FAP record system, which he did not seem to fully understand....we need a solid leader with commitment to teamwork and I didn't get that vibe from [Complainant]....Mr. Kreager appeared to be confident and clinically sound....[h]e has extensive experience in child protection...I'm somewhat concerned about his lack of FAP experience, but I had a feeling he would be committed and willing to learn....[h]e also seemed to be someone that would committed to open communication with staff." IF pg. 327.

11. Ms. Stettler recommend hiring Mr. Kreager, stating "[t]hough [Kreager] does not have much FAP experience I think he has positive energy and the skills to be able to learn what he doesn't know....[Kreager] would be able to get along with people and if needed be able to strongly support and advocate for FAP and his employees. I worry about [Complainant] because he did not seem to have the skills needed to be able to work with a variety of people especially if those people held different opinions from him....also worried because [Complainant] said we did not have a check list for our charts when we have very detailed checklists already in

use...[Complainant] appeared somewhat condescending throughout the whole interview and appeared fairly negative." IF pg. 328.

12. Ms. Maak was only part of Complainant's interview and did not recommend hiring Complainant for the position, stating her observation of the Complainant as "had difficulty answering questions in a concise and concrete manner....vague when answering how he would support staff, what he would change in the program to make it more efficient, and if he would assist in training new staff....negative regarding his current supervisor, who was part of the interview, which could indicate difficulty with authority or a (sic) inability to verbalize concerns appropriately with higher level staff....did not answer why he was interested in a leadership position at this time, as opposed to times in the past were he was asked to enter into leadership and declined those positions." IF pg. 329.

13. Ms Foxall provided verbal feedback to Mr. Olden stating that she believed either candidate would be acceptable. IF pg. 317.

14. Ms. Scholz is unclear on how she provided feedback to Mr. Olden, however she did note that the Complainant "did not answer any questions and talked around each question." IF pg. 383.

15. Ms. Felde provided verbal feedback to Mr. Olden recommending Mr. Kreager for the position based on his performance in the interview. IF pgs. 349-350

16. Thereafter, Mr. Olden selected Mr. Kreager for the Supervisory Social Worker position which Mr Kreager accepted and began working on November 4, 2012. IF pg. 269.

4

## II. LEGAL STANDARD FOR FINDINGS OF FACT AND CONCLUSIONS OF LAW WITHOUT A HEARING

The Commission has authority to grant this motion pursuant to 29 C.F.R. § 1614.109(g). Summary Judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as at matter of law. Fed. R. Civ. P. 56(c). The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). When the nonmoving party fails to make a "sufficient showing" on an essential element of his case with respect to which he has the burden of proof, "the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). When determining summary judgment the facts "must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 587 (1986), citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

To establish his claim of discrimination, Complainant must set forth a prima facie case setting out facts that raise an inference of discrimination. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). If Complainant can show a prima facie case, the burden shifts to the Agency to state a legitimate, nondiscriminatory reason for the alleged action. Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 252; McDonnell Douglas, 411 U.S. at 802. After the agency has offered the reason for its action, the burden returns to the complainant to demonstrate, by a preponderance of the evidence, that the agency's reason was pretextual, that is, it was not the true reason

5

or the action was influenced by legally impermissible criteria. <u>Burdine</u>, 450 U.S. at 252-53.

In a discrimination case, the governing law includes the methods of presumption and shifting burdens of production that the Supreme Court set forth in <u>McDonnell Douglas</u> and <u>Burdine</u>. Accordingly, a summary judgment decision is appropriate when the undisputed facts show that: (1) the complainant fails to establish a prima facie case of discrimination, or (2) the employing agency fails to articulate a legitimate nondiscriminatory reason for its actions, or (3) the complainant fails to establish that the agency's stated reason was a pretext for discrimination. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986); <u>Etokitoit v. Department of Commerce</u>, EEOC No. 01970554 (March 15, 2000).

## III. SUMMARY JUDGMENT IS APPROPRIATE AS COMPLAINANT CANNOT MEET HIS BURDEN OF PROOF ESTABLISHING PRETEXT.

The undisputed material facts establish that this case is ripe for summary judgment. The Agency does not dispute that the Complainant has established a prima facie case of alleged discrimination by alleging he is a member of a protected class (Black, Age 67) , was qualified but not selected for the Supervisory Social Worker position and a younger, white candidate was selected for the position. The Agency has provided a legitimate, non-discriminatory explanation for not selecting Complainant, namely that the selectee was better qualified for the position based on better references and better performance in the interview, to include more thorough answers to questions, more positive attitude and better inter-personal skills. Complainant has not provided any evidence, much less preponderant evidence, that the Agency's reason for not selecting Complainant was a pre-text for discrimination.

Under no set of facts can Complainant show that Mr. Olden's reason for Complainant's non-selection was a pretext for discrimination. Although the term "pretext" is considered to be "slippery", it refers "to evidence that the employer's explanation is false, that it is a lie, or that the employer's real motivation was discriminatory." Aka v. Washington Hospital Ctr., 156 F.3d 1284, 1288 (D.C. Cir. 1998); Kulumani v. Blue Cross Blue Shield Assoc., 224 F.3d 681 (7th Cir. 2000) ("A 'pretext for discrimination' means more than an unusual act; it means something worse than a business error; 'pretext' means deceit used to cover one's tracks." (citing, Reeves v. Sanderson Plumbing Prod., Inc., 530 U.S. 133, 146-147 (2000)).

In non-selection cases, the Commission has stated that pretext may be found where the complainant's qualifications are "plainly superior" to the selectees'. Peiper v. Department of Navy, EEOC Appeal No. 01983417 (June 27, 2001); citing Bauer v. Bailar, 647 F.2d 1037, 1048 (10th Cir. 1981). To establish evidence of pretext through comparative analysis of qualification, Complainant must establish that his qualifications are significantly more superior to the selectee. See Ash v. Tyson Foods, Inc., 546 U.S. 454 (2006). However, when choosing among highly qualified candidates for a position, a selecting official generally has broad discretion and should not be second-guessed by a reviewing authority, absent evidence of unlawful motivation. Cremona et al. v. Department of Energy, EEOC Appeal Nos. 01990639, 01990640, 01990641 (January 12, 2001), citing Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 259 (1981)). Further, when, as here, the Agency is selecting a candidate for a management level position the Agency has greater discretion in making their selection. Wrenn v. Gould, 808 F.2d 493, 502 (6th Cir. 1987). The Commission also recognizes that while the use of subjective criteria may offer a

convenient pretext for unlawful discrimination, subjective criteria are frequently relied upon in promotions to supervisory or management positions, and the use of such criteria is not, in and of itself, an indicator of discriminatory motivation. Wilson v. U.S. Postal Service, EEOC Request No. 05921062 (August 12, 1993). Finally the Commission acknowledges that subjectivity in the selection of a manager is inevitable because the qualities of a good manager are not readily susceptible to quantification. Fodale v. Department of Health and Human Services, EEOC Request No. 05960344 (October 16, 1998).

Complainant fails to provide any evidence that Mr. Olden's reasons for not selecting Complainant for the Supervisory position were pretext to discrimination. Mr. Olden explained that he reviewed the list of eligible candidates for the Supervisory Social Worker position looking for candidates with FAP experience. IF pgs. 314-315. After review, he selected Complainant and Mr. Kreager for interviews because they had the most FAP experience, as opposed to the majority of candidates that had only Army Substance Abuse Program (ASAP) experience. Id. Mr. Olden then established an interview panel of seven local FAP and behavioral health personnel (including Mr. Olden) to interview the candidates and provide Mr. Olden with feedback on the interviews and a recommendation for selection. IF pgs. 315-316. Further, he initiated reference checks and established a list of interview questions for the panel to utilize during the interviews. IF pgs. 316-317, 320-321. Based on the responses from the reference checks and the recommendations of the interview panel, Mr. Olden selected Mr. Kreager for the Supervisory Social Worker position. IF pg. 317.

The panel's evaluation of the candidates clearly indicates that the panel determined that Mr. Kreager was the best candidate for the position and that they based this

determination on legitimate, nondiscriminatory factors. The focus of the commentary regarding the candidates centered around the thoroughness of the candidates answers during the interview, observation of positivity/negativity and the interpersonal skills displayed during the interviews. Three of the panel members recommended hiring Mr. Kreager (Johnson (IF pg. 327), Stettler (IF pg. 328), Felde (IF pgs. 349-350)) Ms. Maak was only present during Complainant's interview and recommended not hiring Complainant for the position. IF pg. 329. Ms. Scholz does not appear to have provided a definitive recommendation, however she was critical of Complainant's performance in the interview. IF pg. 383. Finally, Ms. Foxall assessed either candidate to be acceptable for the position. IF pg. 317. Excluding Mr. Olden, of the six (6) remaining panel members; three (3) recommended Mr. Kreager, one (1) recommended not hiring Complainant, one (1) made no concise recommendation but criticized Complainant and one (1) felt either candidate would be acceptable. In total, five (5) members either recommended Mr. Kreager or criticized Complainant. The reason described for recommending Mr. Kreager or criticizing Complainant are completely appropriate and lack any indicia of discrimination.

Ms. Johnson criticized Complainant for not giving solid, concrete answers to questions, his pessimistic views and his lack of leadership skills. Additionally she noted that Complainant apparently didn't fully understand the FAP record system. While specifically noting Mr. Kreager's limited FAP experience, she found him to be confident, clinically sound, experienced in child protection, committed to learning and open communication with his subordinates.

Ms. Stettler stated that Complainant didn't have the skills to work with a variety of people especially if Complainant had a different opinion, that he misstated the availability of

9

FAP checklists and he appeared to be condescending and negative throughout the interview. She acknowledges Mr. Kreager's lesser FAP experience, but assessed him as having positive energy, the ability to learn what he doesn't know, interpersonal skills and the ability to support his employees.

Ms. Maaks only participated in Complainant's interview, specifically referenced his extensive FAP/Supervisory experience but recommended not hiring Complainant based on her observations that Complainant had difficulty in the interview answering questions in a concise and concrete manner, vague replies on how he would support staff or what he would change in the program, negative regarding his supervisor, possible difficulty with authority and did not address why he was now interested in a leadership position when had previously declined the same.

Ms Scholz criticized Complainant for not answering or talking around questions.

In addition to soliciting the feedback and recommendations of the interview panel, Mr. Olden also relied upon responses from previous supervisors. In soliciting references, Mr. Olden asked them to address the applicant's management experience and successes, ability to execute the FAP program as a supervisor, the applicant's ability to work cooperatively in a team setting, areas the applicant could grow as a provider/manager and whether the reference would hire the applicant as a manager. IF pg. 260-261. Mr. Kreager received objectively better responses to these questions, most notably in addressing his supervisory and inter-personal communication abilities. Ms Lamson-Poeschel described Mr. Kreager as a motivated leader, his teams work well together, supportive of his team, good leader, valued member of the team, no issues in partnering, no problems with anyone else, liked by everyone in the community and finally opined that she would hire him again

10

and would work for him if given the opportunity. IF pgs. 257-258. Ms. Picha assessed Mr. Kreager as someone she trusted to cover for her when she is out of the office, knew his job, well respected, heard no complainants about his management style while he was covering for her, smart, honest, handles staff respectfully, people person that enjoys collaboration and that she would absolutely hire him again. IF pg. 259. In contrast, while Complainant's reference provided generally positive comments concerning his clinical performance, two of the three provided objectively less positive assessments of Complainant's inter-personal skills and ability to work on a team. Ms. Scholz states the Complainant does not appear to be a team player, often opposes others, alienated several members of the team and says that she would not hire him again. IF pg. 262. Mr. Adams assesses Complainant as having done adequately while serving as the acting Chief, managed the team well and without conflict; however he goes on to state that he (Mr. Adams) had to address conflicts between Complainant and other staff members when Complainant reported acted hostile to opposing opinions, Complainant was resistant to supervision, needs to address his ability to accept supervision, comes across as negative and hostile, has to learn to keep his negative opinions to himself and not try to split staff. Ultimately, Mr. Adams states that he "would have serious reservations about re-hiring [Complainant] as a manger until he is able to improve his interactions staff and be aware of the impact his negativity has on those who work closely with him. He is a good clinician and he understand (sic) the FAP program will but his presence on our staff was divisive... I would not recommend him for a management position." IF pgs. 266-267.

11

Mr Olden's reason for Complainant's non-selection was that Complainant's references were objectively worse than Mr. Kreager and Mr. Kreager performed better during the interview for the position. Complainant cannot produce any evidence to show that this reason is false, a lie, or that Mr. Olden's real motivation was discriminatory.

Complainant generally alleges that Mr. Kreager "does not come to my level of experience, education or general knowledge of the military and Clinical Family Advocacy Program." IF pg. 20. He further alleges that Mr. Kreager did not have his Basic Life Support Certification (BLS) prior to selection for the Supervisory Social Worker position. Id. and IF pg. 307. Complainant points out that he is a Board Approved Clinical Supervisor and Board Certified Diplomate, in addition he has served as a supervisor, a dean and worked for an accreditation agency. If pg. 307. He does not address the qualifications of Mr. Kreager, but does summarily conclude that Mr. Kreagers skills "cannot compare to my skill level". Id.

Complainant's arguments regarding Mr. Kreager's lack of BLS certification is misplaced. The qualifications for this position required that all health care providers must be able to obtain and maintain BLS. IF pg. 209. Clearly, the selectee for the position was not required to have a BLS certificate when they were selected, they were simply required to be able to obtain the certification and maintain that certification during their employment in the position. Complainant has made no argument that Mr. Kreager was ineligible or unable to obtain this certification, he simply argues that Mr. Kreager did not have it when he was selected for the position, a fact that is irrelevant to the question of whether Mr. Kreager was able to obtain the certification. Likewise, Complainant's reliance upon his education, certifications and experience are also unavailing. The record in this case is clear, the

12

interview panel and Mr. Olden, were heavily influenced by the applicant's interview performance and how well they perceived the applicant's ability to collaborate, lead, engage in interpersonal communication and their overall optimism/negativity. These are all relevant factors to be considered when hiring a manager and the majority of the panel assessed Mr. Kreager's skills in these areas to be more desirable than those of Complainant's.

Assuming Complainant's experience was superior to that of Mr. Kreager, there is no dispute that Mr. Kreager was fully qualified for the position, simply Complainant wants to persuade the Commission that he was better qualified. However, hiring a manager isn't a mathematical exercise where you add up years of experience, certifications and degrees and then hire the person with the "highest" score. The Agency is not obligated to weigh relevant factors in a manner that is pleasing to Complainant or give greater weight to experience instead of other relevant factors, such as leadership ability, interpersonal skills and ability to work as part of a team. Cremona v. Department of Energy, EEOC Appeal No. 01990639 (January 12, 2001) (no evidence of discrimination despite the fact that the selectee did not have the length or breadth of experience the complainant had but was qualified for the position).

Mr. Olden's reason for selecting Mr. Kreager is simple, he believed Mr. Kreager to be a better candidate for this Supervisory position. His assessment is supported by relevant references and the interview panel's feedback and recommendations.

WHEREFORE, there being no material facts in dispute, the Agency having articulated legitimate non-discriminatory reasons for its actions, and Complainant having failed to produce any evidence of pretext, the Agency respectfully requests that Agency's Motion for Findings and Conclusions Without a Hearing be granted.

Respectfully submitted,

DAVID H. ROBERTS
Grafenwoehr Legal Center,
CMR 415, Unit 28130
APO, AE 09114

david.h.roberts2.civ@mail.mil

14

## CERTIFICATE OF SERVICE

I hereby certify that on December 10, 2014, true copies of the foregoing document were served on the following by the method indicated:

Administrative Judge Monique Cioffalo      VIA EMAIL
U.S. EEOC – Washington Field Office      monique.cioffalo@eeoc.gov
131 M Street, N.E. Room 4NW02F
Washington, D.C. 20507

Ms. Joanne Dekker, Esq      VIA EMAIL
16848 Hamilton Station Road      jdekker@felsc.com
Hamilton, VA 20158

David H. Roberts

| | | |
|---|---|---|
| Marvin Arnold, | ) | EEOC Case No. 570-2013-00934X |
| Complainant, | ) | |
| | ) | Agency No. AREUANS12OCT04343 |
| vs. | ) | |
| | ) | |
| JOHN MCHUGH, Secretary, | ) | |
| U.S. DEPARTMENT OF THE ARMY, | ) | |
| Agency. | ) | Date: March 9, 2015 |
| | ) | |

## AGENCY'S REPLY TO COMPLAINANT'S OPPOSITION TO AGENCY'S MOTION FOR SUMMARY JUDGMENT

The Department of the Army, through its undersigned representative, files this

Reply to Complainant's Opposition to the Agency's Motion for Summary Judgment.

The Agency maintains that summary judgment is appropriate in this case because

Complainant has not met his burden of establishing disputed material facts in

support of his claim of discrimination.

### Complainant Has Failed to Meet His Burden in Opposition to Agency's Motion for Summary Judgment

In response to Agency's Motion for Summary Judgment, Complainant filed an

Opposition to the Agency's Motion for Summary Judgment. The Agency contends

that Complainant has failed to come forth with sufficiently specific evidence to

establish a genuine issue of fact warranting a hearing. Instead, Complainant

continues to rely upon pure speculation and allegations in an attempt to create a

factual dispute, where none exists.

1

As thoroughly briefed in the Agency's initial motion, a party is entitled to summary judgment if the evidence in the record "show[s] that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." The Supreme Court has emphasized that the "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986). When the nonmoving party fails to make a "sufficient showing" on an essential element of his case with respect to which he has the burden of proof, "the moving party is entitled to judgment as a matter of law." Id. at 323.

The Supreme Court issued a series of opinions in 1986 that clarified the standards generally governing motions for summary judgment. See Celotex; Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). In Celotex, the Court explained that a party moving for summary judgment need not prove the absence of an essential element of the nonmoving party's case. Celotex, 477 U.S. at 325. Rather, "the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court - - that there is an absence of evidence to support the nonmoving party's case." Id. When the moving party meets this initial obligation, **the nonmoving party may not rest on mere allegations, but "must come forward with specific facts showing that there is a genuine issue for trial**." Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)(emphasis added)).

2

The Supreme Court has also stated that some weighing of the evidence is appropriate at the summary judgment stage. Specifically, the Court noted that the "purpose of summary judgment is to pierce the pleadings, and to assess the proof in order to see whether there is a need for trial." Matsushita, 475 U.S. at 587 (quoting Committee Note to 1963 Amendment of Fed. R. Civ. P. 56(e)(internal quotations omitted)). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonparty for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Liberty Lobby, 477 U.S. at 249-50 (citations omitted). The party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586.

In the instant case, the Complainant has failed to come forth with specific facts showing that there is a genuine issue for hearing. Instead he relies upon conclusory allegations and unsupported speculation. Complainant's attempts to defeat summary judgment based on his stated grounds are insufficient to withstand a motion for summary judgment.

To support his opposition to the motion for summary judgment, Complaint essentially alleges that the stated legitimate nondiscriminatory reason for making the selection was pretext for discrimination by alleging that the Complainant was substantially better qualified based on his education and experience; that the selectee was not qualified because he did not have his Basic Life Support Certification (BLS); and that the hiring process was "flawed and designed to give...[the] white selectee the

position. In support of these allegations, Complaint fails to identify any genuine issue of material fact that would warrant a hearing in this case.

Neither the Complainant's nor the selectee's education and experience are in dispute. Except for the issue concerning the BLS certificate (discussed below), it is undisputed that both were fully qualified for the position. There is no dispute that Complainant had more years of experience, that Complainant has attained a higher education degree (Doctorate versus Masters) or that the selectee had less supervisory experience than Complainant. It is further undisputed that the selection panel overwhelmingly assessed the selectee as a better candidate for the supervisory position and that the references for the selectee provided objectively better assessments of the selectee's supervisory potential versus that of the assessments provided by Complainant's references. The Agency's legitimate, non-discriminatory reason for selecting the selectee over Complainant is a simple as the hiring official, based on recommendations of the selection panel and reference checks, determined that the selectee was a better candidate for the position. Complainant has not provided a single fact that would tend to establish the hiring decision in this case was based on discrimination or that the Agency's reason for not selecting Complainant was pretext. Complainant certainly disagrees with the decision that was made, makes bold allegations of discrimination and ultimately concludes that discrimination is the only possible explanation for his nonselection. However, Complainant fails to follow up his allegations with the identification of any disputed material fact.

Complainant alleges the selection panel was "flawed and designed" to hide illegal discrimination. This allegation is supported by a confusing recitation of established

facts that must allege some level of conspiracy, but fails to even suggest the rudimentary working of the conspiracy. Complainant accurate describes the deciding official's process for selecting the candidates to be interviewed, forming a panel, checking references and developing questions for the interviews. Complainant then identifies the age, race and gender of each member of the selection panel, restates portions of the interview assessments made by each of the members and then attempts to attack their unrebutted assessments of the interviews. Complainant does not assert any fact that would tend to call the panel members' stated observations into question or that would warrant any further examination of their motivations. Simply, Complainant says there assessment was wrong, with no evidence to indicate they were wrong or that they were acting with discriminatory animus. This all occurred, according to Complainant, in an intentionally flawed selection process. Assumedly the person that intended to flaw the selection process was the hiring official, but Complainant falls short of actually alleging this conspiracy, much less supporting that allegation with facts.

Complainant concludes, without the assistance of any rational basis, that the "negativity" reported by many members of the panel was based on his candid answers, his stated belief that he could improve the system and their assessment that the selectee would be more "easy-going". Not only are these conclusions based in nothing more than sheer speculation, his assertions are rebutted by the testimony of the selection panel. It is unclear if this allegation is in furtherance of his vague conspiracy allegation or an independent attack on the testimony of the interview panel members. In any case, neither allegation tends creates a dispute of the established facts.

Complainant appears to attack the fact that some of the panel members were subsequently under the selectee's supervision during the investigation and exchange of discovery in this case. Complainant does not directly allege that the selectee influenced the witnesses' testimony, but certainly goes to great lengths to make that inference. It is understandable that Complainant would not provide any meaningful analysis to this conjecture as there is absolutely no factual basis to support this claim. Despite an investigation and full discovery, Complainant has failed to identify any fact that would support this incredibly vicious allegation of deceit and cover-up.

Finally, Complainant attempts to create a factual dispute concerning the mandatory requirements for the position. Complainant asserts that the selectee was not qualified for the position because he did not have his BLS certification. This assertion is contradicted by the clear and unambiguously plain language of the requirement that "[a]ll health care providers must be able to obtain and maintain Basic Life Support (BLS) training and certification." IF pg. 210. Clearly, the selectee need only be capable of obtaining training in BLS and acquire the certification. This requirement is clearly intended to mean that the selectee must, if not already attained, attend and sufficiently complete a training course in the future. If the requirement was intended to be a pre-requisite, the requirement would read similarly to the licensure requirement which states "[a] current, valid and unrestricted MSW state license to practice clinical social work independently...is required and must be maintained." IF pg. 209. The licensing requirement is clearly a current requirement and the BLS requirement is clearly a future requirement if the selectee doesn't already have the training and certification. Frankly, there is no other plausible reading of the BLS requirement.

## Conclusion

Complainant's attempts to inject dispute into the factually undisputed evidence in this case is insufficient to establish any genuine issue of fact. As a result, the Agency's Motion for Summary Judgment should be granted.

Respectfully submitted,

_____—S----_____
DAVID H. ROBERTS
Grafenwoehr Legal Center,
CMR 415, Unit 28130
APO, AE 09114

david.h.roberts2.civ@mail.mil

## CERTIFICATE OF SERVICE

I hereby certify that on March 9, 2015, true copies of the foregoing document were served on the following by the method indicated:

Administrative Judge Monique Cioffalo
U.S. EEOC – Washington Field Office
131 M Street, N.E. Room 4NW02F
Washington, D.C. 20507

VIA EMAIL
monique.cioffalo@eeoc.gov

Ms. Joanne Dekker, Esq
16848 Hamilton Station Road
Hamilton, VA 20158

VIA EMAIL
jdekker@felsc.com

_____
David H. Roberts

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
WASHINGTON FIELD OFFICE
131 M Street, N.E. Room 4NW02F
Washington, D.C. 20507

| | |
|---|---|
| Marvin Arnold,           ) | EEOC Case No. 570-2013-00934X |
|     *Complainant,*     ) | |
|           ) | Agency No. AREUANS12OCT04343 |
|     vs.       ) | |
|           ) | |
| JOHN MCHUGH, Secretary,   ) | |
| U.S. DEPARTMENT OF THE ARMY,  ) | |
|     *Agency.*      ) | Date: March 9, 2015 |
|           ) | |

## AGENCY'S REPLY TO COMPLAINANT'S OPPOSITION TO AGENCY'S MOTION FOR SUMMARY JUDGMENT

The Department of the Army, through its undersigned representative, files this Reply to Complainant's Opposition to the Agency's Motion for Summary Judgment. The Agency maintains that summary judgment is appropriate in this case because Complainant has not met his burden of establishing disputed material facts in support of his claim of discrimination.

### Complainant Has Failed to Meet His Burden in Opposition to Agency's Motion for Summary Judgment

In response to Agency's Motion for Summary Judgment, Complainant filed an Opposition to the Agency's Motion for Summary Judgment. The Agency contends that Complainant has failed to come forth with sufficiently specific evidence to establish a genuine issue of fact warranting a hearing. Instead, Complainant continues to rely upon pure speculation and allegations in an attempt to create a factual dispute, where none exists.

1

As thoroughly briefed in the Agency's initial motion, a party is entitled to summary judgment if the evidence in the record "show[s] that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." The Supreme Court has emphasized that the "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986). When the nonmoving party fails to make a "sufficient showing" on an essential element of his case with respect to which he has the burden of proof, "the moving party is entitled to judgment as a matter of law." Id. at 323.

The Supreme Court issued a series of opinions in 1986 that clarified the standards generally governing motions for summary judgment. See Celotex; Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). In Celotex, the Court explained that a party moving for summary judgment need not prove the absence of an essential element of the nonmoving party's case. Celotex, 477 U.S. at 325. Rather, "the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court - - that there is an absence of evidence to support the nonmoving party's case." Id. When the moving party meets this initial obligation, **the nonmoving party may not rest on mere allegations, but "must come forward with specific facts showing that there is a genuine issue for trial**." Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)(emphasis added)).

2

The Supreme Court has also stated that some weighing of the evidence is appropriate at the summary judgment stage. Specifically, the Court noted that the "purpose of summary judgment is to pierce the pleadings, and to assess the proof in order to see whether there is a need for trial." Matsushita, 475 U.S. at 587 (quoting Committee Note to 1963 Amendment of Fed. R. Civ. P. 56(e)(internal quotations omitted)). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonparty for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Liberty Lobby, 477 U.S. at 249-50 (citations omitted). The party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586.

In the instant case, the Complainant has failed to come forth with specific facts showing that there is a genuine issue for hearing. Instead he relies upon conclusory allegations and unsupported speculation. Complainant's attempts to defeat summary judgment based on his stated grounds are insufficient to withstand a motion for summary judgment.

To support his opposition to the motion for summary judgment, Complaint essentially alleges that the stated legitimate nondiscriminatory reason for making the selection was pretext for discrimination by alleging that the Complainant was substantially better qualified based on his education and experience; that the selectee was not qualified because he did not have his Basic Life Support Certification (BLS); and that the hiring process was "flawed and designed to give...[the] white selectee the

**Director, Office of Federal Operations**
**EQUAL OPPORTUNITY EMPLOYMENT COMMISSION**
Suite 5SW 12G
131 M Street, N.E.
Washington, D.C. 20507
15 September 2015

**Marvin Arnold**
  **Appellant**

**EEOC No. 570-2013-00934**
**AREUANS12OCT04343**
**Document #0120152389**

V

**John McHugh, Secretary**
 **U.S. Department of the Army**
    **Defendant**

## Reply to The Agency's Response to Appellant's Appeal

The Agency Attorney in his quest to get the decision of his choice has failed to understand or recognize a number of essential issues: Mr. Kreager, the person selected for the position, was not minimally qualified for the job. As such he should not have been allowed to compete and he certainly should not have been selected. Mr. Kreager did not have his BLS Certification which is/was a requirement for the position (see initial Appeal). Not only did Mr. Kreager fail to have his BLS Certification, he submitted a state license to practice Social Work Independently with his application packet (Social Worker Independent Clinical License) that was expired (ROI pages 237-249, specifically page 244, Att 1). This behavior alone placed the Agency in jeopardy, subjecting the Army to legal action from anyone who interacted with Mr. Kreager professionally. Why the Civilian Personnel Office (CPO) allowed such antics is beyond comprehension. Additionally, the process that was constructed for the interview of the Appellant was wrought with illegitimacy as it did not adhere to the Civilian Personnel's standards for conducting interviews as stated by Mr. Olden himself in his Declaration (see also page 252 of the ROI).

It seems, in the mind of the Agency Attorney there does not exist any such thing as "material fact". To again rebut this assertion the Appellant has attached information from the Appellant's Opposition to Summary Judgment (Att 2). In consideration of **ALL** of the evidence submitted Appellant directs the reader to the Case Law cited and to specific sections relating to the Establishment of a Prima Facie case and issues of Case Law relating to Issues of Material Fact. Clearly there are genuine, legitimate issues of Material Facts documented such that any reasonable person, i.e. fact finder, looking at **ALL** of the information would find in favor of the non-moving party. Quoting from the Appellant's Opposition to Summary Judgement, "An issue of fact is "genuine" if the evidence is such that a reasonable fact finder could find in favor of the non-moving party. Celotex v. Catrett, 477 U.S. 317, 322-23 (1986); Oliver v. Digital Equip. Corp., 846 F.2d 103, 105 (1st Cir. 1988). A fact is "material" if it has the potential to affect the outcome of the case. If a case can only be resolved by weighing conflicting evidence then the trier of fact should hold a hearing. Further: The courts have been clear that summary judgment is not to be used as a "trial by affidavit." Redmond v. Warrener, 516 F.2d 766, 768 (1st Cir. 1975). The Commission has noted that when a party submits an affidavit and credibility is at issue, "there is a need for strident cross-examination and summary judgment on such evidence is improper." Pedersen v. Department of Justice, EEOC Request No. 05940339 (February 24, 1995). "Truncation of this process, while material facts are still in dispute and the credibility of witnesses is still ripe for challenge, improperly deprives Complainant of a full and fair investigation of her claims." Mi S. Bang v. United States Postal Service, EEOC Appeal No. 01961575 (March 26, 1998); See also Peavley v. United States Postal Service, EEOC Request No. 05950628 (October 31, 1996); Chronister v. United States Postal Service, EEOC Request No. 05940578 (April 23, 1995). The hearing process is intended to be an extension of the investigative process, designed to "ensure that the parties have a fair and reasonable opportunity to explain and supplement the record

3

and to examine and cross-examine witnesses." See EEOC Management Directive (MD) 110, November 9, 1999, chapter 6, page 6-1; see also 29 C.F.R. Sec. 1614.109 (d) and (e).

When evaluating motions for summary judgment in the context of employment discrimination, the federal courts have "emphasized the importance of zealously guarding an employee's right to a full trial, since discrimination claims are frequently difficult to prove without a full airing of the evidence and an opportunity to evaluate the credibility of the witnesses." McGinest v. GTE Service Corp., 360 F.3d 1103, 1112 (9th Cir. 2004) (citations omitted); see also Oncale v. Sundowner Offshore Serv., Inc., 523 U.S. 75, 8182 (1998) ("The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed."). It is clear that the legal standard has been met for a Hearing as there is indisputable genuine issues of Material Fact. All of the standards to satisfy the conditions for a Hearing has been met as per the Agency Attorney's own arguments.

The Agency Attorney refers to Appellant's allegations that the young women on the interview panel were pressured and there is no evidence that this occurred. The Appellant is in receipt of information that Mr. Olden may have had a personal relationship with one of the panel members and indeed, cross examination during a Hearing could shed light on this issue.

The Agency Attorney's conclusions regarding a supervisor's sexual harassment of an employee and his ability to objectively evaluate that employee is startling. I suppose this information should be conveyed to the multitude of women who have been sexually harassed. The Agency Attorney goes on to say that the other supervisor, "gave him a positive evaluation after providing her fairly negative reference." The supervisor did not just give a "fairly negative reference", she

made it appear that the Appellant was the worst person on earth and in her words the Appellant should not be hired for anything (see original Appeal). If this is not a conflict then something else is operating on the order of Multiple Personalities.

To the Agency Attorney's statement regarding Appellant's former Attorney it should be noted that these conclusions are the Agency Attorney's and they may or may not be true. What is absolutely true is that a Prima Facie Case has been made and the Agency's pretext for its wrongheaded decision has been made.

The Appellant request a Reversal of the AJ's Decision and Order and that a Summary Judgement is directed for the Appellant. The Appellant further requests placement in the job he should have received in Europe, compensation for lost wages and entitlements, monetary award for pain and suffering and fees he had to endure.

Marvin C. Arnold
Attorney Pro Se

Copy to:

Attorney David H. Roberts
CMR 415, Unit 28130
APO AE 09114-8130
David.h.roberts2.civ@mail.mil

U.S. Army Garrison, Ansbach
Attn: IMAN-EE
Unit 28614
APO AE 09177

ATT #1

By the authority of RCW 18.225 this person

**DON L KREAGER**

is granted a

**Social Worker Independent Clinical License**

Status

**ACTIVE**

Credential Number

**LW    00006328**

Expiration Date
**04/02/2012**

_____
Secretary

of 1                **231**                000244 13 9:03 AM

| Name (Last, First, Middle) | 2. Social Security Number | 3. Date of Birth | 4. Effective Date |
|---|---|---|---|
| RNOLD, MARVIN C. | | | 11-20-2011 |

**IRST ACTION**

| A. Code | 5-B. Nature of Action |
|---|---|
| 890 | Misc Pay Adj |

| C. Code | 5-D. Legal Authority |
|---|---|
| ZLM | P.L. 111-84, dated 10-28-2009 |

| E. Code | 5-F. Legal Authority |
|---|---|
| | |

**SECOND ACTION**

| 6-A. Code | 6-B. Nature of Action |
|---|---|
| | |

| 6-C. Code | 6-D. Legal Authority |
|---|---|
| | |

| 6-E. Code | 6-F. Legal Authority |
|---|---|
| | |

**FROM: Position Title and Number**
OCIAL WORKER (FAP)
IC373283 - 2275202

| Pay Plan | 9. Occ. Code | 10. Grade/Level | 11. Step/Rate | 12. Total Salary | 13. Pay Basis |
|---|---|---|---|---|---|
| YA | 0185 | 02 | 00 | $68,310.00 | PA |

| 12A. Basic Pay | 12b. Locality Adj. | 12C. Adj. Basic Pay | 12D. Other Pay |
|---|---|---|---|
| $68,310.00 | $0.00 | $68,310.00 | |

**15. TO: Position Title and Number**
SOCIAL WORKER (FAP)
MC373283 - 2330655

| 16. Pay Plan | 17. Occ. Code | 18. Grade/Level | 19. Step/Rate | 20. Total Salary-Award | 21. Pay Basis |
|---|---|---|---|---|---|
| GS | 0185 | 12 | 05 | $68,310.00 | PA |

| 20A. Basic Pay | 20B. Locality Adj. | 20C. Adj. Basic Pay | 20D. Other Pay |
|---|---|---|---|
| $68,310.00 | $0.00 | $68,310.00 | $0.00 |

**14. Name and Location of Position's Organization**
HQS, USAMEDDAC BAVARIA
USA HEALTH CLINIC, BAMBERG
CLINIC SPT, ARMY FAMILY ADVOCACY PROG
AMBERG            GM APO AE  09036

**22. Name and Location of Position's Organization**
HQS, USAMEDDAC BAVARIA
USA HEALTH CLINIC, BAMBERG
CLINIC SPT, ARMY FAMILY ADVOCACY PROG
BAMBERG            GM APO AE  09036

**EMPLOYEE DATA**

| Veterans Preference | 24. Tenure | 25. Agency Use | 26. Veterans Preference for RIF |
|---|---|---|---|
| 1  (1-None, 2-5 Point, 3-10-Point/Disability, 4-10-Point-Compensable, 5-10-Point/Other, 6-10-Point/Compensable/30%) | 2  (0-None, 1-Permanent, 2-Conditional, 3-Indefinite) | | YES  X  NO |

| 27. FEGLI | 28. Annuitant Indicator | 29. Pay Rate Determinant |
|---|---|---|
| K0  Basic + Option B (2x) | 9  Not Applicable | 0 |

| 30. Retirement Plan | 31. Service Comp. Date (Leave) | 32. Work Schedule | 33. Part-Time Hours Per Biweekly Pay Period |
|---|---|---|---|
| K  FERS and FICA | 02-13-2010 | F  Full-Time | |

**POSITION DATA**

| Position Occupied | 35. FLSA Category | 36. Appropriation Code | 37. Bargaining Unit Status |
|---|---|---|---|
| 1  (1-Competitive Service, 2-Excepted Service, 3-SES General, 4-SES Career Reserved) | E  (E-Exempt, N-Nonexempt) | 00000000000 | 7777 |

| Duty Station Code | 39. Duty Station (City - County - State or Overseas Location) |
|---|---|
| M11300000 | BAMBERG / GERMANY |

| 40. Agency Data | 41. | 42. | 43. | 44. |
|---|---|---|---|---|
| | PON# FA | | | TDA DATA MC/W38303/915/99A |

**45. Remarks**

Pay/position changes authorized by P.L. 111-84, dated October 28, 2009.

Date Last Equivalent Increase is 30-OCT-11.

Full performance level of employee's position is GS-12 .

If applicable upon conversion, the GS time-in-grade restriction at 5 CFR 300, subpart F, is waived per OPM memo, dated February 18, 2010.

As necessary, the GS qualification requirement is modified in accordance with Qualification Standards for General Schedule Positions section E.8.(c) to reflect NSPS qualification requirements.

| Employing Department or Agency | 50. Signature/Authentication and Title of Approving Official |
|---|---|
| US. Army Medical Command (ARMC) | Leopoldo Toledo |
| | Approving Official |

| Agency Code | 48. Personnel Office ID | 49. Approval Date |
|---|---|---|
| RMC | 4170 | 11-22-2011 |

Part 50-316

TURN OVER FOR IMPORTANT INFORMATION

Editions Prior to 7/91 Are Not Usable After 6/30/93
NSN 7540-01-333-6238

**don lee kreager**

application ...

**Country of Citizenship:** United States

**Veterans' Preference:** No

**Registered for Selective Service:** I am a male born on or after January 1, 1960, and I have registered for the Selective Service.

**Highest Grade:** 12

**ICTAP Eligible:** No

**Availability:** **Job Type:** Permanent
**Work Schedule:** Full-Time

**Desired locations:** DE

**Work Experience:**

**U.S. Army/IMCOM/ACS-Family Advocacy Program** **05/2011 - Present**
Ledward Barracks. Bldg 242
Schweinfurt, BY 09033 GM
**Salary:** 65,371.00 USD Per Year
**Hours per week:** 40
**Series:** 0101 **Pay Plan:** GS **Grade:** 11
**Family Advocacy Program Specialist** (This is a federal job)
**Supervisor**: Lorri Picha (07031-15-3331)
**Okay to contact this Supervisor:** Yes
Responsible creating and increasing community awareness in the ares of Child Abuse, Spouse Abuse, and Sexual Assault. This was accomplished through providing preventative education annualy to all Soldiers, as well as making education on Child Abuse available to CYSS staff, DODEA staff, and staff-volunteers working with the Chaplaincy. Preventative Education is also accomplished through timely community involvement and marketing of special events such as Domestic Violence Awareness Month, Child Abuse Prevention Month, and Sexual Assault Awareness Month. Responsible for the facilitation of tertiary prevention ecucation classes that are correlated with a decrease in child abuse and spouse abuse; Anger Management Class, Parenting Class, and Stress Management. Identifies FAP resources required and provides budgetary input. Serves at the Family Advocacy Program funds manager, submitting funding requests, and instituting tracking system. Responsible for regularly surveying the community to gauge the communities service needs.

**U.S. Army/IMCOM/ACS-Family Advocacy 08/2011 - Present**

**Program**
Ledward Barracks Bldg 242
Schweinfurt, BW    09033 GM

**Hours per week: 40**
**Series: 0001 Pay Plan: AA**
This a time-limited appointment or
temporary promotion

**Acting Family Advocacy Program Manager** (This is a federal job)
**Supervisor:** Patricia Lamson ((314)354-6933)
**Okay to contact this Supervisor:** Yes

Responsible for developing and implementing a post wide prevention and education program which includes educating the community about spouse and child abuse. Responsible for all yearly mandatory Soldier training, to include unit Commander/Senior NCO training. Serves as the subject matter expert to the Garrison Commander and tenant commands. Manages a yearly budget of $120,000.00. Responsible for the supervision of the four staff working in the Family Advocacy Program, and Sexual Assault Prevention and Response Program. Liaison between Family Advocacy and other stakeholder agencies; CYSS, DODEA, Chaplaincy. Represents Family Advocacy/ACS on the Case Review Committee. Prepares the agenda for the Family Advocacy Committee (FAC), and facilitates the FAC. Responsible for the preparation necessary for the Family Advocacy Program to pass accreditation.

**U.S. Army/MAMC/Warrior Transition**
**Battalion**
Ft. Lewis, WA    US

**09/2008 - 05/2011**
**Salary:** 78,314.00  USD Per Year
**Hours per week:** 40
**Series:** 0185 **Pay Plan:** GS **Grade:** 12

**Clinical Social Worker** (This is a federal job)
**Supervisor:** Ellen Bloom ((253)966-4174)
**Okay to contact this Supervisor:** Yes

Provide initial assessment upon arrival into Battalion regarding risk of imminent problematic behavior. Complete Psychosocial Assessments with incoming Soldier's. Facilitate multi-disciplinary meetings to engender successful goal achievement and transition. Provide ongoing individual and group therapy to the identified Soldiers and their families. Provide focused trainings to Cadre and Warriors in Transition on numerous topics relevant to Social Work. Actively serve as mental health liaison to command, and other professionals associated with the Battalion.

**MultiCare Hospitals**
Tacoma, WA    US

**08/2005 - 11/2008**
**Salary:** 22.50  USD Per Hour
**Hours per week:** 8

**Crisis Intervention Social Worker**
**Supervisor:** John Pearson (253-403-7795)
**Okay to contact this Supervisor:** Yes

Perform Mental Health Evaluations, including DSM diagnosis, on patients receiving emergency services at any of the MultiCare Hospitals in Pierce County. Patients also receive brief crisis therapy as necessary, as well as coordinated discharge planning when appropriate. Social Workers are commonly asked to evaluate and respond to patients suffering from suicidal ideation, or patients who are actively suicidal. This position utilizes my ability to advocate for patient's needs with medical staff, as well as with non-hospital professionals such as County Designated Mental Health Professionals, and law enforcement. Mary Bridge Hospital and Tacoma General Hospital both receive trauma patients from the surrounding community. The crisis

intervention social worker is responsible for working with the family. as well as the patient, during these emotionally charged situations.

**U.S. Army/MAMC/Family Advocacy**      **03/2006 - 09/2008**
**Program**      **Salary:** 65,337.00 USD Per Year
Ft. Lewis, WA    US      **Hours per week:** 40
     **Series:** 0185 **Pay Plan:** GS **Grade:** 11
**Family Advocacy Clinical Social Worker** (This is a federal job)
Supervisor: Lorri Picha
**Okay to contact this Supervisor:** Yes
Duties: Provide case management, individual, group therapy for active duty members and beneficiaries referred for child and spouse maltreatment. Consultant to command regarding domestic violence issues and trends. Alternately provide facilitation for Men's Group, Parenting Class. Anger Management class. and teach psycho educational classes. Provide resource information and referral services to active duty members and beneficiaries. Present active case for review by the Case Review Committee. Utilize medical scheduling/billing database, Family Advocacy record database, inpatient and outpatient record databases, and Microsoft Word, Power Point and Excel. On-call provider to Emergency Department regarding suspected spouse or child abuse/neglect issues.
Participate in the department's quality assurance activities to ensure compliance with the Joint Commission for the Accreditation of Hospital Organizations (JCAHO).

**Division of Children and Family Services**    **05/2003 - 05/2006**
Tacoma, WA    US      **Salary:** 53,000.00 USD Per Year
     **Hours per week:** 40
**Social Work Supervisor**
Supervisor: Dawn Cooper (253-983-6253)
**Okay to contact this Supervisor:** Yes
Supervised seven Child Protection Services social workers. Each social worker managed an average of eight referrals per month. As the unit supervisor I was responsible for; shared decision making in response to crisis situations, attending numerous case specific staffing, monthly case review, community outreach, and facilitation of unit meetings/retreats.

**Franciscan Health Systems**      **08/2004 - 08/2005**
Tacoma, WA    US      **Salary:** 21.75 USD Per Hour
     **Hours per week:** 8
**Emergency Department Social Worker**
Supervisor: Reg Huyan (253-426-6541)
**Okay to contact this Supervisor:** Yes
Perform Mental Health Evaluations, including DSM diagnosis, on patients receiving emergency services at any of the three Franciscan Hospitals in King/Pierce Counties. Patients also receive brief crisis therapy as necessary, as well as coordinated discharge planning when appropriate. This position utilizes my ability to advocate for patient's needs with medical staff, as well as with non-hospital professionals such as County Designated Mental Health Professionals, and law enforcement. The emergency room social worker is also the driving force behind identified patients being transferred to on site inpatient mental health services

**Division of Children and Family Services**    **09/1998 - 05/2003**
Kent, WA   US                         **Salary:** 45,000.00   USD Per Year
                                          **Hours per week:** 40

**Social Work Supervisor**
**Supervisor:** Scott Steuby (206-691-2303)
**Okay to contact this Supervisor:** Yes
Supervised seven Adolescent Child Welfare Services social workers. Each social worker was responsible for an average caseload of 25 adolescents in out of home placement.
As the unit supervisor I provided each unit social worker with bi-weekly case conference, facilitated unit meetings/retreats, and assisted in the resolution of the numerous placement crisis that this particular unit responded to. I also facilitated numerous trainings, and sat on several committees.


**Division of Children and Family Services**    **10/1996 - 10/1998**
Kent, WA   US                         **Salary:** 38,000.00   USD Per Year
                                          **Hours per week:** 40

**Child Welfare Services Social Worker**
**Supervisor:** Bill Caughey (360-825-5688)
**Okay to contact this Supervisor:** Yes
Provide Permanency Planning to a mixed caseload of Dependent children, and their families. I regularly provided court reports, Individual Service Plans, and in Court testimony. I was also responsible for referral, facilitation, and management of direct services to youth and their families


**Division of Children and Family Services**    **09/1993 - 10/1996**
Kent, WA   US                         **Salary:** 33,000.00   USD Per Year
                                          **Hours per week:** 40

**Child Protective Services Social Worker**
Investigate referrals of alleged child abuse and neglect, and assess what level of intervention is necessary/warranted. I was accountable for the case management of all court/voluntary cases on my caseload. Regularly staffed cases with numerous teams and consultation groups. As a senior social worker, I often provide training and outreach to the community.


**Division of Children and Family Services**    **09/1993 - 10/1996**
Kent, WA   US                         **Salary:** 33,000.00   USD Per Year
                                          **Hours per week:** 40

**Child Protective Services Social Worker**
**Supervisor:** Ken Patis (360-725-6707)
**Okay to contact this Supervisor:** Yes
Duties: Investigate referrals of alleged child abuse and neglect, and assess what level of intervention is necessary/warranted. I was accountable for the case management of all court/voluntary cases on my caseload. Regularly staffed cases with numerous teams and consultation groups. As a senior social worker, I often provide training and outreach to the community


**Children's Services Bureau**                                     **05/1991 - 09/1993**

# NOTIFICATION OF PERSONNEL ACTION

| 1. Name (Last, First, Middle) | | 2. Social Security Number | 3. Date of Birth | 4. Effective Date |
|---|---|---|---|---|
| KREAGER, DON L. | | | | 10-10-2010 |

## FIRST ACTION

| 5-A. Code | 5-B. Nature of Action | | 6-A. Code | 6-B. Nature of Action |
|---|---|---|---|---|
| 900 | Change in Title | | | |
| 5-C. Code | 5-D. Legal Authority | | 6-C. Code | 6-D. Legal Authority |
| | | | | |
| 5-E. Code | 5-F. Legal Authority | | 6-E. Code | 6-F. Legal Authority |
| | | | | |

| 7. FROM: Position Title and Number | 15. TO: Position Title and Number |
|---|---|
| SOCIAL WORKER (WTU) | SOCIAL WORKER (TRANSITION UNIT) |
| 202136 - 1440511 | 202136 - 1440511 |

| 8. Pay Plan | 9. Occ. Code | 10. Grade/Level | 11. Step/Rate | 12. Total Salary | 13. Pay Basis | 16. Pay Plan | 17. Occ. Code | 18. Grade/Level | 19. Step/Rate | 20. Total Salary/Award | 21. Pay Basis |
|---|---|---|---|---|---|---|---|---|---|---|---|
| GS | 0185 | 12 | 03 | $78,314.00 | PA | GS | 0185 | 12 | 03 | $78,314.00 | PA |

| 12A. Basic Pay | 12B. Locality Adj. | 12C. Adj. Basic Pay | 12D. Other Pay | 20A. Basic Pay | 20B. Locality Adj. | 20C. Adj. Basic Pay | 20D. Other Pay |
|---|---|---|---|---|---|---|---|
| $64,292.00 | $14,022.00 | $78,314.00 | | $64,292.00 | $14,022.00 | $78,314.00 | |

| 14. Name and Location of Position's Organization | 22. Name and Location of Position's Organization |
|---|---|
| MADIGAN ARMY MEDICAL CENTER | MADIGAN ARMY MEDICAL CENTER |
| WARRIOR TRANSITION BATTALION | WARRIOR TRANSITION BATTALION |
| TACOMA , WA 98433    J | TACOMA , WA 98433    J |

## EMPLOYEE DATA

| 23. Veterans Preference | | 24. Tenure | | 25. Agency Use | 26. Veterans Preference for RIF |
|---|---|---|---|---|---|
| 1 | 1 - None   3 - 10-Point/Disability   5 - 10-Point/Other<br>2 - 5-Point   4 - 10-Point/Compensable   6 - 10-Point/Compensable/30% | 1 | 0 - None   2 - Conditional<br>1 - Permanent   3 - Indefinite | | YES   X   NO |

| 27. FEGLI | | 28. Annuitant Indicator | | 29. Pay Rate Determinant |
|---|---|---|---|---|
| Z5 | Basic + Option B (5x) + Option A + Option C (5x) | 9 | Not Applicable | 0 |

| 30. Retirement Plan | | 31. Service Comp. Date (Leave) | 32. Work Schedule | | 33. Part-Time Hours Per Biweekly Pay Period |
|---|---|---|---|---|---|
| K | FERS and FICA | 05-30-2006 | F | Full-Time | |

## POSITION DATA

| 34. Position Occupied | | 35. FLSA Category | | 36. Appropriation Code | 37. Bargaining Unit Status |
|---|---|---|---|---|---|
| 1 | 1 - Competitive Service   3 - SES General<br>2 - Excepted Service   4 - SES Career Reserved | E | E - Exempt<br>N - Nonexempt | 84770025GWO 1 | AR3402 |

| 38. Duty Station Code | 39. Duty Station (City - County - State or Overseas Location) |
|---|---|
| 532230053 | TACOMA / PIERCE / WASHINGTON |

| 40. Agency Data | 41. PON# OA | 42. | 43. | 44. TDA DATA MC/W0Q170/665/88 |
|---|---|---|---|---|

45. Remarks

| 46. Employing Department or Agency | 50. Signature/Authentication and Title of Approving Official |
|---|---|
| U.S. Army Medical Command (ARMC) | Karen L. Webb |

| 47. Agency Code | 48. Personnel Office ID | 49. Approval Date | |
|---|---|---|---|
| ARMC | 2289 | 10-13-2010 | AUTHORIZING OFFICIAL |

5-Part 50-316

TURN OVER FOR IMPORTANT INFORMATION

Editions Prior to 7/91 Are Not Usable After 6/30/93
NSN 7540-01-333-6238

# an Diego State University

The Trustees of The California State University
upon recommendation of the Faculty
have conferred upon

## Don Lee Kreager

the Degree of

## Master of Social Work

with all rights, privileges and honors thereunto appertaining.

Given at San Diego State University this
third day of June, nineteen hundred ninety-one

_William H. Campbell_
**Chair**
Board of Trustees

_E. r. _____
**Chancellor**
The California State University

_____
**Governor**
President of the Board of Trustees

_____
**President**
San Diego State University

**235**

000248

SAN DIEGO STATE UNIVERSITY
OFFICIAL TRANSCRIPT

VERIFY ORIGINAL - RUB HARD AND COLOR WILL CHANGE
ARS=C     -317009
PRINT DATE: 05/06/2006
PAGE: 2

STUDENT NAME: KREAGER,DON LEE
CAMPUS ID  : 808443253

BIRTH DATE MONTH/DAY: 04/02/xxxx

---

| EXTENSION SPRING 1991 | | UNITS | GRADE | REF | |
|---|---|---|---|---|---|
| SWORK 0496 | ALC-DRUG DEP ID & INTRVNT | 1.0 | CR | | CR/NCR |

SDSU CUMULATIVE TOTALS:          31.0  44.0    110.3     GPA: 3.55

| SPRING 1991 | | UA | UE | GRADE | PTS | REF |
|---|---|---|---|---|---|---|
| P E   0118B | INTERMEDIATE TENNIS | 1.0 | 1.0 | A | 4.0 | |
| SWORK 0744 | SEM-ADV CL INTERV MODELS | 3.0 | 3.0 | B | 9.0 | |
| SWORK 0750A | ADV FIELD PRACTICUM CLIN | 0.0 | 4.0 | CR | 0.0 | CR/NCR |
| SWORK 0780 | SEM- HUM SEX PROB | 3.0 | 3.0 | A- | 11.1 | |
| SWORK 0792 | ADV RES SEM SEL SW TOP | 3.0 | 3.0 | B | 9.0 | |

TERM TOTALS:                     10.0  14.0      33.1     GPA: 3.31
SDSU CUMULATIVE TOTALS:          41.0  58.0     143.4     GPA: 3.49

TRANSFER CUMULATIVE TOTALS:       0.0   0.0       0.0     GPA: 0.00
OVERALL CUMULATIVE TOTALS:       41.0  58.0     143.4     GPA: 3.49

```
+++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++
+ MAY 26, 1991 AWARDED MASTER'S DEGREE                                          +
+ DEGREE: MSW                                                                   +
+ MAJOR : SOCIAL WORK                                                           +
+++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++++
```

TRANSFER CUMULATIVE TOTALS:       0.0   0.0       0.0     GPA: 0.00
OVERALL CUMULATIVE TOTALS:       41.0  58.0     143.4     GPA: 3.49

*** END OF ACADEMIC RECORD ***

EFFECTIVE SPRING 1998: OPEN UNIVERSITY EQUALS RESIDENCE CREDIT

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

This official university transcript is printed on
security paper and does not require a raised seal

CERTIFIED TO BE A CORRECT TRANSCRIPT OF RECORD
STUDENT IN GOOD STANDING UNLESS OTHERWISE INDICATED.
TRANSCRIPT VOID IF ALTERED

CIVILIAN PERSONNEL ADVISORY CNTR
ATTN: SHARON SHAW
PO BOX 33128, MS #37
FORT LEWIS,WA  98433

REGISTRAR

OFFICE OF THE REGISTRAR
SAN DIEGO, CALIFORNIA 92182-7453
(619) 594-4509 OR 594-5017

SAN DIEGO STATE UNIVERSITY
OFFICIAL TRANSCRIPT

VERIFY ORIGINAL - RUB HARD AND COLOR WILL CHANGE
ARS=C      -317009
PRINT DATE: 05/06/2006
PAGE: 1

STUDENT NAME: KREAGER,DON LEE
CAMPUS ID : 808443253

BIRTH DATE MONTH/DAY: 04/02/xxxx

---

TRANSFER CREDIT

| INSTITUTION | TO DATE | SEMESTER UNITS ATTEMPT | ACCEPT | GRADE POINTS |
|---|---|---|---|---|
| WASHINGTON STATE U | DEGREE AWARDED: BS | 05/87 | F | |
| SIMS/R TRANSFER TOTALS | 0.0 | 0.0 | 0.0 | GPA:0.00 |

---

GRADUATE RECORD

| FALL 1989 | | UA | UE | GRADE | PTS | REF |
|---|---|---|---|---|---|---|
| SWORK 0620D | SEM HUM BEHAV ENV CYF | 3.0 | 3.0 | A- | 11.1 | |
| SWORK 0631D | SOCWK PR FA & GP I-CYF | 3.0 | 3.0 | A- | 11.1 | 5 |
| SWORK 0632D | SOCWK PR ORG COM PT I CYF | 3.0 | 3.0 | A | 12.0 | |
| SWORK 0650D | FIELD PRACTICUM CYF | 0.0 | 4.0 | CR | 0.0 | CR/NCR |
| SWORK 0690D | SEM RESEARCH METH CYF | 3.0 | 3.0 | B | 9.0 | |
| TERM TOTALS: | | 12.0 | 16.0 | | 43.2 | GPA: 3.60 |
| SDSU CUMULATIVE TOTALS: | | 12.0 | 16.0 | | 43.2 | GPA: 3.60 |

| SPRING 1990 | | UA | UE | GRADE | PTS | REF |
|---|---|---|---|---|---|---|
| SWORK 0600D | SEM SOCWE POL&SER CYF | 3.0 | 3.0 | A | 12.0 | |
| SWORK 0650D | FIELD PRACTICUM CYF | 0.0 | 4.0 | CR | 0.0 | CR/NCR |
| SWORK 0720 | SEM HUM BEHAV&SOC ENVR | 3.0 | 3.0 | A | 12.0 | |
| SWORK 0733D | SOCWK PR IN FA&GR II CYF | 2.0 | 2.0 | A | 8.0 | |
| SWORK 0734D | SWK PR ORG COM PT II CYF | 2.0 | 2.0 | B | 6.0 | |
| TERM TOTALS: | | 10.0 | 14.0 | | 38.0 | GPA: 3.80 |
| SDSU CUMULATIVE TOTALS: | | 22.0 | 30.0 | | 81.2 | GPA: 3.69 |

| FALL 1990 | | UA | UE | GRADE | PTS | REF |
|---|---|---|---|---|---|---|
| P E 0110B | INTERMEDIATE VOLLEYBALL | 0.0 | 1.0 | CR | 0.0 | CR/NCR |
| PSY 0651 | SEM BEHAV DIS CHLDHD&ADOL | 3.0 | 3.0 | B+ | 9.9 | |
| SWORK 0739 | ADV SEM SW PR FAM & GRPS | 3.0 | 3.0 | A- | 11.1 | |
| SWORK 0750A | ADV FIELD PRACTICUM CLIN | 0.0 | 4.0 | CR | 0.0 | CR/NCR |
| SWORK 0791A | APP SW PR RES SEM CLIN | 3.0 | 3.0 | B- | 8.1 | |
| TERM TOTALS: | | 9.0 | 14.0 | | 29.1 | GPA: 3.23 |
| SDSU CUMULATIVE TOTALS: | | 31.0 | 44.0 | | 110.3 | GPA: 3.55 |

* * * * CONTINUED ON NEXT PAGE * * * *

*****************************************************************

This official university transcript is printed on
security paper and does not require a raised seal.

CERTIFIED TO BE A CORRECT TRANSCRIPT OF RECORD.
STUDENT IN GOOD STANDING UNLESS OTHERWISE INDICATED.
TRANSCRIPT VOID IF ALTERED

CIVILIAN PERSONNEL ADVISORY CNTR
ATTN: SHARON SHAW
PO BOX 33128, MS #37
FORT LEWIS,WA 98433

*Rayanne Williams*
REGISTRAR
OFFICE OF THE REGISTRAR
SAN DIEGO, CALIFORNIA 92182-7453
(619) 594-4509 OR 594-5017

**233**

000246

WASHINGTON STATE UNIVERSITY
OFFICE OF THE REGISTRAR
PULLMAN, WASHINGTON 99164-1035

ACADEMIC RECORD OF  KREAGER DEN LEE

MAJOR Psych

DEGREE  B. S. in Psychology  5/9/87

STUDENT ID NUMBER  2E854-833

**PERSONAL DATA**

BIRTHDATE APRIL 2, 1965
FAMILY NAME  KREAGER ROBERT A
ADDRESS  PO BOX 5717
AEC NEW YORK  NY
09194

SECONDARY SCHOOL
FAF CROUGHTON
FAF CROUGHTON UK

GRADUATED IN 83  GPA 3.43

TRANSFER CREDIT FROM

NON RESIDENT CREDIT

FACULTY ACTION
+omit repeated

MINOR: ALCOHOL STUDIES  5-87

| COURSE & NO | TITLE | CREDIT | GR | POINTS & PGN GPA |
|---|---|---|---|---|
| 28854-833 FALL 1983 | | | | |
| BIO S 103 (B) | INTRO BIOL | 4 | B | 12.0 |
| PSYCH 102 (S) | INT HUM BHAV | 3 | C | 6.0 |
| ENGL 101 (H) | COMPOSITION | 3 | C+ | 6.9 |
| CHEM 104 | PREP CHEM | 2 | C | 4.0 |
| MATH 107 | PRECALC ALG | +3 | F | .0 |
| 15.0 12.0 28.9 0.C | 12.0 | | | 1.93 |
| | | | | |
| 28854-833 SPRING 1984 | | | | |
| HPE 250 | INT TENNIS | 1 | A | 4.0 |
| HIST 101 (S) | CLAS CHR EUR | 3 | B | 5.0 |
| HUM 101 (H) | ANCIENT WRLD | 3 | B- | 8.1 |
| AERO 102 | U S FORCES | 1 | B | 3.0 |
| PSYCH 101 (S) | INT SCI FNDS | 3 | B+ | 9.9 |
| ENGL 108 (H) | READING LIT | 3 | C- | 5.1 |
| 29.0 26.0 68.0 0.0 | 26.0 | | | 2.34 |
| | | | | |
| 28854-833 FALL 1984 | | | | |
| ANTH 101 (S) | GEN ANTH | 3 | A- | 11.1 |
| PSYCH 333 | ABNORMAL PSY | 3 | A- | 11.1 |
| GEOL 101 (P) | INTRO GEOL | 4 | B+ | 13.2 |
| SPCOM 102 (C) | PUBLIC SPKNG | 3 | B+ | 9.9 |
| PSYCH 230 (S) | HUMAN SEX | 3 | B+ | 9.9 |
| PEACT 152 | POCKET BILL | 1 | S | .0 |
| 45.0 43.0 123.2 0.0 | 43.0 | | | 2.74 |
| | | | | |
| 28854-833 SPRING 1985 | | | | |
| HNF 130 (Z) | NUTR FOR MAN | 3 | A | 12.0 |
| PEACT 112 | WT TRAINING | 1 | A | 4.0 |
| MATH 107 | PRECALC ALG | 3 | A | 12.0 |
| PSYCH 321 | INT PRSNLTY | 3 | A | 12.0 |
| PSYCH 350 (S) | SOCIAL PSYCH | 3 | A | 12.0 |
| ANTH 304 (H) | ANTH WLD PRE | 3 | C | 6.0 |
| 58.0 59.0 181.2 0.0 | 59.0 | | | 3.12 |

| COURSE & NO | TITLE | CREDIT | GR |
|---|---|---|---|
| 28854-833 FALL 1985 | | | |
| F A 101 (H) | INTRODUCTION | 3 | A- |
| PHAR 217 | DRUGS IN SOC | 2 | A |
| PEACT 177 | INT RACQUET | 1 | A |
| PSYCH 365 | PROB ALC ADD | 3 | A |
| POL S 101 (S) | AM NATL GOVT | 3 | B |
| BIO S 201 | CONTEMP BIOL | 1 | B- |
| PSYCH 331 | ELEM STAT | 4 | C+ |
| 75.0 76.0 237.2 0.0 | 76.0 | | |
| | | | |
| 28854-833 SPRING 1986 | | | |
| PSYCH 366 | PROB ALC ADJ | 3 | A- |
| S W 394 | COMM ORG II | 3 | B |
| PSYCH 285 | EXPER METH | 3 | B |
| PSYCH 440 | CLIN/COM PSY | 3 | A- |
| PEACT 148 | BEG BADMINT | 1 | S |
| PSYCH 498 | RES PARTIC | 3 | S |
| 87.0 92.0 277.4 0.0 | 92.0 | | |
| | | | |
| 28854-833 FALL 1986 | | | |
| ALCST 367 | SP TOPICS | 3 | A |
| PEACT 141 | BEG GOLF | 1 | A |
| ALCST 447 | ALC COUNSEL | 2 | B |
| PSYCH 464 | PSY DIS CHLD | 3 | B |
| ALCST 444 | HELP SKILLS | 2 | S |
| PSYCH 498 | RES PARTIC | 3 | S |
| 96.0 106.0 308.9 0.0 | 106.0 | | |
| | | | |
| 28854-833 SPRING 1987 | | | |
| S W 490 | SW FIELD EXP | 15 | S |
| 96.0 121.0 308.9 0.0 | 121.0 | | |

KREAGER DEN LEE

OFFICIAL IF SIGNED AND
SEALED BY THE REGISTRAR.

SHEET 1  SEE REVERSE SIDE

AN OFFICIAL SIGNATURE IS

Julia A. Pomer

The Family Educational Rights and Privacy 232 1974 signed a
partial release of this record without writing consent

COPY SHOULD NOT BE ACCEPTED

By the authority of RCW 18.225 this person

**DON L KREAGER**

is granted a

**Social Worker Independent Clinical License**

Status

**ACTIVE**

*Dwyer Selecky*

Secretary

Credential Number

**LW   00006328**

Expiration Date

**04/02/2012**

therapies has been shown to be useful in treatment of anxiety disorders such as PTSD.

Have also received training in Prolonged Exposure Treatment, which can be used with anxiety disorders and other disorders related to trauma

**Affiliations:**

**References:**

| Name | Employer | Title | Phone | Email |
|---|---|---|---|---|
| Dawn Cooper (*) | Division of Children and Family Services | Area Manager | 253-983-6253 | neda300@dshs.wa.gov |
| Ellen Bloom (*) | Dept of the Army, MAMC/WTB | Social Work Supervisor | 253-967-7774 | ellen.m.bloom@us.army.mil |
| Jennifer Sweet (*) | Dept of the Army, MAMC/WTB | Clinical Social Worker | 253.966.4175 | jennifer.sweet@us.army.mil |

(*) Indicates professional reference

**Additional Information:**

During the long career that I have enjoyed as a Social Worker, I have facilitated numerous psycho educational and process groups. I have always enjoyed these opportunities, and I believe that the necessary communication skills are a strong component of my skill set. I look forward to participating in such educational opportunities in the future.

Much of my childhood was spent as a family member to an Active Duty Air Force Officer.
My father served as a Social Worker for the Air Force Bio-Medical Corps. My father's service resulted in my living with my family while my father was stationed at: Izmir, Turkey; Upper Heyford, England; Athens, Greece; as well as a number of bases in CONNUS.

San Diego, CA   US

**Salary:** 32,000.00  USD Per Year
**Hours per week:** 40

**Protective Services Bureau**
Assess children for child abuse to determine level of intervention necessary to insure the safety of the child. Evaluate the child and family's need for services, including reunification plans when necessary. This unit was specifically aimed at working with those families where there were allegations of child sexual abuse

**Children's Services Bureau**
San Diego, CA   US

06/1992 - 09/1993
**Salary:** 11.00  USD Per Hour
**Hours per week:** 6

**Parent's United Facilitator**
Co-facilitator to a group of adults, composed of sexual abuse perpetrators, non-offending parents, and adults molested as children. Provided group members with an educational component designed to address issues of molestation, and also provided direction during the group process component.

**Capistrano by the Sea**
Dana Point , CA   US

06/1988 - 05/1990
**Salary:** 8.20  USD Per Hour
**Hours per week:** 40

**Mental Health Worker**
Served as mental health worker on inpatient adolescent unit which served adolescents suffering from substance abuse, behavioral disorders, mental health issues, as well as dual diagnosis. Treatment provided to the milieu through the use of educational groups, process groups, multi-family therapy groups, and 12 step support groups.

**Education:**

**San Diego State University** San Diego, CA  US
Master's Degree 05/1991
**GPA:** 3.49 of a maximum 4
**Credits Earned:** 58 Semester hours
**Major:** Social Work
**Relevant Coursework, Licenses and Certifications:**
License - Licensed Independent Clinical Social Worker (05/15/1998 - Expires 4/02/2011) I maintain a Licensed Independent Clinical Social Work license, and have done so since May of 1998. This Nationally recognized license allows me to bill for social work services provided, while holding me to a set of standards to include completion of 36 hours of continuing education per year.

**Washington State University** Pullman, WA  US
Bachelor's Degree 05/1987
**GPA:** 3.43 of a maximum 4.0
**Major:** Psychology **Minor:** Alcohol Studies

**Job Related Training:**

Attended training on Post Traumatic Stress Disorder (PTSD) presented by MEDCOM for Civilian and Active Duty staff who will be working with soldiers post deployment. The PTSD training paid special attention to: diagnostic criteria of PTSD, co-morbidity of PTSD with substance abuse/dependence, physiological aspects of PTSD, and various modalities of treatment for PTSD.

Recently attended training on Eye Movement Desensitization and Reprocessing Therapy, Prolonged Exposure, and Cognitive Processing Therapy. Each of these

**Director, Office of Federal Operations**
**EQUAL OPPORTUNITY EMPLOYMENT COMMISSION**
**Suite 5SW 12G**
**131 M Street, N.E.**
**Washington, D.C. 20507**
**13 July 2015**

Marvin Arnold                                  EEOC No. 570-2013-00934
    Appellant                             AREUANS12OCT04343

     V

John McHugh, Secretary
  U.S. Department of the Army
    Defendant

## APPEAL OF DECISION DATED June 3, 2015 AJ Cioffalo

The Appellant, though obviously not an Attorney, is Attorney Pro Se on this matter. Appellant's Attorney of record, The Federal Employees Legal Services Center (FELSC), after receiving over $17,000 in fees from Appellant bowed out immediately after the Judgment and Order from the Administrative Judge. To date Appellant is still not clear about what documents were submitted on his behalf as there were many documents submitted to the Attorney and of course the entire Report of Investigation was available.

In the Order of the Administrative Judge (AJ) and the discussion of her Decision, the AJ concludes that the "Interview" and its results that occurred on 15 August 2012 is the sole basis for the Decision she rendered disregarding the many facts and arguments that were submitted and that were available in the record before her. The AJ states on page one, note 1, "Only disputes over facts that might affect the outcome of the suit under governing law will preclude summary judgment. Anderson, 477 U.S. @ 248. There is no genuine issue of material fact if the relevant evidence in the record, taken as a whole, indicates that a reasonable fact-finder could not return a verdict for the party opposing summary judgment. Id; Matsushita, 475 U.S. @587." The Appellant will briefly discuss very relevant concerns in terms of these citations that will, he believes, make it clear that the AJ erred in her conclusions about the Judgment and Decision. Subsequently the Appellant will respond to each of the points addressed by the AJ.

The AJ concluded, from an interview process that was flawed and conducted in opposition to the Federal Government's own personnel rules, that the interview she examined, is the sole basis for her decision. Verifiable results of the interview process shows that not one person who was in opposition to the Appellant submitted one bit of evidence that was substantial and based on quantifiable, measureable indices. Not one person who was/is in opposition to the

1

Appellant submitted anything concrete that was reflective of the kind(s) of things to which was being referred as examples of what the Appellant said, specifically, that generated a specific response to a specific question (ROI pp 351-406). In fact no one that was present during the interview process appeared to have anything on their person relating to questions being asked. Contrary to the AJ's statement that there were 12 questions, the alleged questions submitted by Mr. Olden to the Investigator numbered 7 and half of them were not the questions asked during the interview. The other half were phrased differently (page 351 of the ROI). The Appellant submitted through his attorney, a host of documents that were apparently not considered by the AJ and are being attached to this document. All of these documents are part of the ROI and/or the Complaint.

Perhaps the most startling aspect of the AJ's decision is the emphasis placed on the interview and the confidence placed in the people who were part of the Interview Panel, particularly Ms. Scholz, the Appellant's Supervisor who should not have been allowed on the panel. Ms. Scholz is a long distance supervisor who is housed miles away and who interacted with the Appellant once per month. Indeed it is the supervisor who the AJ cites, imbuing a sense of integrity in her responses along with that of other members of the panel who are/were in opposition to the Appellant and who was working for the person who was selected for the position at the time of their Declarations. Given the circumstances that are intrinsic to the interview as addressed below, it is in the opinion of the Appellant that Mr. Olden and Ms. Scholz, should not have been allowed to conduct and be part of the process and should not have been allowed to exploit the integrity of several of the women involved on the panel. Why were these workers allowed to be sucked into the Olden Scholz discriminatory vortex?

The AJ placed all significance on the interview process. Yet, if the interview is so important for the selection process why was Ms. Scholz awarded the same job several months earlier without having to interview and was selected hours after the job closed with her and her alone being considered? What was her special status such that she could bypass the process? The Appellant would like to hone in on the raw audacity of Ms. Scholz by asking the reader of this document to look at the letter enclosed on page 262 of the ROI. It is a letter Ms. Scholz sent to Mr. Olden, Subject: Re: Reference: Dr. Marvin Arnold. She begins by saying, "Here is the information you need for the reference." She goes on to cite paragraphs 1 through 6 that basically excoriates the Appellant. She applies much effort to paint the Appellant as, "**not being a team player**, she expressed concern about Appellant's interpretation of Army Regulations and she ends her secretive note to Mr. Olden by saying that she would not hire or extend the Appellant. All of this was written to Mr. Olden on 17 August 2012, 2 days after the interview.

This same person, Ms. Scholz, wrote the Appellant's official Senior System Civilian Evaluation Report (see attached evaluation) that was signed on 4 February 2013, 5 months after the interview and after the selection had been made. It should be noted that it was Ms. Scholz's opinion that carried the weight in the interview process. This same person who had written all of the under the table negative characterizations on 17 August 2012 now said the following in my evaluation: "**He (the Appellant) has established relationships with community agencies and commanders that are positive.** " How does one not be a team player but is able to

2

establish positive relationships throughout the community? She goes on to say that Appellant has complied with local SOPs, Medical Command and European Regional Medical Command guidance regarding Family Advocacy and that Appellant has maintained his BLS and licensure as required. There is little doubt that the BLS is indeed a requirement without which one cannot ascend to a Clinical Position.

The Appellant received the highest rating on his evaluation that was backed by the Senior Rater who stated, "Dr. Marvin Arnold possesses unlimited potential to serve in the highest positions in the FAP/Social Work field; promote immediately to Chief, Social Work Services." Note: the evaluation covered the period 3 July 2012 through 3 December 2012. Appellant's interview occurred 15 August 2012, the precise time for which he (the Appellant) was evaluated. Ms. Scholz's character (or lack thereof), her lack of ethics and her lack of personal integrity has to come under scrutiny as a result of her duplicity. She should not have been allowed into the process and everything about the interview process should be invalidated.

The Appellant believes there is little doubt that any reasonable person would question everything about the selection of Mr. Kreager based on Mr. Olden and Ms. Scholz's behavior. But they were not done. In a memorandum Mr. Kreager wrote on 14 September 2012, during the time frame of his selection he talks about something that apparently he and Ms. Scholz concocted about the Case Review Committee that makes absolutely no sense to the Appellant. There is little doubt that this nonsense was shared among Mr. Olden, Ms. Scholz and Mr. Kreager (page 388 of the ROI) and the other panel members. What is absolutely astonishing is that Mr. Kreager was allowed to submit his negative interpretation of something he and Ms. Scholz schemed up, that would enhance his standing with the selecting official (Mr. Olden), and it worked. Of course, it was all contrived.

The Appellant's Racial Discrimination and Age Discrimination cases have been pending since December 2012 with Appellant represented by the Federal Employees Legal Services Center (FELSC) Lawyers (see attached documents). In Ms. Scholz's Declaration (pages 378-386 of the ROI), she was asked a variety of questions pertaining to the Appellant's accusations about Age Discrimination (page 384 of the ROI). One specific question and her response was as follows:

Q – Mr. Arnold alleges that at a meeting on July 2, 2012, at the USAHC in Schweinfurt you asked him (Mr. Arnold) in front of a group of people, "How old are you?" If this is correct, please explain the context in which this statement was made."

R – I did indeed ask Dr. Arnold his age. I simply wanted to see if we knew any of the same Social Work officers from the past, since I assumed we were about the same age and had worked in Army social work a very long time. I had asked each staff social worker, Sam Giles, Kate Sweeney to explain their employment history as a way of introducing themselves to me and I did the same as well. I asked each of them, Sam Giles, Kate Sweeney, their ages as well. I learned that each of the as well as I are close in age to each other and as a result, I learned that we have a wealth of social work expertise within the Schweinfurt Social Work Service clinic.

3

Apart from the ridiculous response as to why she asked me my age is the fact that she did not ask anyone else their age and Mr. Giles has indicated that he is willing to testify under oath to this fact. A Hearing on this matter would have revealed all of these things. Regardless of what the AJ believed, Ms. Scholz, according to Federal Regulation, and Civil Rights Laws regarding Employment, has no business asking anyone his age.

There is little doubt that the behavior of Ms. Scholz and Mr. Olden, the key players in the selection process shows a pretext for discrimination as per *United States Postal Service Bd. of Gov. v. Aikens*, 460 U.S. 711, 717 (1983). Additionally there is little doubt of unlawful motivation per *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 259 (1981). *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 259 (1981). These are items relating to material facts and credibility which entitled Appellant to a Hearing. All of these documents were before the AJ and part of the ROI. It should be clear to any reasonable person who examines what occurred with the process and hiring of Mr. Kreager that something was terribly wrong and this circumvention of the Army and Personnel rules should not stand.

The Appellant takes issue with a number of items listed in the AJ's Findings and Analysis section:

1. Paragraph 2, page 3 states the following: The Position Description for the Supervisory Social Worker position indicates seven basic duties: (1) Supervision and Family Advocacy Program (FAP) Management; (2) Risk and Clinical Assessment; (3) Compilation, Analysis, Decision Making, and Case Management; (4) Crisis Intervention; (5) Treatment; (6) Record Keeping; and (7) Training. The vacancy announcement further states that, among other requirements, applicants "must be able to obtain and maintain current Basic Life Support (BLS) Training and certification."

This reduction and misinterpretation of the duties of the Clinical Supervisor position is misleading. The job announcement states the following duties for this position as Key Requirements that is much more comprehensive than stated:

You will serve as the supervisory clinical social worker; responsible for professional standards of service, promoting efficient practice, and coordination of social work services; use expert knowledge of a psychological procedures and practices to manage the duties of subordinates; responsible for clinic staff. Assign work based on priorities, difficulty and capabilities; provide technical oversight; develop performance plans, evaluate work performance, and recommend ratings of record; interview candidates for positions; take disciplinary measures; identify developmental needs of employees and arrange for needed training. Prepare and brief clinical reports; responsible for compliance with standard of care; reports to MEDCOM and other Commands; may Chair or Alternate Chair of the FAP Case Review Committee (CRC) or other meeting; performs management functions including policy writing, planning, evaluation, organization, quality management, record and time management, program analysis, budget, scheduling, compilation of information, report development, training and other duties as assigned. Oversight of: risk and clinical assessment; compilation, analysis, decision making and case management; crisis intervention; treatment; record keeping; training; performance

4

evaluation and counseling. Risk and Clinical Assessment: use advanced professional knowledge and judgment to independently plan and carry out the clinical social work component of the FAP in accordance with program requirements and accepted standards of professional conduct. Compilation, Analysis, Decision Making and Case Management: obtain relevant data from legal, investigatory, medical, and other requirements.

This is a Clinical Position requiring extensive expertise in Clinical Practice. One glance at the Appellants resume' (see attached) shows that he has performed this function in and outside of the Army/Federal Government for over 30 years. To imply simply on the statements of 3 young women who represent ½ of a panel of people, who has never been in a management position and who were responding to pressures from their supervisors both 1st and 2nd level, that this is insignificant for the job leaves a lot to be desired. Mr. Kreager was moving from a Non-Clinical position to a Clinical position and his deficiencies were apparent as he apparently held the job for less than one year. He simply was not fully qualified for the position.

The Job announcement also states very definitely on page 4 of 9 the following:

All Health Care Providers must be able to obtain and maintain current Basic Life Support (BLS) Training and certification. Current Advanced Life Support or other advanced certification does not supersede BLS completion.

This requirement is an absolute and has been the demise of workers who did meet it. This requirement is reinforced by the information in paragraph b. page 286 of the ROI:

b. To be eligible for promotion or placement under this regulation, applicants must meet all eligibility requirements and minimum qualification requirements prescribed by DOD and OPM within 30 calendar days after the closing date of the announcement or within 30 calendar days after the date of the rating for open continuous announcements. For non-NSPS positions, applicants for promotion or placement into a job having greater growth potential than their current job (or one previously held) must have a rating of fully successful or higher in their most recent annual performance appraisal or, for NSPS positions, a level 3 (valued performer) rating or higher in their most recent annual performance appraisal. In the absence of an appraisal, applicants will be presumed to have a rating of fully successful or valued performer.
This is non-negotiable and Mr. Kreager did not meet this requirement as the position closed on 29 June 2012 (see attached announcement) and he should therefore have been eliminated from the selection process.

Another item that is relevant in terms of the selection process is shown on page 288 of the ROI. It is a section of the Civilian Personnel Merit Promotion and Placement. Paragraph 18 titled Selection states in 18h: Selection will be based on job-related reasons. The selecting official will document reasons for competitive selection on the referral list. The selecting official will consider the locally approved affirmative-action plan when making selections.

Clearly selection should be based on "job related reasons", not what some compromised worker is saying about her feelings.

5

The Appellant can discern many inconsistencies in the AJ's decision and will not point to all of them in the document. The Appellant does want to point to those errors that he thinks could potentially impact or influence judicial outcomes.

    2.    Paragraph A.3. of the AJ's Findings and Analysis section the AJ states: Complainant (DOB: 08/23/1945) timely applied for the vacancy. At the time of his application, Complainant had been a Family Advocacy Clinical Social Worker, GS-0185-12 in Bamburg, Germany since February 2010, and worked as a Family Advocacy Program Therapist in Bamburg, Germany since June 2009. Complainant's work history includes many years of related family advocacy and supervisory experience prior to holding these positions with the Agency.

The Appellant wants to note that he began working 8 June 2009 in Schweinfurt, Germany at the United States Army Health Clinic and transferred to Bamberg in November, 2009. After working in Bamberg for approximately 3 years the Appellant was transferred back to Schweinfurt just prior to Ms. Scholz becoming the supervisor. Appellant resided in Schweinfurt and drove to Bamberg, a distance of approximately 120 miles round trip every day for over 3 years.

Referring to the AJ's Finding and Analysis, page 3, paragraph A.4. the Appellant questions Mr. Kreager's timeliness in applying for the job. This relates to paragraphs A.5., A.6. and A.9.

Paragraph A.5 states - On July 9, 2013, the Agency's Human Resources office issued a Certificate of Eligibles, listing twelve eligible candidates for the position, including Complainant and the Selectee.

The Appellant assumes this is simply a typo on the part of the AJ. Notwithstanding the incorrect date the Appellant received a list of eligibles from the Civilian Personnel Office that number 5. The Appellant was first on the list and Mr. Kreager was number 5. Regarding paragraph A.6. the Appellant questions how this selection process occurred.

Regarding paragraph A.9. - The panel conducted the interviews in August 2012. The panel members asked the interviewees the same 12 questions, all of which were developed by Olden.

Even if one assumes the questions that were asked were based on what Mr. Olden submitted subsequent to the interview, the hard fact is that there were never 12 questions. The issue of the number of questions has been addressed in other sections of this document and the seven questions are attached. What is astonishing however, that Mr. Olden and other panel members has maintained that the Appellant and Mr. Kreager were asked the same questions during the separate interviews. Nested in Ms. Stettler's Declaration beginning at page 400 are the 7 questions that were said to have been used for the interview with Appellant along with the 9 questions asked during the interview with Mr. Kreager. The page is not numbered and was likely not intended to be included in her Declaration (see attached). This is another example of the continued misrepresentation of facts relating to this entire process.

Paragraph A.11. - Several panel members included in their feedback that Complainant did not answer the interview questions as well as the Selectee, and that Complainant expressed negative views of the Army and the program at issue.

Appellant asks again, what are examples of what was said? To which question was the Appellant responding to when what was said? What were these negative views expressed? They simply do not exist. The manner in which this has been pursued has allowed for allegations to be made without explanation of what they are and to conclude from these non-allegations that there is legitimacy to them. Not one word was said during the interview process about Appellant not answering something adequately or completely by any member of the panel and not one issue was made about any comments that Appellant made during the interview. No one on the panel asked for clarification or follow-up to any question that was asked during the interview.

The AJ goes on to cite in paragraph A.14. - Regarding the Complainant, Olden received negative reports from Scholz and Complainant's former supervisor, both of whom stated that they would not recommend him for the position. Both supervisors referenced Complainant's poor interpersonal skills. Complainant's listed references provided good feedback for Complainant, and one stated she would recommend him for the position.

The Appellant has previously addressed Ms. Scholz in this document and her character. Regarding the other supervisor referenced it is Mr. Rich Adams, a Gay man who continually harassed Appellant and made attempts to compromise the Appellant sexually. His aggression led Appellant to send him the attached email to address his behavior.

One can see from the attached document (attached) dated 16 May 2012 that Mr. Adams was not qualified to become supervisor at the Bamberg Health Clinic. He was hired illegally and In order to qualify him for the job he was allowed to terminate his job and return to the United States. After waiting 30 days he was allowed to return to Germany and rehire for the job without competition. This was allowed by the Civilian Personnel Office at the direction of Mr. Olden. Prior to returning to the U.S. Mr. Adams designated 3 people to rotate the supervisory process. The Appellant was one of these people (see same letter dated 16 May 2012). During his period of supervisory rotation Mr. Valez began to insult and harass one of the female workers, Ms. Sarah Hunzeker (see attached). Ms. Hunzeker spoke to the Appellant about Mr. Valez's behavior and upon his return Appellant spoke to Mr. Adams about it.

Mr. Valez had apparently gone to Mr. Adam and created a story about the Appellant approaching him in an aggressive manner. Dr. Vartanian, the Clinic Chief wrote the Appellant a scathing letter dated 28 July 2010 (pg 342 of the ROI, attached). He (Dr. Vartanian), through discussions he subsequently had that should have been done before he wrote his letter to the Appellant, found out that **none** of what had been alleged about the Appellant was true and he (Dr. Vartanian), sent a letter to Civilian Personnel retracting his letter of counseling (see

7

attached). Dr. Vartanian sent his retraction letter on 9 August 2010 that was sent to: Wagner, Uwe O. Mr. CIV. Here is the content of his letter:

Hi Uwe,

Hope all is well. I got your message about Ms. Mendez taking over for you. It has been great working with you and look forward to working w/Ms. Mendez now. I wanted to thank you for all your help.

On another issue, I have spoken w/Mr. Adams and Dr. Arnold and after reviewing all the facts, I'd like to retract the Memo I wrote for Dr. Arnold. Can you please send me a response verifying that you have pulled the letter I wrote? Thank you in Advance.
r/
MAJ Vartanian

Mr. Olden subsequently stuck the bogus letter into his Declaration and used it in spite of the fact that it was retracted. Such is the methods of Mr. Olden and Ms. Scholz. But perhaps the most difficult issue with Mr. Adams was the Appellant attempts to deal with his persistent sexual harassment. There is little doubt that after Appellant wrote the attached letter to him on 18 November 2010, he did not forget it. Though Mr. Adams admitted his transgressions and said he would discontinue his behavior he did not do so. Appellant subsequently spoke to the Installation Inspector General on Bamberg about Mr. Adam's Sexual Harassment but was told that by the Appellant telling Mr. Adams to stop, he (Appellant) had done the right thing and nothing else needed to be done. It was also at this point that Mr. Olden increased his discriminatory practices against the Appellant. For example, the Appellant was not allowed to go on Temporary Duty for paid conferences until a situation occurred such that rather than send the Appellant (a Federal worker) to the conference, they wanted to send a private contractor and pay with Federal dollars. At the time contractors were not allowed to go using Federal dollars and thus other than the Appellant there was no one else as all of the other Federal workers had gone several times.

The entire issue of personal skills, feelings about the Appellant and other none quantifiable things stem from Mr. Olden's desire to justify why the Appellant was not being promoted and he received plenty of assistance from the people he controlled. Relating to the issue of references Appellant has explained this in his Declaration, page 411 of the ROI that is attached.

There is little doubt that there is a preponderance of evidence that should have engendered a Hearing. There is little doubt that a prima facie case was established. There is little doubt that the Agency has not offered a legitimate non-discriminatory case for selecting a lesser qualified person for the job. There is little doubt that the statements of ½ of the panel members were structured and designed by Mr. Olden and Ms. Scholz to get the results they desired. If the Agency really had a legitimate hiring process in place the interview would have been a percentage of the total scoring. Mr. Kreager had no Family Advocacy Education in the Army

8

whereas the Appellant has gone through all of the required courses at the time of the interview. The Appellant has been working in the field as a Manager for over 30 years (see attached resume'). It interesting to note that Appellant's Undergraduate Transcript was mysteriously excluded.

The AJ also alludes that the Agency met its burden regarding pretext as the "Complainant has failed to present any evidence, and I otherwise find no evidence in the record to suggest that the Agency's proffered reasons for its actions are pretext for age discrimination." All of the aforementioned are part of the record that was before the AJ. What does one have to present? The AJ goes on to state "Complainant also argues that he has far more experience with Family Advocacy Program and as a supervisor than the Selectee. However, years of experience alone does not create a triable issue of fact." Although the Regents of the University of California v Bakke (1978) primarily had to do with Affirmative Action it was clear that the Supreme Court Places a great deal in Higher Education and experience. I would simply ask the AJ, all other things being equal, who she would rather have performing Heart Surgery on a relative, one who has 30 years of experience or a Surgeon with less than 5 years?

Everything proffered by the AJ relating to the following should be disregarded as the two references mentioned by the AJ are the same two people, Ms. Scholz and Mr. Olden who undermined the process from beginning to end, "Complainant also argues that he has far more experience with the Family Advocacy Program and as a supervisor than the Selectee. However, years of experience alone does not create a triable issue of fact. *See, e.g., Collins v. Dep't of Treasury,* EEOC Request No. 05A41248 (Oct. 5, 2004), *Ropelewski v. U.S. Postal Serv.,* EEOC Request No. 05940313 (Nov. 23, 1994)." The Selectee had been working as an Acting Program Manager in Family Advocacy at the time of the selection, and had several years of social worker and supervisory experience prior to holding that position. The Agency acknowledged, both now and during the selection process, that Complainant had more technical experience with Family Advocacy and in supervision than the Selectee. However, the Selecting Official determined that Complainant's inferior interview performance, which he personally observed, and poor interpersonal skills, as reported by two of Complainant's three references, led to his conclusion that the Complainant was not the best applicant for the position. The Commission has held that reliance on supervisor recommendations is appropriate, and has upheld summary judgment where a complainant was not selected, despite far more years of experience, due in part to lower supervisor ratings. *See Taylor v. Soc. Sec. Admin.,* EEOC Appeal No. 0120093451(May 17, 2011). The Appellant refers the reader back to the section on the integrity and ethics of Mr. Olden and Ms. Scholz.

It should be clear from everything that has been discussed in this document that Mr. Olden was looking for a way to hire the person he hired and disregard the Appellant. This was not about an interview performance, this was about Institutional Discrimination. The AJ mentions in the above paragraph that "The Selectee had been working as an Acting Program Manager in Family Advocacy at the time of his selection and had several years of social worker and supervisory experience prior to holding that position." Had a Hearing been held the AJ would have found out that there are two sections of the Family Advocacy Program: The Clinical Program that is part of

the Medical Department and the Non-Clinical Portion that is part of the Installation. These are two completely separate entities that require a completely different set of skills and knowledge. And again, no one has spoken specifically to the so called "inferior interview performance" and it should not matter to the extent that the AJ alludes. To cite an example suppose two people were being interviewed to oversee the nuclear program of the country. One person has 30 years of experience and is Board Certified with a PH.D. in Nuclear Physics. The other has less than 5 years of experience, is not Board Certified, does not have the PH.D and is working in a program studying how using Sun Panels can reduce energy consumption. This is a similar divide as Mr. Kreager has no credentials beyond a state license whereas the Appellant is certified by the state as a Board Approved Clinical Supervisor (BACS), see the attached certification document. Without this designation Mr. Kreager would not be allowed to clinically supervise anyone in many states. Why should the U.S. Army accept anything less? As stated this is about Institutional Discrimination, not an interview.

The AJ goes on to state something that would surely have been cleared up in a Hearing, "Complainant does not dispute that he provided answers during his interview that could have been construed as negative, and admits that he was critical of the status quo in his responses. Though the panel members did not retain their written notes of the interviews, most of the panel members emailed the Selecting Official within days of Complainant's interview with their impressions of the candidates. Those emails also indicate Complainant's negative responses to the interview questions. Complainant also does not dispute the information provided by his current and former supervisors regarding his poor interpersonal skills. Rather, Complainant appears to argue that his technical experience should have been more important. However, Complainant's mere disagreement regarding the Agency's assessment of his suitability for the position is not probative of pretext. Complainant's subjective belief that he was more qualified, however genuine, does not constitute evidence of pretext. *See Mroz v. Dep't of Defense,* EEOC Appeal No. 01A33187 (Jan. 23, 2004).

There is nothing subjective about the Appellant's assertion that he is better qualified and his work performance is verified by the person who wrote his performance evaluation, Ms. Scholz. In every aspect of objective assessment the Appellant is better qualified. The Appellant has never "admits that he was critical of the status quo in his responses". This is absurd but the Attorney did submit a comment that was her comment, not the Appellant's that she submitted. Appellant pointed this out to the Attorney but she had submitted the document to the AJ without Appellants signature and before Appellant could speak definitively about her interpretation of what she thought the AJ would think. Why would this occur? Though the Attorney's comment was submitted without the Appellant's consent and submitted before the Appellant could review it, the Agency Attorney had another interpretation (see attached documents). It is likely this is what the AJ is referring to in her comments. Note the time frame of submission to the AJ of the document and the time Appellant was notified. This is a strange coincidence as it was this action by the Attorney that the AJ honed in on. The Appellant, as shown in the attached, questioned this from the beginning.

## SUMMARY

This case is about the following: Institutional Discrimination. The Appellant has been asked why he has chosen to pursue his complaints and the response is that this is the level on which the vast majority of discrimination occurs. Whether it is sexism, ageism, racism, improper personnel practices or other forms of discrimination it is in the many multi-faceted institutions in which it is occurring. Were this reversed and Mr. Kreager was the person of color there would have been screaming all over about "Reverse Discrimination", and many people would rally to his cause. And if that were the case then rallying to his cause would have been proper. Under the circumstances it is proper for the institutions who are designed to protect the rights of U.S. citizens who are the victims of discriminatory practices to rally to their cause. Sadly this is not happening.

Mr. Olden, Ms. Scholz, the members of the interview panel, the EEO officials and the AJ know that this Ruling has been a disservice to the Appellant and to the military community who did not get the best person for the job. This is a job that requires skills and abilities that can and will determine whether a child dies in an abusive home or whether a female soldier receives the appropriate treatment when sexually assaulted or raped. This is serious business such that the selection of a supervisor should not be left in the hands of a biased few whose only consideration is to show that the Black guy cannot possible be superior to the White guy. This was about White Privilege who some (not all) in our society feel the need to maintain even at their own expense whether it's economic, social or psychological.

Institutional Discrimination is the greatest obstacle to equality in the United States of America. It is manifested in disenfranchising minority voters, in the injustice of the Criminal Justice System where people of color, particularly males are murdered with impunity in the streets all over the country and where unemployment and poverty is systematically applied. This a system where some (not all) Caucasians (White people) feel a sense of entitlement to privileges not bestowed upon people of color. This disparity also manifests itself in many other ways, e.g. against older persons who have to endure the pejorative perception of not being capable and underserving for no other reason except they are older and ironically, they are probably wiser.

People of color, women and older Americans are bombarded with stereotypes and attempts are constantly made by both younger, and some older Americans who feel the effects of White Privilege and the power of their positions. Also, what cannot be ignored, however, is that some people are just evil, narcissistic and egotistical personalities who are committed to doing wrong to other Americans simply because they can do it and get away with it, at least they think they can. Such is the situation the Appellant found himself in while working under Ms. Scholz and Mr. Olden. Having found himself confronted with one of the most egregious situations involving age/race/employment discrimination to include sexual harassment and inappropriate personnel practices he decided to take the challenge and do something about it. This Appellant feels deeply aggrieved, insulted and dehumanized by what has happened. He will fight to the end for justice and his status of equality. This case would never have

been if the Agency had followed its own rules regarding hiring.  The Appellant prays that the Appellant Judge(s) will reverse the decision of the AJ, direct a verdict favorable to the Appellant and order the Agency to give due redress to the Appellant in the form of his job in Europe that he did not get, compensation for lost wages and entitlements, monetary award for pain and suffering and fees he had to endure throughout this ordeal.

Marvin C. Arnold
Attorney Pro Se
84 Blue Pine Drive
Spring Lake, NC 28390
314-667-5577

# REFERENCES

## PAGE I

1. Zelco message to Dettling dated 2 July 2013
2. Dekker message to Dettling dated 3 June 2015
3. Dekker message to Arnold dated 9 July 2015
4. Dekker messages to Arnold dated 2 March 2015, 3 March 2015
5. Scroll of Appreciation from Olden to Arnold dated March 2011
6. USA Jobs, Job Description for Supervisory Social Worker, Vilseck
7. Civilian Personnel Candidate Evaluation and Referral document, pg 286 of ROI
8. Arnold message to Dekker dated 27 February 2015
9. Arnold to Dekker Response to the Motion for Summary Judgment
10. Arnold letter to Col Goodman, B-MEDDAC Commander dated 18 May 2012
11. Acknowledgement of Occupational Questionnaire for application 30 April 2012
12. Notification Letter Vacancy 8 May 2012
13. USA Jobs Application Status 9 May 2012
14. Disposition Letter Vacancy 9 May 2012
15. Application Package Status: Complete, closing date 29 June 2012
16. Messages Pamela Kelly/Arnold to each other, re: EUJJ12726235689646R
17. Message from Olden to Arnold and members of panel scheduling the interview for 15 August 2012 at 1530 hours
18. Message from Arnold to Olden requesting feedback from the interview
19. Message from Olden to Arnold scheduling meeting on 24 September 2012 after the selection
20. Disposition letter from CPO about the selection
21. Message from Olden dated 9 August 2012 detailing references to contact
22. Credentials for Board Approved Supervisor and other state Licenses
23. Message from Vartanian to Arnold thanking Arnold for great job on JC Inspection
24. Message from Clinic Commander to Arnold thanking Arnold for great job on JC Inspection
25. 4th Quarter 2012 B-MEDDAC Tracer Schedule
26. Message from Clinic Commander requesting Arnold take on a special project for JAG
27. Message from XO of 173D STB thanking Arnold for assistance with Troop Assessment
28. Message from Company Commander 173rd BSB requesting Arnold go down range with the unit to provide assistance to the troops
29. Message from the Clinic MD requesting Arnold's assistance with PDP for returning troops
30. Message from the Medical Coding Office congratulating Arnold on his work performance and documenting of notes in the Medical Records
31. Message from Arnold to Dekker about BLS requirements, dated 2 March 2015
32. Message from Arnold to Dekker about the interview and Olden being Dr. Felde's mentor
33. Message from Arnold to Dekker about his Performance Appraisal and other ROI documents
34. Message from Scholz to Arnold & others about Scholz attempting to make an issue of nothing to cause difficulty for Arnold and his reply



Marvin Arnold <mmearnold@gmail.com>

---

# RE: Marvin Arnold (UNCLASSIFIED)

1 message

---

**Zelko, Eric J CIV USARMY IMCOM EUROPE (US)** <eric.j.zelko.civ@mail.mil>
Tue, Jul 2, 2013 at 8:14 AM

To: Rosemary Dettling <rdettling@felsc.com>, "Godsave, Alan R CIV (US)" <alan.godsave@cpms.osd.mil>
Cc: "mmearnold@gmail.com" <mmearnold@gmail.com>

Classification: UNCLASSIFIED
Caveats: FOUO

Ms. Dettling,

The Report of Investigation was sent to both Mr. Arnold and your office on 11 June 2013. According to my records, Mr. Arnold received his copy on 14 June 2013.

It was a package, which sometimes takes a little longer to make it to the U.S., but I will follow up with our mailroom to check the status.

Thank you,

Eric

Eric Zelko
Equal Employment Opportunity
USAG Ansbach
Tel DSN:
Tel CIV: 0981-183-7938
Email:


-----Original Message-----
From: Rosemary Dettling [mailto:                    ]
Sent: Tuesday, July 02, 2013 3:34 AM
To: Godsave, Alan R CIV (US)
Cc:                         ; Zelko, Eric J CIV USARMY IMCOM EUROPE (US)
Subject: Re: Marvin Arnold

Thank you. Do you happen to have their email?

Rosemary Dettling, Esq.
Federal Employee Legal Services Center
1629 K Street, NW, Suite 300
Washington, DC 20006
Tel.
Fax


From: "Godsave, Alan R., , DCPAS Civ" <                              >

Date: Monday, July 1, 2013 4:06 PM
To: Rosemary Dettling <           >
Cc: <         >, "Zelko, Eric J CIV USARMY IMCOM EUROPE (US)" <           >
Subject: RE: Marvin Arnold

Hello Ms. Dettling,


The Report of Investigation with respect to Mr. Arnold's case was made available to the agency on June 7, 2013. The agency is responsible for providing a copy of that Report to you and/or Mr. Arnold. Please contact the agency's EEO Office for information related to the status of the processing of Mr. Arnold's complaint.


Thank you,


Alan Godsave

Investigator

Investigations & Resolutions Directorate (IRD)

Defense Civilian Personnel Advisory Service


Phone (when calling from within Germany, dial): 0612-6700-3562

Phone (when calling from the U.S., dial):           OR

Phone (when calling from the U.S., dial):          (U.S. number)


FOR OFFICIAL USE ONLY - This email and any attachments may contain information that is protected from disclosure by Federal law (the Privacy Act of 1974) and should be viewed only by those with an official "need to know." If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the content of this information is prohibited. If you have received this communication in error, please notify me immediately by e-mail, delete the original message, and destroy any hard copies you may have created. Any misuse or unauthorized disclosure may result in both civil and criminal penalties.


From: Rosemary Dettling [mailto:          ]
Sent: Monday, July 01, 2013 8:44 PM

To: Godsave, Alan R., , DCPAS Civ
Cc:
Subject: Marvin Arnold


Hi Mr. Godsave:


I am representing Mr. Arnold in his EEO case. Can you please provide us with a status update? Thanks.


Rosemary Dettling, Esq.

Federal Employee Legal Services Center

1629 K Street, NW, Suite 300

Washington, DC 20006

Tel.

Fax


Classification: UNCLASSIFIED
Caveats: FOUO





**Marvin Arnold <mmearnold@gmail.com>**

## Arnold v. Army: Order Entering Judgment

**Joanne Dekker** <jdekker@felsc.com>                                          Wed, Jun 3, 2015 at 11:45 AM
To: Rosemary Dettling <rdettling@felsc.com>, "mmearnold@gmail.com" <mmearnold@gmail.com>

Hi, Mr. Arnold,

It would seem that you and the judge were on the same wavelength, at least as far as getting a decision in your case. Unfortunately, she found against you. However, she only addressed the issue of age, not race, but I believe the outcome would be the same based on the decision.

The decision also focuses on the interviews and not the overall qualifications of you and the selectee, which has been your argument all along. we could appeal the decision on the bases that it didn't address the race issue but I believe that it would be the same result as age, i.e., the panel emphasized the interview. We could then argue that the selection should have been qualifications over interview. However, I am not very confident that the appeals judges would look at it differently.

The next step is for the agency to accept (or reject) the EEOC decision. At that time, the agency issues its Final Agency Decision and you can appeal from that FAD.

I think we gave it our best shot. Please let me know your thoughts at your earliest convenience.

Best regards,

Joanne

**From:** MONIQUE CIOFFALO <MONIQUE.CIOFFALO@EEOC.GOV>
**Sent:** Wednesday, June 3, 2015 9:41 AM
**To:** Joanne Dekker; Rosemary Dettling; mmearnold@gmail.com; david.h roberts2.civ@mail.mil

**Subject:** Arnold v. Army: Order Entering Judgment

[Quoted text hidden]

**Order Entering Judgment and SJ Decision.pdf**
579K

3



**Marvin Arnold <mmearnold@gmail.com>**

# Question about motion response
5 messages

---

**jdekker@felsc.com** <jdekker@felsc.com>
To: Marvin Arnold <mmearnold@gmail.com>

Mon, Mar 2, 2015 at 6:45 PM

Hi, Mr. Arnold,

I've reviewed the attachments and am finding some great items in your comments. Question: where in the vacancy announcement does it require the applicants to have the BLS certification? If you are "licensed" does it automatically include BLS certification? Will I find that BLS certification set out in your resume/application?

Thanks,

Joanne

---

**Marvin Arnold** <mmearnold@gmail.com>
To: jdekker@felsc.com

Mon, Mar 2, 2015 at 11:48 PM

Hello Attorney Dekker:

I have attached the part of the announcement that refers to the 30 days (IF 286). Please look at paragraph b. BLS certification is a requirement for Credentialing. I remind you that this document is dated 23 June 2010 but I can guarantee you that the BLS requirement has not changed. If one does not have it one cannot be credentialed and that has to occur in order to work in the clinical environment. Mr. Kreager had been working in a non-clinical environment which did not require BLS certification and therefore he had to get it before he could be employed in the job. I am sure this is why they took so long to fill the position. As such, my license (state license), does not automatically include BLS certification. You will find mention of my BLS Certification in the resume' and/or application as it is a necessary part of the process of working in a clinical environment.

Marvin Arnold
[Quoted text hidden]
--
Marvin Arnold

---

📄 **Candidate Evaluation Referral 30 day issue 2015-03-02.PDF**
668K

---

**jdekker@felsc.com** <jdekker@felsc.com>
To: Marvin Arnold <mmearnold@gmail.com>

Tue, Mar 3, 2015 at 10:33 AM

Thanks for getting back to me. Here's my problem: nothing in paragraph b specifically says anything about Credentialing or BLS. It refers the reader to minimum requirements set by DOD and OPM. The judge knows nothing about BLS or Credentialing for this position. What can I point the judge to that shows that BLS is a requirement, that you have it and that Kreager didn't have it at the time of his application?

Also, I looked at your resume in the ROI (P. 220) and don't see the BLS certification listed.

---

Thanks.

Joanne
[Quoted text hidden]

---

**Marvin Arnold** <mmearnold@gmail.com>
To: jdekker@felsc.com

Tue, Mar 3, 2015 at 8:52 PM

Attorney Dekker:

I was able to go to usajobs gov and download the announcement for the job (the original application process). I have attached the entire job announcement and if you look on page 4 of 9 I have put in brackets the section on BLS. This information along with the document I sent you about 30 days should suffice. Also, I just highlighted the section on BLS. If you read the entire document you will see some interesting things. For example on page 1 of 9 there is a statement that says, "Applicants who applied under Vacancy Announcement EUJJ12726235643841 must re-apply". Additionally, on page 5 of 9 there is a section titled, "How you will be evaluated."

I hope this takes care of the BLS question. Thanks!

Marvin Arnold
[Quoted text hidden]
--
Marvin Arnold

🗂 **Supervisory Social Worker Application for Vilseck 2015-03-03.PDF**
4747K

---

**Marvin Arnold** <mmearnold@gmail.com>
To: jdekker@felsc.com

Tue, Mar 3, 2015 at 9:29 PM

Attorney Dekker:

In my last message I did not address your question about to know I had my BLS certification and Mr. Kreager did not have his. I have attached my BLS certification from May 2011 through April 2015. Clearly I had my certification well ahead of the application process. I am sure we can ask to see Mr. Kreager's BLS certification. Either he had it in a timely manner or he didn't. What are your thoughts about this?

Marvin Arnold
[Quoted text hidden]
--
Marvin Arnold

🗂 **BLS CertificationII 2015-03-03 (1).PDF**
315K

4



**Marvin Arnold <mmearnold@gmail.com>**

---

## Re: Request for Information (Marvin Arnold)

---

**Joanne Dekker** <jdekker@felsc.com>                                   Thu, Jul 9, 2015 at 4:02 PM
To: Marvin Arnold <mmearnold@gmail.com>, Rosemary Dettling <rdettling@felsc.com>


Hi, Mr. Arnold,

The billing person is out of the office until Monday but we have asked her to generate an "invoice" showing the billings to your EEOC and MSPB cases. To my knowledge, there was only one billing account created but the cases have been identified either as the EEOC case or the MSPB case so you will be able to tell what work was done for each case. Please let us know if you have any questions about the billings.

You mentioned in your follow up email about where to send documents. Can you explain what documents you would be sending so I can direct you to the correct address?

Best regards,

Joanne

---

**From:** Marvin Arnold <mmearnold@gmail.com>
**Sent:** Wednesday, July 8, 2015 12:06 AM
**To:** Rosemary Dettling; Joanne Dekker
**Subject:** Request for Information

Hello Attorney's Dettling and Dekker:

I am continuing on with my pursuit of justice. Your messages after the Judgment from A.J. Cifallo was somewhat confusing but it was clear that you did not want to continue on. What I am requesting from you is a detailed listing of all of the legal actions you did on my case(s). If possible I would like for you to differentiate between my Racial/Discrimination case and my Veterans Status case. Thank you!

--
Marvin Arnold

5

# U.S. Army Medical Activity, Bavaria

*Scroll of Appreciation*

is awarded to the

# DR. MARVIN ARNOLD

This Certificate of Appreciation is awarded to Dr. Marvin Arnold, Family Advocacy Program Social Worker, Family Advocacy Program, BMEDDAC Behavioral Health, Bamberg, Germany, in honor of Social Work Month, March 2011. Dr. Arnold epitomizes true professionalism and dedication and is a true asset to his organization.

BRIAN J. OLDEN
DEPUTY CHIEF
BMEDDAC BEHAVIORAL HEALTH

STEVEN J. BREWSTER
COL, MC
BMEDDAC COMMANDER

"Fortress of Health – Army Strong!"



Job Title:
Department:
Agency:
Job Announcement Number:

**The contents of the announcement can still be** ⠀⠀⠀⠀.

$71,674.00 to $93,175.00 / Per Year

Monday, June 25, 2012 to Friday, June 29, 2012

GS-0185-13

Full Time - Permanent

13

1 vacancy - Vilseck Germany

Status Candidates (Merit Promotion and VEOA Eligibles)

**Civilian employees serve a vital role in supporting the Army mission. They provide the skills that are not readily available in the military, but crucial to support military operations. The Army integrates the talents and skills of its military and civilian members to form a Total Army.**

About the Position:

USA Medical Command

Health Clinic, Vilseck

**VILSECK, GERMANY**
This position is located in Vilseck, Germany. The town of Vilseck is situated on the river Vils ('eck' in German means corner and so Vilseck is on a corner or edge of the Vils), a tributary of the Naab river. The Grafenwoehr Training Area complex (GTA) is a live-fire multi-national shooting range and borders the town of Vilseck on the north. The town is home to Germany's first tower museum. The ancient Bavarian village of Vilseck is geographically completely separate from the nearby large American military base which is commonly referred to by the same name. Our communities are truly communities of excellence. The local German communities of Grafenwoehr and Vilseck are rich in history and offer many activities and opportunities for the whole family to enjoy. For additional information please visit

⠀⠀⠀⠀⠀.

Applicants who applied under Vacancy Announcement EUJJ12726235643841 must re-apply.

Who May Apply:

**Applicants WorldWide in the categories listed below are eligible to apply for this position.**

- Current Civilian Army employees with competitive status *

- DoD Transfer (excluding Army)

- Executive Order 13473 for Certain Military Spouses

- Reinstatement

- 30% Disabled Veteran

- Veterans Employment Opportunity Act (VEOA)

- Other Interchange Agreements

- People with Disabilities

- Military Spouse Preference for Overseas Employment

- Family Member Preference for Overseas Employment

- Family Member Preference for Overseas Employment on LWOP

- Interagency Career Transition Assistance Plan (ICTAP)

- CHILD CARE BACKGROUND CHECK IS REQUIRED.
- Travel Time is 25%.

You will serve as the supervisory clinical social worker; responsible for professional standards of service, promoting efficient practice, and coordination of social work services; use expert knowledge of a psychological procedures and practices to manage the duties of subordinates; responsible for clinic staff. Assign work based on priorities, difficulty and capabilities; provide technical oversight; develop performance plans, evaluate work performance, and recommend ratings of record; interview candidates for positions; take disciplinary measures; identify developmental needs of employees and arrange for needed training. Prepare and brief clinical reports; responsible for compliance with standard of care; reports to MEDCOM and other Commands; may Chair or Alternate Chair of the FAP Case Review Committee (CRC) or other meeting; performs management functions including policy writing, planning, evaluation, organization, quality management, record and time management, program analysis, budget, scheduling, compilation of information, report development, training and other duties as assigned. Oversight of: risk and clinical assessment; compilation, analysis, decision making and case management; crisis intervention; treatment; record keeping; training; performance evaluation and counseling. Risk and Clinical Assessment: use advanced professional knowledge and judgment to independently plan and carry out the clinical social work component of the FAP in accordance with program requirements and accepted standards of professional conduct. Compilation, Analysis, Decision Making and Case Management: obtain relevant data from legal, investigatory, medical,

command, social service agencies, schools, resource programs, etc. to compile information and present for a determination of abuse or neglect to the FAP CRC. Crisis Intervention: Perform crisis intervention services and appropriate triage to assist in the protection and safety of victims and Families. Where significant hazard of severe or continuing abuse is identified, recommendation and takes action to effect removal and protection of Family members and others from the abuser. Treatment: Develop treatment plans based on identified problems, psychosocial factors and treatment capabilities. Make treatment recommendations to the multi-disciplinary FAP CRC team. Record Keeping: Use paper-based forms and automated systems, prepare related records and documents for inclusion in the FAP record and ensures timely and accurate entries in the record (FAP and AHLTA). May be required to use other computer programs including the Family Advocacy System of Records (FASOR). Training: Required to attend training on abuse through the AMEDDC&S at the Family Advocacy Staff Training courses. Provide training on FAP issues for Departmental in-services, MTF staff, conferences and others outside agencies.

Specialized experience: To qualify applicants must possess at least one year of specialized experience, equivalent to the GS-12 grade level in the Federal service. Specialized experience is defined as performing work in: assessing incidents of abuse and consolidating the information for a determination of abuse or neglect by the Case Review Committee; conducting risk assessments, clinical interviews, and psychosocial assessment of children and adults; or providing treatment to victims, offenders, and family members of those involved in domestic violence, child abuse, or neglect.

Demonstrated work experience that equipped the applicant with the particular knowledge, skills, and abilities to successfully perform the duties of the position, and that is typically in or related to the work of the position to be filled.

The related work experience must have been equivalent in difficulty and complexity to the next lower grade level.

Time in Grade Requirement: Applicants who have held a General Schedule (GS) position within the last 52 weeks must meet the Time in Grade Restriction.

Time in Grade Restriction: Must have 52 weeks of Federal service at the GS-12 grade (or equivalent).

Applicant must have completed a master's degree in social work from a school of social work which has been accredited by the council on social work education.

On your resume, please include college/university, dates attended, degree achieved, semester hours earned, GPA, major field of study, 24 semester hours of specific courses and course hours in your major. Failure to provide this education information on your resume may result in an ineligible rating.

Other Requirements:
Click _ **for more information.**

Male applicants born after December 31, 1959 must complete a Pre-Employment Certification Statement for Selective Service Registration.

You will be required to provide proof of U.S. Citizenship.

One year trial/probationary period may be required.

One-year supervisory probationary period required.

Direct Deposit of Pay is Required.

A current, valid, and unrestricted MSW state license to practice clinical social work independently from a U.S. state, District of Columbia, commonwealth, territory, or jurisdiction is required and must be maintained (LCSW, LCSW-C, LICSW, etc.) IAW AR 40-68.

Applicant must qualify for and maintain credentials as an independently licensed clinical social worker. Must fulfill continuing education requirements to support domestic violence and child abuse ongoing education as well as for licensing requirements.

Applicant must have at least four years of post-graduate clinical or counseling experience and two years in the field of domestic violence and/or child abuse and neglect.

Applicant must have experience in clinical supervision.

Public law 101-657, section 231, and public law 102-190, section 1094, requires the successful completion of a criminal history background check to serve in this position. This requirement is also in DODI 1402.5 and AR 608-18.

Applicant is subject to central registry check (department of defense child and domestic abuse reporting system).

Applicant must be willing to perform after hours on-call duties.

Applicant may be required to testify before agencies and/or in court.

All required background checks of AR 215-3, must be successfully completed and maintained including Child and Youth National Agency Check with Inquiries (CNACI); to include a health assessment is required.

Must provide documents for credentialing for health care positions.

All Health Care Providers must be able to obtain and maintain current Basic Life Support (BLS) Training and certification. Current Advanced Life Support or other advanced certification does not supercede BLS completion.

You may claim Military Spouse Preference.

Applicants claiming veterans preference must clearly show an entitlement to such preference on the resume/supplemental data submitted.

A current and valid state driver's license is required. Some local and regional travel may be required.

This position has a mandatory seasonal influenza vaccination requirement and is therefore subject to annual seasonal influenza vaccinations. Applicants tentatively selected for appointment to this position will be required to sign a statement (Condition of Employment) consenting to seasonal influenza vaccinations.

Condition of employment:

This position is covered by the civilian drug abuse testing program. Applicant is required to sign a DA form 5019-r, and/or DA form 7412 "condition of employment for certain civilian positions identified as critical under the drug abuse testing program," or a memorandum of understanding MOU).

Your application package (resume, supporting documents, and responses to the questionnaire) will be reviewed to verify that you meet the basic eligibility and qualification requirements. Your responses to the questionnaire will be used to evaluate your relevant personal, educational, and work experiences.

**Interagency Career Transition Assistance Program (ICTAP).** The Interagency Career Transition Assistance Plan (ICTAP) provides eligible displaced Federal competitive service employees with selection priority over other candidates for competitive service vacancies. If your agency has notified you in writing that you are a displaced employee eligible for ICTAP consideration, you may receive selection priority if: 1) this vacancy is within your ICTAP eligibility, 2) you apply under the instructions in this announcement, and 3) you are found well-qualified for this vacancy. Well-qualified is defined as meeting all of the minimum qualification standards and eligibility requirements as well as possessing skills that clearly exceed the minimum qualification requirements for the position. Under competitive delegated examining, an ICTAP eligible will be considered well-qualified if they attain an eligibility rating of 90 or higher, not including points for veterans' preference. You must provide proof of eligibility with your application to receive selection priority. Such proof may include a copy of your written notification of ICTAP eligibility or a copy of your separation personnel action form. Information about ICTAP eligibility is on OPM's Career Transition Resources website at http://www.opm.gov/ctap/index.asp.

- Comprehensive health and life insurance
- Competitive salaries
- Generous retirement programs
- Paid holidays, sick leave, and vacation time
- Flexible work environment and alternate work schedules
- Paid employment related training and education
- Possible student loan repayment
- Payment of licenses, certification, and academic degrees as applicable
- Bonuses, incentives, and awards as appropriate for the job.

For more information on benefits and entitlements please visit:

- Selection is subject to restrictions resulting from Department of Defense referral system for displaced employees.
- The Department of Defense (DoD) policy on employment of annuitants will be used in determining eligibility of annuitants. The DoD policy is available at
- In accordance with section 9902(n) of title 5, United States Code, annuitants reemployed in the Department of Defense shall receive full annuity and salary upon appointment. They shall not be eligible for retirement contributions, participation in the Thrift Savings Plan, or a supplemental or redetermined annuity for the reemployment period. Discontinued service retirement annuitants (i e. retired under section 8336(d)(1) or 8416(b)(1)(A) of title 5, United States Code) appointed to the Department of Defense may elect to be subject to retirement provisions of the new appointment as appropriate. (See DoD instructions 1400.25, Volume 300, at                                          .)
- Applicants must comply with the Exceptional Family Member Program requirements as outlined in the DoD Instruction 1315.19 at
- U.S. citizens overseas under ordinarily resident status are not eligible for appointment under the Status of Forces Agreement.
- Locality pay does not apply in the overseas area.
- On this overseas accompanied tour, medical and DoDDS special education services may not be available in the immediate location of this position.
- In the overseas areas, access for civilian employees and their families to military medical and dental treatment facilities is on a space-available and reimbursable basis only. Medical care may be provided by host nation providers. The availability and level of care at host nation medical facilities will vary by location. Movement overseas may require you to initiate a change in your health benefits plan to ensure coverage.
- Pay retention may be offered to successful applicants for positions at overseas locations. For this provision to apply to employees already overseas, the selected individual would have to require a permanent change of station move and would have to be selected as a result of a recruitment effort that had been extended outside of the overseas command involved.

## OVERSEAS

- **Europe VRA policy.**

- The initial length of this overseas tour is 3 years.

- Candidates initially selected from the U.S. may be eligible for certain foreign area benefits.

### TRAVEL

- Payment of Moving Expenses may be authorized.
- Temporary Duty (TDY) travel is 25 percent.

To apply for this position, you must provide a complete Application Package which includes:

1. Your resume: If you submit a resume with inappropriate material e.g. photos, you will not be considered for this vacancy. Your resume may be submitted in any format. For qualifications determinations your resume must contain hours worked per week and the dates of employment

(i.e., HRS per week and month/year to month/year or month/year to present). Resumes that do not contain this information will be marked as insufficient and applicants may not receive consideration for this position.

2. Your responses to the questionnaire.

3. Additional required documents (see Required Documents section below)

The complete Application Package must be submitted by 11:59 PM (EST) on Friday, June 29, 2012.

To begin the process, click the **Apply Online** button to create an account or log in to your existing USAJOBS account. Follow the prompts to complete the questionnaire. Please ensure you click the **Submit My Answers** button at the end of the process.
To fax supporting documents you are unable to upload, complete this cover page
~~~~~~~~~~~~~~~~~~~~~~~~~~~~ using the following Vacancy ID689646. Fax your documents to **1-478-757-3144**.

If you cannot apply online, you will need to provide the same information obtained in the online process. You will need three documents to complete this process: the Occupational Questionnaire, the scan response form, U.S. Office of Personnel Management Occupational Questionnaire (OPM Form 1203-FX), and a separate document described in item #3. below.

1. Download the scan response form, OPM Form 1203-FX, from

2. ~~~~~~~~~~~~~~~~~~~~~~~~. Use this information to guide you in completing the OPM Form 1203-FX. Note that you may be instructed to leave some responses blank on the scan response form.

3. On a separate document, please identify which position(s) on your resume (include title, organization, and employment dates) support any response of "E" ("I am considered an expert in performing this task....").

4. Fax the completed OPM Form 1203-FX, along with your required and supporting documents, to 1-478-757-3144. Your OPM Form 1203-FX will serve as a cover page for your fax transmission.

PLEASE NOTE: The numbering on the OPM Form 1203-FX will not match the Occupational Questionnaire. Section 25 of the OPM Form 1203-FX continuously numbers from number one, while the Questionnaire starts each section of questions with number one. When entering your responses please continue regardless of number sequence. This issue has been identified and will be resolved as soon as possible.

It is your responsibility to verify that information entered, uploaded, or faxed (i.e., resume) is complete, accurate, and submitted by the closing date. Uploaded documents may take up to one hour to clear the virus scan. Faxed documents must be completely transmitted by 11:59p.m. Eastern Standard Time on the closing date of the announcement.

The Department of the Army provides reasonable accommodations to applicants with disabilities. If you need a reasonable accommodation for any part of the application and hiring process, please notify the servicing civilian personnel unit. Requests for reasonable accommodation are made on a case-by-case basis.

The following documents are required:

- Resume: If you submit a resume with inappropriate material e.g. photos, you will not be considered for this vacancy. Your resume may be submitted in any format. For qualifications determinations your resume must contain hours worked per week and the dates of employment (i.e., HRS per week and month/year to month/year or month/year to present). Resumes that do not contain this information will be marked as insufficient and applicants may not receive consideration for this position.
- If the position has an education requirement or you are qualifying based on a combination of education and experience or solely on education, you must submit your college transcripts with your application.
- You MUST submit documents verifying your eligibility with your application package. These documents may include, but are not limited to: for current employment verification, a SF-50 or DD3434; for MSP claims, PCS orders and marriage certificate; for verification of Veteran status, DD214 (which indicates character of service) SF-15, VA Letter and/or Activation/Deactivation orders.

**If you fail to provide these documents, you will be marked as having an incomplete application package and will not be considered any further.**

PLEASE NOTE: Documents submitted as part of the application package, to include supplemental documents, may be shared beyond the Human Resources Office. Some supplemental documents like military orders and marriage certificates may contain personal information for other than the applicant. These documents may be sanitized to remove such personal information before submission with the application. Applicants may be asked to provide an un-sanitized version of the documents upon selection to confirm eligibility.

Central Resume Processing Center
Phone: (410)306-0137
Email: APPLICANTHELP@CONUS.ARMY.MIL

Agency Information:
W38311 BMEDDAC VILSEK FAMILY
ADVOCACY PROG
314 Johnson St
Aberdeen, MD
21005

Once the application process is complete, a review of your application will be made to ensure you meet the job requirements. To determine if you are qualified for this job, a review of your resume and supporting documentation will be made and compared against your responses to the occupational questionnaire. The numeric rating you receive is based on your responses to the questionnaire. The score is a measure of the degree to which your background matches the knowledge, skills, and abilities required of this position. Please follow all instructions carefully. Errors or omissions may affect your rating.

To check the status of your application or return to a previous or incomplete application, log into your USAJOBS account, select *My Applications*, and click on the *more information* link under the application status for this position.

If no email address is provided, applicant is responsible for checking status updates and notifications in Applicant Manager. Hard copy notifications will not be sent to applicant.

For questions regarding the status of your application, eligibility or qualifications determination contact:

**Control Number: 319662900**



## SECTION V
## CANDIDATE EVALUATION, REFERRAL, AND SELECTION

### 17. CANDIDATE EVALUATION AND REFERRAL

a. For most positions, CHRA-E uses Resumix (*https://cpolst.belvoir.army.mil/public/resumebuilder/builder/index.jsp*) to fill positions under this regulation. Resumix is an automated rating and referral system. To apply for vacant positions, applicants will be required to submit a résumé to the Army centralized database for processing. Once the résumé is processed in the database, applicants must self-nominate for open vacancy announcements to receive consideration. Résumés and self-nominations must be received by the closing date of the vacancy announcement.

b. To be eligible for promotion or placement under this regulation, applicants must meet all eligibility requirements and minimum qualification requirements prescribed by DOD and OPM within 30 calendar days after the closing date of the announcement or within 30 calendar days after the date of the rating for open continuous announcements. For non-NSPS positions, applicants for promotion or placement into a job having greater growth potential than their current job (or one previously held) must have a rating of fully successful or higher in their most recent annual performance appraisal or, for NSPS positions, a level 3 (valued performer) rating or higher in their most recent annual performance appraisal. In the absence of an appraisal, applicants will be presumed to have a rating of fully successful or valued performer.

c. The selecting official will identify the knowledge, skills, abilities, and competencies required for the position, and work with the CPAC representative to identify required and desired skills. The résumés of applicants who are self-nominated will be matched to the required and desired skills. To be eligible for referral, candidates must be among the best qualified. Best qualified is defined as meeting the skill criteria, the OPM minimum qualifications, any special placement requirements, time in grade, and other applicable criteria.

d. There is no minimum or maximum number of applicants that must be referred. A referral list is considered valid if it includes at least three available candidates. A referral list with fewer than three available candidates is also valid when the selecting official chooses to accept the list and make a selection from it.

e. When fewer than three candidates are referred, management may request a supplemental referral list.

f. The CPAC chief or designee will consider all requests for supplemental referral lists based on the facts of the case and determine if a subsequent referral is warranted. When reviewing requests for subsequent referrals, the CPAC chief or designee will ensure merit-promotion principles are upheld. A request for an additional referral because a known applicant did not apply in a timely manner or a name request did not appear on the referral list will not be approved. Requests for supplemental referral lists will be approved based on the following reasons:

(1) After reviewing the referral list, management determines that there are fewer than three available candidates remaining on it. The selecting official must annotate the reason each candidate is not available on the referral list. The CPAC representative will review the annotated referral list.

000286





## Documents for a Response to the Agency

**Marvin Arnold** <mmearnold@gmail.com>                                    Fri, Feb 27, 2015 at 7:51 PM
To: jdekker@felsc.com

Hello:

I just got home and looked at your message.  The attachments are referenced throughout portions of the ROI.
As I thought about the issues involved I remembered something about the issue of what was in the ROI.  I had
not reviewed the ROI completely until I was able to get it from you.  Nevertheless, all the attachment refer to
items that the agency mentions in its motion to dismiss, particularly the comments from the people on the
interview panel.  Surely we have the right to rebut this stuff with evidence to the contrary.  Of course you know
better than I but when an issue is raised my understanding is that it then become open for rebuttal.  They all
relate to things mentioned in their Motion.  I remember feeling uneasy about the comment relating to what was in
the ROI.  I do not even see my initial complaint, but it is certainly spoken about.  What is it that you are saying?

Marvin Arnold
[Quoted text hidden]
--
Marvin Arnold

9

<u>Response to the Motion for Summary Judgment</u>

I would like to begin by speaking to the so called "Statement of Undisputed Material Facts. While it is true that I applied for Announcement #EUJJ12726235689646R, Control ID#319662900, the job announcement closed on 29 June 2012. This is important because of the time line that must be gleaned and viewed in the context of the total picture (Att 10). My application was completed and submitted on this date. Since this job announcement closed on 29 June 2012 this would have given Mr. Kreager, the selectee 30 days to obtain his Basic Life Support Certification (BLS), which is critical to have for credentialing purposes. He would have had until July 29 2012 to obtain his BLS. I submit that of all the documents submitted I do not see anything showing Mr. Kreager's date of BLS certification. If he did not have it by that date he would not qualify for the job. Additionally, the "Certificate of Eligibles" as states by the Agency is really a listing of merit. When George Bush became president he instilled a separate entity into the federal bureaucracy called the National Security Personnel System (NSPS) such that literally anyone could be hired into the government. Until that time the person selected was always one of the top three candidates. After President Obama was elected he changed the system back to the way it previously was and I think he did it prior to the selection of Mr. Kreager in August 2012. Mr. Kreager was listed as number 5 on the order of merit list. The agency has submitted an outdated document relating to OPM (IF 286), that does not reflect the current system. The document the agency submitted is dated 23 June 2010.

I also applied for the job of Supervisory Social Worker in Ansbach, Germany Announcement #EUHJ125201410510555 that opened 26 April 2012 and closed on 2 May 2012 (Att 6). This is important because this is the job that Ms. Scholz received based on what Mr. Olden said was a Medical Command directed selection, a person with whom I was competing for the supervisory job. I have not seen any documentation that this was a Medical Command directed selection and if it was, why was an announcement of the job made and my name submitted to the selecting official (Att 7). Ms. Scholz was selected for the job one day after it closed but I was sent an updated announcement on 9 May 2012 saying another candidate, Ms. Scholz was selected (Att 8). Again, if this was a Command Directed selection why was the process open for applications?

On item #4 it states that Mr. Olden served as the selecting official for announcement # EUJJ12726235689646R but in fact he was the selecting official on the supervisory social worker job in Bamberg in 2010 (Mr. Adams was selected) and he was the selecting official for the supervisory job in Schweinfurt in 2011 (Mr. John Hartz was selected). Mr. Olden has built an empire where he is the sole determinant of who is hired and fired in Behavioral Health. So, an important question to ask is, who does Mr. Olden work for? On what is called, "Local Clinic BH ORG Chart" he is shown to be equivalent to the Officer in Charge (OIC) of Behavioral Health reporting directly to the Hospital Commander, bypassing the Deputy Commander for Clinical Services and the OIC (IF 187). Another chart on IF 186 called BMEDDAC BH Org Chart, shows Mr. Olden as the Behavioral Health Chief reporting to the Deputy Commander for Clinical Services (DCCS) and he is on an equivalent level with the Clinic Commanders. Yet

another called "BMEDDAC Organizational Chart" on IF 185 does not show Mr. Olden or Behavioral shown at all, at least not in the traditional sense. What this shows is that Mr. Olden is his own boss and answers to no one literally. Yes, someone does write his evaluation but he calls the shots. He controls Behavioral Health with an Iron Fist and many people are literally afraid to say anything in opposition to him. That some of his employees would perjure themselves rather than cross Mr. Olden will come as a surprise to no one. They do what he tells them to do.

Item#5 states that Mr. Olden "reviewed the resumes looking for candidates with Family Advocacy Program (FAP) experience, selected two (2) candidates (Complainant and Mr. Kreager) to be interviewed, initiated reference checks for the selected interviewees and established a seven (7) person interview panel to conduct the interviews and make a hiring recommendation." It should be noted that the closing date for announcement # EUJJ12726235689646R was 29 June 2012 (Att 10). The announcement of the person who was selected was on 27 September 2012 (Att 16). On 2 July 2012 my name was sent to the selecting official, Mr. Olden, for consideration. The was approximately a 2 month time frame in which Mr. Olden could have interviewed me and Mr. Kreager if he chose to do so. I contend that Mr. Kreager was not completely minimally qualified and he needed time to get qualified. I contend that he did not make the original list and it was sent back to personnel and he was able to get on the next list that was generated. Regardless, this shows that Mr. Olden had absolutely no intention of selecting me because of my race and age. This was a pattern he had repeated over the course of three years.

After the interview I waited to hear something about the results, I received nothing. Mr. Olden had sent a message out on 15 August 2012 but said the interview was tentative (Att 12). I wrote to Mr. Olden on 27 August 2012 asking him for feedback from the interview, 12 days after the interview (Att 13). He sent me what is included in Att 14. On 2 October 2012 I received a message from Mr. Olden (Att 15), but on 27 September 2012 I received a message from personnel saying another person, Mr. Kreager, was selected (Att 16). Mr. Olden never had any intention of selecting me because of his racial and age bias, particularly his racial bias. This is clearly reflected in the make-up of the people he selected for the interview panel.

In terms of references Mr. Olden continued to make an issue out of me saying for him to contact me first before he contacts. Personnel regulations allows for a person to reject contact with references at all without prejudice. In my case I was attempting to clarify with Mr. Olden whether he wanted just current supervisors or my supervisors from the past (Att 17). I wanted this clarification because many of my past supervisors were either incapacitated or deceased. Of the supervisors I did put down he did not contact a number of them and appeared to attempt to discourage any positive feedback. I checked with several references and they said he did not contact them.

Mr. Olden makes reference to Ms. Scholz and Mr. Adams both who were my supervisors. Mr. Adams was one of the 2 people Mr. Olden let resign from the Federal Government because they were not qualified under the rules of Army Europe. He was allowed to go to the U.S. for 30 days and return to take the job as supervisory social worker in Bamberg, though he had little experience in FAP. Not only did I compete with Mr. Adams for the supervisory job I had to push back on his sexual harassment of me (Att 28). I was very offended by his advances and I let him know how I felt. It is little wonder that he says what he has said.

Ms. Scholz had been out to cause difficulty for me from the time she became a supervisor. I did my job very well and avoided conflicts as much as humanly possible. What is one to do when one gets a message as shown in Att 27. Ms. Scholz literally accused me of something that was completely untrue and never bothered to check out the circumstances. I cannot say what was motivating this kind of behavior except orders from Mr. Olden.

I have looked at the comments from people on the interview panel and draw the following conclusions:

Ms. Johnson said that I "had a seemingly pessimistic view of Army systems and leadership", this from someone who has never led anybody. And what does a pessimistic view of Army systems and leadership mean? What did I say to make her conclude this? She goes on to say I did not give solid, concrete answers to anyone's questions, "I was particularly concerned with his response about the FAP record system." What about the record system? No one seems to remember the question but there are hints and intimations relating to nothing relevant. Who is the authority on FASOR, Family Advocacy System of Records? Perhaps the persons who are now talking about the record system do not know as much or anything at all about the system. We had paid employees, Medical Administrative Assistants who train on FASOR and perform the function of FAP Administration who know about the system. Their names are Bernt Volk (worked in Schweinfurt) and Stefan Lutsch (worked in Bamberg). I would suggest that the question about how much I know should be proposed to them. It should be noted thatWhen one looks at the supposedly interview questions it would be hard pressed to find something relating to "a pessimistic view of the Army". If these were the questions which question(s) generated the responses from me that she is talking about? She also says that "we need a solid leader with commitment to teamwork and I didn't get that vibe from (Complainant)...Mr. Kreager appeared to be confident and clinically...he has extensive experience in child protection. She then states that "I am somewhat concerned about his lack of FAP experience, but I had a "feeling" he would be committed and willing to learn." What pray tell does this mean? She wants a solid leader who has no experience in the field in which he would be leading people, but her "vibe" says he is the guy. Perhaps we would all do better with a soothsayer. Lastly, she states that Mr. Kreager would be open to communication (see Att 19-26). I think that these documents will show that I communicate just fine.

Next is Ms. Stettler who admits right away that Mr. Kreager "does not have much FAP experience" but "I think he has positive energy", and the skills to learn. What is this stuff called positive energy? Family Advocacy is a job that requires expertise and experience to perform, particularly in supervision because the decisions made if not done with experience and sound judgment could get a child killed. One does not come into this arena attempting to learn how to prevent Family Violence. This is probably why Mr. Kreager lasted one year or less on the job as a clinical supervisor. Ms. Stettler is singing the same song as Ms. Johnson and this is the theme among the people Mr. Olden has in his pocket. She alludes to me not having the skills needed to be able to work with a variety of people especially if those people held different opinions from me. I have no idea to what she is referring but I again say look at Attachments 19-26 to see that I have indeed worked with a variety of people. It is unclear to me where she is attempting to go with the checklist thing. She also mentions me being "condescending throughout the whole interview and appeared fairly negative. Again what does this mean and to which question(s) is she referring. These are all catch words or phrases and do not point to anything specific and no one has made any connection with the so called interview questions. This is one of those things where if you can get enough people to say something especially if it is false pretty soon people will believe it.

Coming behind Ms. Stettler is Ms. Mask who said she did not participate in the interview with Mr. Kreager but lo and behold, she would take him anyway. What does she mean when she states that the questions were not answered in "a concise and concrete manner?" What question(s) is she talking about? Negative, concise, could indicate difficulty with authority. She clearly is talking about someone else as she states I "did not answer why I was interested in a leadership position at this time, as opposed to times in the past where he was aked to enter into leadership and declined those positions." I have absolutely no idea to what she is referring.

Then we get to Ms. Foxall, the rational, logical person who gave what can only be called the fairest assessment of all of the participants. What is it in the air or water that can explain why her assessment is so different from the others? Perhaps Mr. Olden does not have the hold over her that he has over the others.

I refer the reader to page 411 of the IF as there are two thing I want to point out because some members of the interview panel made reference to my ability to get along and they consistently used the word "negative". In Mr. Olden's delaration he used the same word many times. This is something that was apparently conveyed to some members of the panel. In fact, in my opinion it is Mr. Olden and his cohorts who are negative and pessimistic and this is based on their responses which lack clarity and have no relationship to the so called questions. On IF 411 I also make reference to a letter written by Mr. Adams again for emphasis. I refer the reader Adobe (Att 8) to show that when the truth came out Dr. Vartanian had to recall his statement from CPO. The issue of getting along with supervision kept coming up because of a letter wrote to CPO by Dr. Vartanian at the request of Mr. Adams. The truth came out and the letter was retracted.

Regarding Dr. Felde, I believe the fact that she stated in her declaration that Mr. Olden is her "mentor" says enough. She simply is not going to go against her mentor though I believe that under the right circumstances, like a hearing where she can be cross examined, she would be truthful.

I will conclude by pointing to the one question on the list of assumed questions that comes closest to something that was asked regarding my Management Philosophy. The second part of the question does not make sense to me in terms of my philosophy because my philosophy would necessarily lead to the answer to the second part, "what approach would you take with staff reporting to you? I mentioned in the interview that I would talk to the workers and treat them with respect and dignity. I went on to say that my approach would be to treat people equally and make it a point to be supportive of anyone who works for me. If this is a sin then I have sinned.

Attorney Dekker, I will send this document first and then send the other documents which should be easy to put in order. I hope this add some muscle to my case. Thanks!


Marvin Arnold





**DEPARTMENT OF THE ARMY**
US ARMY HEALTH CLINIC SCHWEINFURT
CMR 457, BOX 7
APO AE 09033

REPLY TO
ATTENTION OF

MCEUB-SFT                                                          18 May 2012

MEMORANDUM FOR Commander. US Army Medical Command, Bavaria MEDDAC, CMR 411. APO AE, 09112

SUBJECT:  Open Door Policy Office Visit

1. Sir. thank you for taking the time out of your busy schedule to speak to me. I have organized the substance of some of the things I want to say and have attached them in case of limited time. I ask that you look at what I am submitting to you for consideration. I essentially want you to consider my work performance here in the B-MEDDAC in relationship to my request for extension. I would also ask that you look into concerns about pre-selection in the promotion process.

2. One set of attachments is a sampling of some of the many things I have been involved in at both Schweinfurt and Bamberg. I placed my resume' on top of the stack to point out my level of education and experience and the fact that I have been doing the job for which I have applied for over 30 years as both a military officer and civilian. Additionally I perform Evaluations for the Military Court process. I do Chapter Evaluations per AR 635-200, Drill Sergeant Evaluations, NARSUMs for Medical Boards on request. Suicide Prevention Training and Briefings, Recruiter Evaluations and more. I am also a retired United States Army Officer, something I am very proud to say.

3. In October 2009 I transferred to Bamberg from Schweinfurt. Shortly after my arrival at Bamberg the Supervisor. Mr. Ray Durant decided to exercise his return rights and go back to the United States. I applied for his job and with my background felt I would be considered for the job. I have enclosed the announcement for this job that shows that it opened on October 28, 2009 and closed on October 30. 2009, a period of 2 days. Additionally, two application tracks were open, one for which I could apply and the other that was restricted. The position had been opened and closed twice.

4. Eventually a candidate was chosen who had considerably less experience and education than I had. OK, sometimes this can be understandable. What happened however is that the candidate did not qualify for LQA. He was allowed to terminate his employment, return to the U.S. for 30 days and return as a hire from the U.S..making him eligible for LQA (see attached letter). This may all be legal but when there are other more than qualified candidates available it seems a bit much.

5. In May of 2010 another Supervisory job became available at Schweinfurt, the place where I live. I was commuting daily from Schweinfurt to Bamberg and back. Again I was not considered for the position. What was astonishing to me was that someone was brought over from the United States at great expense to the Army when I was living in Schweinfurt. A few

months later when I inquired about another position in Schweinfurt that was identical to the position I had in Bamberg another person was brought over from the United States at great expense when I live in Schweinfurt.

6. Fast forward to 2012 when two GS-13 jobs became available in the B-MEDDAC. According to CPO when my Request for Extension was denied I was eliminated from the opportunity to get the job because the same person who denied my extension was also the selecting official. Also, for a position of GS-13 who would supervise other GS-12s, the position was opened, closed and the person selected in a matter of less than 2 weeks. In fact, after the announcement closed it took one day for the selection process. No other person was interviewed for a GS-13 job and again it was the same person to make the selection who made all the others. It appears this hire was also pre-selected (see enclosed documents).

7. Col Goodman, I can accept someone else getting a job, all I ask for is a fair process. I believe if the process is fair I can compete with anyone. Sir I am asking for the following:

   a. Approval for my overseas extension request.
   b. A review of the hiring process of the recent GS-13 job.
   c. That you look into the promotion/assignment process in B-MEDDAC Behavioral Health.
Thank You!

8. POC is the undersigned at DSN 314.354-6321 (marvin.arnold1@us.army.mil).

2 Encls
1. Resume and accomplishments
2. Job Announcement Documents

MARVIN C. ARNOLD, Ph.D., BACS, BCD
United States Army Health Clinic
Family Advocacy
Schweinfurt, Germany



 **ATT #6**                    Marvin Arnold <mmearnold@gmail.com>

## Acknowledgement of Occupational Questionnaire
1 message

USASTAFFINGOFFICE@opm.gov <USASTAFFINGOFFICE@opm.gov>          Mon, Apr 30, 2012 at 3:25 PM
To: mmearnold@gmail.com

Application Manager powered by USA Staffing

DA EUR FRANCONIA

UNIT 25850 BOX 37

APO AE  09033

Receipt for:    MARVIN  C ARNOLD

Job Series/Title:      0185/Supervisory Social Worker (Family Advocacy)

Vacancy Identification Number:   HU  651668

Job Announcement Number:      EUHJ12820141651668

USAJOBS Control Number:  315158900

Open - Close Dates:    4/26/2012 - 5/2/2012

This is to acknowledge the receipt of the application package that you submitted for the

job announcement shown above.

It is important to note that a complete application package consists of the Questionnaire

and applicable documents as indicated in the announcement, for example transcripts, proof

of federal employment, and/or Veterans Preference documentation.

To check the status of your application or return to a previous or incomplete application,

log into your USAJOBS account, select My Applications, and click on the more information

link under the application status for this position.

TO ENSURE THAT YOU RECEIVE CONSIDERATION FOR THIS POSITION, YOU MUST READ AND

FOLLOW THE

INSTRUCTIONS IN THE JOB OPPORTUNITY ANNOUNCEMENT.

PLEASE DO NOT RESPOND TO THIS EMAIL MESSAGE. IT IS AUTOMATICALLY GENERATED.

12

 ATT #7

Marvin Arnold <mmearnold@gmail.com>

## Notification Letter Vacancy ID: 651668

Vacancy ID: 651668 <usastaffingoffice@opm.gov>                    Tue, May 8, 2012 at 1:39 PM
Reply-To: sandra.partain@us.army.mil
To: mmearnold@gmail.com

DEPARTMENT OF THE ARMY

DA EUR FRANCONIA

UNIT 25850 BOX 37

APO AE  09033

Dear   MARVIN  C  ARNOLD,

Your status for the position below is as follows:

Position Title:   Supervisory Social Worker (Family Advocacy)

Series/Grade:

0185/13

Promotion Potential:     13

Vacancy ID:     651668

Agency:   U.S. Army Medical Command

Considered For:   W38308 HQS USAMEDDAC BAVARIA

Duty Location:

Ansbach

We have completed the review of your application for this position.  Your name has been referred to the selecting official for

consideration.  You may be contacted by the selecting official if an interview is needed.  You will be notified when a selection has been

made.

Thank you for your interest in employment with the Department of Army.  You are encouraged to visit www.armycivilianservice.com to

view additional Department of Army employment opportunities and information.

**PLEASE DO NOT RESPOND TO THIS EMAIL MESSAGE. IT IS AUTOMATICALLY GENERATED.**

**For additional information, please refer to the vacancy announcement for this position.**

13

   ATT #8                    Marvin Arnold <mmearnold@gmail.com>

## USAJOBS Application Status

| | |
|---|---|
| <notifications@usajobs.gov> [DO NOT REPLY] <notifications@usajobs.gov> | Wed, May 9, 2012 at 7:47 AM |

To: mmearnold@gmail.com

Dear Marvin,

Your application status has been updated for the following opportunity(ies) in USAJOBS. For additional information, log in to USAJOBS.

| | |
|---|---|
| **Control Number:** | 315158900 |
| **Agency Name:** | U.S. Army Medical Command |
| **Job Title:** | Supervisory Social Worker (Family Advocacy) |
| **Series & Grade:** | GS-0185-13 |
| **Announcement #:** | EUHJ12820141651668 |
| **Status:** | Eligible - Application Referred to Selecting Official |

Sincerely,

**The USAJOBS Team**

U.S. Office of Personnel Management
1900 E Street NW. Washington, DC 20415

Our records show that you signed up to be notified when the status of your application for a job you applied to changes. To unsubscribe or update your preferences for USAJOBS notifications, log in to http://my.usajobs.gov.

Add 'notifications@usajobs.gov' to your address book to ensure delivery of USAJOBS emails. If you doubt the authenticity of a USAJOBS email, please visit the USAJOBS site directly at http://www.usajobs.gov using your web browser. From there, you can log in to your account if an activity is being requested or email us directly to inquire about the authenticity of the email by using http://www.usajobs.gov/home/contactus

Please do not reply to this message. Replies to this message are routed to an unmonitored mailbox. If you have questions or comments please go to http://www.usajobs.gov/resourcecenter.

14

 **Gmail**
by Google

ATT #9

Marvin Arnold <mmearnold@gmail.com>

---

## Disposition Letter Vacancy ID: 651668

---

Vacancy ID: 651668 <usastaffingoffice@opm.gov>                    Wed, May 9, 2012 at 9:49 AM
Reply-To: sandra.partain@us.army.mil
To: mmearnold@gmail.com

DEPARTMENT OF THE ARMY

DA EUR FRANCONIA

UNIT 25850 BOX 37

APO AE  09033

Dear   MARVIN  C  ARNOLD,

Your status for the position below is as follows:

Position Title:   Supervisory Social Worker (Family Advocacy)

Pay Plan:       GS

Series/Grade:

0185-13

Vacancy ID:       651668

Announcement Number:     EUHJ12820141651668

Hiring Office:   W38306 HQS USAMEDDAC BAVARIA

Results regarding your recent referral to the Hiring Official are as follows:

Referral Type:   Current or former employees with Federal Civil Service status or VEOA candidates

Appointment Type:       Permanent

Specialty / Grade:     0185 - 13

Promotion Potential:    13

Locations:

Ansbach

Another candidate was selected for this position.

Audit Code:

**NS**

Code Definition:

Not Selected

Code Explanation:

The selecting office has indicated that you were not selected for the position.

Thank you for your interest in employment with the Department of Army. You are encouraged to visit www.armycivilianservice.com to

view additional Department of Army employment opportunities and information.

PLEASE DO NOT RESPOND TO THIS EMAIL MESSAGE. IT IS AUTOMATICALLY GENERATED.

For additional information, please refer to the vacancy announcement for this position.

15

ATT #10                    Main          Help          Logout

user: 68xy23ed

## Application Package Status: Complete

**Job Title:** Supervisory Social Worker (Family Advocacy)
**Vacancy Identification Number:** 689646      **Closing Date:** Friday, June 29, 2012
**Announcement Number:**                        **Contact:** Central Resume Processing Center -
EUJJ127262355689646R                            (410)306-0137
**USAJOBS Control Number:** 319662900           View Announcement
**Applicant:** MARVIN C ARNOLD

Change My Answers      Add Documents      Update Biographic Information      View/Print My Answers

Most information below pertains to the most recent version of your Application Package. (Explain This.)

**Notice to Applicants: Please ensure you keep copies of all documents you uploaded or faxed, including your resume, as well as any notifications sent to you. They will be deleted from the system after 3 years of the closing date of the announcement.**

Details  Checklist

## Assessments

| Status | Name | Date Submitted | Due Date |
|---|---|---|---|
| Complete | Assessment Questionnaire | 6/28/2012 3:05:16 PM | |
| Complete | Assessment Questionnaire | 6/28/2012 3:05:16 PM | |

## Documents
* Security Alert: Protect your privacy

| | Status | Document Type | Source | Date Received | Original File Name |
|---|---|---|---|---|---|
| View | Processed | Other | Upload | 06/28/2012 03:02 PM | RC Letter.jpg |
| View | Processed | Other | Upload | 06/28/2012 03:02 PM | AF DD-214.jpg |
| View | Processed | SF-50 | Upload | 06/28/2012 03:02 PM | Form 50.jpg |
| View | Processed | Resume | USAJOBS | 06/28/2012 02:46 PM | |
| View | Processed | DD-214 | USAJOBS | 06/28/2012 02:46 PM | DD 214 |

## Messages

| | Message Type | Date Emailed | Date Printed |
|---|---|---|---|
| View | Acknowledgement Letter | 6/28/2012 3:05:16 PM | |

## Application Processing Status

| | Status | Date Submitted |
|---|---|---|
| View | Complete | 6/28/2012 3:05:16 PM |



## FW: EUJJ12726235689646R (UNCLASSIFIED)
2 messages

**ATT # 11**

---

**Arnold, Marvin C Dr CTR US USA MEDCOM MEDDAC-B**
<marvin.arnold1@us.army.mil>

Thu, Aug 2, 2012 at 1:35 PM

Classification: UNCLASSIFIED
Caveats: NONE

Marvin C. Arnold, PhD., BACS, BCD
United States Army Health Clinic
Behavioral Health-Family Advocacy
Schweinfurt, Germany
314-354-6231
marvin.arnold1@amedd.army.mil

-----Original Message-----
From: Kelly, Pamela M CIV (US) [mailto:pamela.m.kelly8.civ@mail.mil]
Sent: Thursday, August 02, 2012 1:33 PM
To: Arnold, Marvin C Dr CTR US USA MEDCOM MEDDAC-B
Subject: EUJJ12726235689646R (UNCLASSIFIED)

Classification: UNCLASSIFIED
Caveats: NONE

Good Morning,

You were referred to the selecting official on 9 July 2012.

No selection has been submitted at this time.

Thank you,

Grafenwoehr Rate Review Team

10/7/2012 4:28 PM

7/7/2015 5:05 PM

ATT # 11

—Original Message—

From: USARMY Kaiserslautern CHRA-HQs Mailbox CRP Alert

Sent: Wednesday, August 01, 2012 2:05 PM

To: USARMY Grafenwoehr HQDA CPAC Mailbox Rate Review

Subject: FW: INQUIRY-EUJJ

---

From: Applicant Help

Sent: Wednesday, August 01, 2012 12:05:15 PM (UTC) Coordinated Universal Time

To: USARMY Kaiserslautern CHRA-HQs Mailbox CRP Alert

Subject: INQUIRY-EUJJ

Marvin C. Arnold

REF: EUJJ12726235689646R

STAFFER:

The applicant is requesting a status update. Please see the below e-mail, and respond to the applicant./489

—Original Message—

From: Arnold, Marvin C Dr CTR US USA MEDCOM MEDDAC-B [mailto:marvin.arnold1@us.army.mil]

Sent: Tuesday, July 31, 2012 9:16 AM

To: Applicant Help

Cc: mmearnold@gmail.com

Subject: Status of Application (UNCLASSIFIED)

Classification: UNCLASSIFIED

Caveats: NONE

I am attempting to get some information on the status of my application.

I submitted my application for Announcement Number: EUJJ127262356896646R; Control Number: 319662900; Job Title: Supervisory Social Worker (Family Advocacy). The announcement Closed on Friday, June 29, 2012. I would like to know the status of my application. Thank you!

Marvin C. Arnold, PhD., BACS, BCD

Classification: UNCLASSIFIED
Caveats: NONE

Classification: UNCLASSIFIED
Caveats: NONE

☐ smime.p7s
     6K

---

**Arnold, Marvin C Dr CTR US USA MEDCOM MEDDAC-B**                    Thu, Aug 2, 2012 at 2:01
<marvin.arnold1@us.army.mil>                                                              PM
To: "mmearnold@gmail.com" <mmearnold@gmail.com>

Classification: UNCLASSIFIED
Caveats: NONE

Marvin C. Arnold, PhD., BACS, BCD
United States Army Health Clinic
Behavioral Health-Family Advocacy
Schweinfurt, Germany
314-354-6231
marvin.arnold1@amedd.army.mil

-----Original Message-----
From: Arnold, Marvin C Dr CTR US USA MEDCOM MEDDAC-B
Sent: Thursday, August 02, 2012 1:35 PM
To: 'Kelly, Pamela M CIV (US)'
Subject: RE: EUJJ127262356689646R (UNCLASSIFIED)

Classification: UNCLASSIFIED
Caveats: NONE

[Quoted text hidden]
Classification: UNCLASSIFIED
Caveats: NONE

---

☐ **smime.p7s**
   6K

17

*ATT #12*

## Arnold, Marvin C Dr CTR US USA MEDCOM MEDDAC-B

| | |
|---|---|
| **Subject:** | Dr. Arnold Interview (UNCLASSIFIED) |
| **Location:** | Bldg 316, Conference room |
| | |
| **Start:** | Wed 8/15/2012 3:30 AM |
| **End:** | Wed 8/15/2012 4:30 AM |
| **Show Time As:** | Tentative |
| | |
| **Recurrence:** | (none) |
| | |
| **Meeting Status:** | Not yet responded |
| | |
| **Organizer:** | Olden, Brian J Mr CIV USA MEDCOM MEDDAC-B |
| **Required Attendees:** | Arnold, Marvin C Dr CTR US USA MEDCOM MEDDAC-B; Felde, Anne B Dr CIV USA MEDCOM MEDDAC-B; Scholz, Deborah A CIV USA MEDCOM MEDDAC-B; Stettler, Danya Ms CTR US USA MEDCOM MEDDAC-B; Foxall, Elizabeth A CIV USA; Johnson, Heidi M Ms CIV USA |

Classification: UNCLASSIFIED
Caveats: NONE

Classification: UNCLASSIFIED
Caveats: NONE

1

18

ATT #13

## Arnold, Marvin C Dr CTR US USA MEDCOM MEDDAC-B

| | |
|---|---|
| **From:** | Arnold, Marvin C Dr CTR US USA MEDCOM MEDDAC-B |
| **Sent:** | Monday, August 27, 2012 8:46 AM |
| **To:** | Olden, Brian J Mr CIV USA MEDCOM MEDDAC-B |
| **Subject:** | (UNCLASSIFIED) |

Classification: UNCLASSIFIED
Caveats: NONE

Mr. Olden:

I am not sure what if any feedback I would be getting following the interview so I thought I would write to ask.  Also, we talked about getting together for a conversation.  I would like to proceed with this.  Thanks!

Marvin C. Arnold, PhD., BACS, BCD
United States Army Health Clinic
Behavioral Health-Family Advocacy
Schweinfurt, Germany
314-354-6231
marvin.arnold1@amedd.army.mil


Classification: UNCLASSIFIED
Caveats: NONE

1

19

ATT # 14

## Arnold, Marvin C Dr CTR US USA MEDCOM MEDDAC-B

| | |
|---|---|
| **From:** | Arnold, Marvin C Dr CTR US USA MEDCOM MEDDAC-B |
| **Sent:** | Monday, September 24, 2012 9:54 AM |
| **To:** | Olden, Brian J Mr CIV USA MEDCOM MEDDAC-B |
| **Subject:** | RE: Call (UNCLASSIFIED) |

Mr. Olden, sure, when can we do it?

Marvin Arnold, Ph.D., BACS, BCD
United States Army Health Clinic
Behavior Health-Family Advocacy
APO AE 09033
DSN: 354-6231
Civ: 09721-96-6231


-----Original Message-----
From: Olden, Brian J Mr CIV USA MEDCOM MEDDAC-B
Sent: Monday, September 24, 2012 9:53 AM
To: Arnold, Marvin C Dr CTR US USA MEDCOM MEDDAC-B
Subject: Call (UNCLASSIFIED)

Classification: UNCLASSIFIED
Caveats: NONE

Greetings Dr. Arnold,
I was just informed we have a surprise visit from OTSG staff for the next 2 days, which will
make it impossible for me to come to SFT.
Though I would prefer to meet face to face, can we do a phone call?
Thanks



Brian J. Olden, LCSW, DCSW
Chief, Behavioral Health
Bavaria MEDDAC
DSN 476-3515
Cell: (49) 01622976816 (outside of Germany, drop the first zero)

Health Insurance Portability and Accountability Act: This document may contain confidential
information that is legally privileged under the Privacy Act, 5 USC 552(a), and/or the Health
Insurance Portability and Accountability Act (PL 104-191) and its various implementing
regulations. If this correspondence contains healthcare information it is being provided to
you after appropriate authorization from the patient or under circumstances that do not
require patient authorization. You are obligated to maintain it in a safe, secure and
confidential manner. Unauthorized redisclosure or failure to maintain confidentiality
subjects you to application of appropriate civil and federal criminal sanctions. If you have
received this correspondence in error, destroy any copies you have made and notify the
sender.

1

ATT #15

## Arnold, Marvin C Dr CTR US USA MEDCOM MEDDAC-B

**From:**      Olden, Brian J Mr CIV USA MEDCOM MEDDAC-B
**Sent:**      Tuesday, October 02, 2012 3:43 PM
**To:**        Arnold, Marvin C Dr CTR US USA MEDCOM MEDDAC-B
**Subject:**   RE: Schweinfurt visit (UNCLASSIFIED)


Classification: UNCLASSIFIED
Caveats: NONE

Thanks. Let's meet in your office at 11oo.



Brian J. Olden, LCSW, DCSW
Chief, Behavioral Health
Bavaria MEDDAC
DSN 476-3515
Cell: (49) 01622976816 (outside of Germany, drop the first zero)

Health Insurance Portability and Accountability Act: This document may contain confidential
information that is legally privileged under the Privacy Act, 5 USC 552(a), and/or the Health
Insurance Portability and Accountability Act (PL 104-191) and its various implementing
regulations. If this correspondence contains healthcare information it is being provided to
you after appropriate authorization from the patient or under circumstances that do not
require patient authorization. You are obligated to maintain it in a safe, secure and
confidential manner. Unauthorized redisclosure or failure to maintain confidentiality
subjects you to application of appropriate civil and federal criminal sanctions. If you have
received this correspondence in error, destroy any copies you have made and notify the
sender.



-----Original Message-----
From: Arnold, Marvin C Dr CTR US USA MEDCOM MEDDAC-B
Sent: Tuesday, October 02, 2012 3:35 PM
To: Olden, Brian J Mr CIV USA MEDCOM MEDDAC-B
Subject: RE: Schweinfurt visit (UNCLASSIFIED)

I forgot to mention that I have an 0900 and 1000 hours appointments scheduled.  We could get
together either at 0730 or approximately 1100 hours after the 1000 hours patient.  If you
like we could do an early lunch and talk.

Marvin Arnold, Ph.D., BACS, BCD
United States Army Health Clinic
Behavior Health-Family Advocacy
APO AE 09033
DSN: 354-6231
Civ: 09721-96-6231

-----Original Message-----
From: Olden, Brian J Mr CIV USA MEDCOM MEDDAC-B
Sent: Tuesday, October 02, 2012 10:39 AM
To: Arnold, Marvin C Dr CTR US USA MEDCOM MEDDAC-B
Cc: Curley, Justin M MAJ MIL USA MEDCOM MEDDAC-B; Scholz, Deborah A CIV USA MEDCOM MEDDAC-B
Subject: Schweinfurt visit (UNCLASSIFIED)

1

Importance: High

Classification: UNCLASSIFIED
Caveats: NONE

Greetings Dr. Arnold:
I will be at the Schweinfurt clinic this Thursday morning and we can meet at that time.
Let's narrow the time down as we get closer. Do you want anyone else to attend?
Thanks


Brian J. Olden, LCSW, DCSW
Chief, Behavioral Health
Bavaria MEDDAC
DSN 476-3515
Cell: (49) 01622976816 (outside of Germany, drop the first zero)

Health Insurance Portability and Accountability Act: This document may contain confidential
information that is legally privileged under the Privacy Act, 5 USC 552(a), and/or the Health
Insurance Portability and Accountability Act (PL 104-191) and its various implementing
regulations. If this correspondence contains healthcare information it is being provided to
you after appropriate authorization from the patient or under circumstances that do not
require patient authorization. You are obligated to maintain it in a safe, secure and
confidential manner. Unauthorized redisclosure or failure to maintain confidentiality
subjects you to application of appropriate civil and federal criminal sanctions. If you have
received this correspondence in error, destroy any copies you have made and notify the
sender.


Classification: UNCLASSIFIED
Caveats: NONE


Classification: UNCLASSIFIED
Caveats: NONE


2

20

ATT #16

## Arnold, Marvin C Dr CTR US USA MEDCOM MEDDAC-B

| | |
|---|---|
| From: | Marvin Arnold [mmearnold@gmail.com] |
| Sent: | Thursday, September 27, 2012 7:42 PM |
| To: | Arnold, Marvin C Dr CTR US USA MEDCOM MEDDAC-B |
| Subject: | Fwd: Disposition Letter Vacancy ID: 689646 |

```
---------- Forwarded message ----------
From: Vacancy ID: 689646 <usastaffingoffice@opm.gov>
Date: Wed, Sep 26, 2012 at 2:05 PM
Subject: Disposition Letter Vacancy ID: 689646
To: mmearnold@gmail.com
```

DEPARTMENT OF THE ARMY

DA EUR GRAFENWOEHR

UNIT 28130

APO AE  09114-8130

Dear    MARVIN  C  ARNOLD,

Your status for the position below is as follows:

Position Title:    Supervisory Social Worker (Family Advocacy)

Pay Plan:       GS

Series/Grade:

0185-13

Vacancy ID:       689646

Announcement Number:      EUJJ12726235689646R

Hiring Office:    W38311 BMEDDAC VILSEK FAMILY ADVOCACY PROG

Results regarding your recent referral to the Hiring Official are as follows:

Referral Type:    Current or former employees with Federal Civil Service status or VEOA candidates

Appointment Type:       Permanent

Specialty / Grade:      0185 - 13

Promotion Potential:    13

Locations:

1

Vilseck

Another candidate was selected for this position.

Audit Code:

NS

Code Definition:

Not Selected

Code Explanation:

The selecting office has indicated that you were not selected for the position.

Thank you for your interest in employment with the Department of Army.  You are encouraged to visit www.armycivilianservice.com to

view additional Department of Army employment opportunities and information.

PLEASE DO NOT RESPOND TO THIS EMAIL MESSAGE.  IT IS AUTOMATICALLY GENERATED.

For additional information, please refer to the vacancy announcement for this position.

--
Marvin Arnold

2

21

ATT #17

---

## FW: FAP Supervisor Interview (UNCLASSIFIED)
1 message

---

Arnold, Marvin C Dr CTR US USA MEDCOM MEDDAC-B                    Mon, Sep 24, 2012 at
<marvin.arnold1@us.army.mil>                                                      3:09 PM

---

Marvin Arnold, Ph.D., BACS, BCD
United States Army Health Clinic
Behavior Health-Family Advocacy
APO AE 09033
DSN: 354-6231
Civ: 09721-96-6231

—Original Message—
From: Arnold, Marvin C Dr CTR US USA MEDCOM MEDDAC-B
Sent: Thursday, August 09, 2012 1:46 PM
To: Olden, Brian J Mr CIV USA MEDCOM MEDDAC-B
Subject: RE: FAP Supervisor Interview (UNCLASSIFIED)

Classification: UNCLASSIFIED
Caveats: NONE

Mr. Olden here is the information:

Current: Dr. Justin Curley
          USAHC Schweinfurt
          354-6231

Past: Dr. Samuel Cunningham
          5129 Kodiac Ct.
          Charlotte, NI 28215
          704-778-3509

Peer Reference: David Cancilla
          USAHC Bamberg
          469-7793

Phone Number of LTC (R) Morris, former Garrison Commander of Bamberg
          469-8414

Marvin C. Arnold, PhD., BACS, BCD
United States Army Health Clinic
Behavioral Health-Family Advocacy
Schweinfurt, Germany
314-354-6231
marvin.arnold1@amedd.army.mil

ATT 17.1

—Original Message—
From: Olden, Brian J Mr CIV USA MEDCOM MEDDAC-B
Sent: Thursday, August 09, 2012 10:16 AM
To: Arnold, Marvin C Dr CTR US USA MEDCOM MEDDAC-B
Subject: RE: FAP Supervisor Interview (UNCLASSIFIED)

Classification: UNCLASSIFIED
Caveats: NONE

Current and previous. This is what I do with all applicants.
Thanks

Brian J. Olden, LCSW, DCSW
Chief, Behavioral Health
Bavaria MEDDAC
DSN 476-3515
Cell: (49) 01622976816 (outside of Germany, drop the first zero)

Health Insurance Portability and Accountability Act: This document may contain confidential information that is legally privileged under the Privacy Act, 5 USC 552(a), and/or the Health Insurance Portability and Accountability Act (PL 104-191) and its various implementing regulations. If this correspondence contains healthcare information it is being provided to you after appropriate authorization from the patient or under circumstances that do not require patient authorization. You are obligated to maintain it in a safe, secure and confidential manner. Unauthorized redisclosure or failure to maintain confidentiality subjects you to application of appropriate civil and federal criminal sanctions. If you have received this correspondence in error, destroy any copies you have made and notify the sender.


—Original Message—
From: Arnold, Marvin C Dr CTR US USA MEDCOM MEDDAC-B
Sent: Thursday, August 09, 2012 9:42 AM
To: Olden, Brian J Mr CIV USA MEDCOM MEDDAC-B
Subject: RE: FAP Supervisor Interview (UNCLASSIFIED)

Classification: UNCLASSIFIED
Caveats: NONE

I don't want to go around in circles on this and I respect your thoroughness. I would prefer to give you copies of my evaluations but you seem to be saying that you want to talk to at least one of my past supervisors. Is this correct?

Marvin C. Arnold, PhD., BACS, BCD
United States Army Health Clinic
Behavioral Health-Family Advocacy
Schweinfurt, Germany
314-354-6231
marvin.arnold1@amedd.army.mil


—Original Message—
From: Olden, Brian J Mr CIV USA MEDCOM MEDDAC-B
Sent: Thursday, August 09, 2012 9:20 AM
To: Arnold, Marvin C Dr CTR US USA MEDCOM MEDDAC-B
Subject: RE: FAP Supervisor Interview (UNCLASSIFIED)

ATT 17.2

Classification: UNCLASSIFIED
Caveats: NONE

I check references on all that are interviewed, and I ask that applicants provide current and a previous
supervisor, and one peer or colleague.

Brian J. Olden, LCSW, DCSW
Chief, Behavioral Health
Bavaria MEDDAC
DSN 476-3515
Cell: (49) 01622976816 (outside of Germany, drop the first zero)

Health Insurance Portability and Accountability Act: This document may contain confidential information that
is legally privileged under the Privacy Act, 5 USC 552(a), and/or the Health Insurance Portability and
Accountability Act (PL 104-191) and its various implementing regulations. If this correspondence contains
healthcare information it is being provided to you after appropriate authorization from the patient or under
circumstances that do not require patient authorization. You are obligated to maintain it in a safe, secure and
confidential manner. Unauthorized redisclosure or failure to maintain confidentiality subjects you to application
of appropriate civil and federal criminal sanctions. If you have received this correspondence in error, destroy
any copies you have made and notify the sender.


-----Original Message-----
From: Arnold, Marvin C Dr CTR US USA MEDCOM MEDDAC-B
Sent: Thursday, August 09, 2012 9:00 AM
To: Olden, Brian J Mr CIV USA MEDCOM MEDDAC-B
Subject: RE: FAP Supervisor Interview (UNCLASSIFIED)

Classification: UNCLASSIFIED
Caveats: NONE

I am not sure most are available. I would prefer to let you see copies of my evaluations.

Marvin C. Arnold, PhD., BACS, BCD
United States Army Health Clinic
Behavioral Health-Family Advocacy
Schweinfurt, Germany
314-354-6231
marvin.arnold1@amedd.army.mil

-----Original Message-----
From: Olden, Brian J Mr CIV USA MEDCOM MEDDAC-B
Sent: Thursday, August 09, 2012 8:19 AM
To: Arnold, Marvin C Dr CTR US USA MEDCOM MEDDAC-B
Subject: RE: FAP Supervisor Interview (UNCLASSIFIED)

Classification: UNCLASSIFIED
Caveats: NONE

Thanks. I'd also like to contact the current supervisor references you have on your CV.

Brian J. Olden, LCSW, DCSW
Chief, Behavioral Health
Bavaria MEDDAC

**ATT 17.3**

DSN 476-3515
Cell: (49) 01622976816 (outside of Germany, drop the first zero)

Health Insurance Portability and Accountability Act: This document may contain confidential information that is legally privileged under the Privacy Act, 5 USC 552(a), and/or the Health Insurance Portability and Accountability Act (PL 104-191) and its various implementing regulations. If this correspondence contains healthcare information it is being provided to you after appropriate authorization from the patient or under circumstances that do not require patient authorization. You are obligated to maintain it in a safe, secure and confidential manner. Unauthorized redisclosure or failure to maintain confidentiality subjects you to application of appropriate civil and federal criminal sanctions. If you have received this correspondence in error, destroy any copies you have made and notify the sender.

-----Original Message-----
From: Arnold, Marvin C Dr CTR US USA MEDCOM MEDDAC-B
Sent: Thursday, August 09, 2012 8:18 AM
To: Olden, Brian J Mr CIV USA MEDCOM MEDDAC-B
Subject: RE: FAP Supervisor Interview (UNCLASSIFIED)

Classification: UNCLASSIFIED
Caveats: NONE

Hi Mr. Olden:

I just spoke to LTC (R) Morris's office where he was the Garrison Commander in Bamberg and he has not left Germany yet. They will contact him and he will contact me and I will then get his new information so that you can contact him. Thanks!

Marvin C. Arnold, PhD., BACS, BCD
United States Army Health Clinic
Behavioral Health-Family Advocacy
Schweinfurt, Germany
314-354-6231
marvin.arnold1@amedd.army.mil

-----Original Message-----
From: Olden, Brian J Mr CIV USA MEDCOM MEDDAC-B
Sent: Wednesday, August 08, 2012 3:43 PM
To: Arnold, Marvin C Dr CTR US USA MEDCOM MEDDAC-B
Cc: Felde, Anne B Dr CIV USA MEDCOM MEDDAC-B; Scholz, Deborah A CIV USA MEDCOM MEDDAC-B
Subject: FAP Supervisor Interview (UNCLASSIFIED)
Importance: High

Classification: UNCLASSIFIED
Caveats: NONE

Dr. Arnold,
This is to confirm your interview on Wednesday, 15 August at 1530 in the conference room of Building 316, Rose barracks.
I will also want to check references, and would like to check the references you have indicated on your CV. Please confirm.
We look forward to seeing you on 15 August.
Thank you.

*ATT 17.4*

Brian J. Olden, LCSW, DCSW
Chief, Behavioral Health
Bavaria MEDDAC
DSN 476-3515
Cell: (49) 01622976816 (outside of Germany, drop the first zero)

Health Insurance Portability and Accountability Act: This document may contain confidential information that is legally privileged under the Privacy Act, 5 USC 552(a), and/or the Health Insurance Portability and Accountability Act (PL 104-191) and its various implementing regulations. If this correspondence contains healthcare information it is being provided to you after appropriate authorization from the patient or under circumstances that do not require patient authorization. You are obligated to maintain it in a safe, secure and confidential manner. Unauthorized redisclosure or failure to maintain confidentiality subjects you to application of appropriate civil and federal criminal sanctions. If you have received this correspondence in error, destroy any copies you have made and notify the sender.

Classification: UNCLASSIFIED
Caveats: NONE

Classification: UNCLASSIFIED
Caveats: NONE

Classification: UNCLASSIFIED
Caveats: NONE

Classification: UNCLASSIFIED
Caveats: NONE

Classification: UNCLASSIFIED
Caveats: NONE

Classification: UNCLASSIFIED
Caveats: NONE

Classification: UNCLASSIFIED
Caveats: NONE

ATT 17.5

Classification: UNCLASSIFIED
Caveats: NONE

22

## LOUISIANA STATE BOARD OF
## SOCIAL WORK EXAMINERS

**7719**

**NUMBER**

**08/31/2016**

EXPIRATION DATE

**MARVIN C ARNOLD**

**84 BLUE PINE DRIVE**

**SPRING LAKE, NC 28390**

**LCSW-BACS**

CHAIRPERSON                    CARDHOLDER

---



Texas State Board of
Social Worker Examiners

certifies that the person identified below is a

Licensed Clinical Social Worker
**Marvin Carnell Arnold**

License Number 11368

Control Number 128623                    Expires 8/31/2017

Cardholder Signature                    Presiding Officer

Texas State Board of
Social Worker Examiners

certifies that the person identified below is a

Licensed Clinical Social Worker
**Marvin Carnell Arnold**

License Number 11368

Control Number 128623                    Expires 8/31/2017

Cardholder Signature                    Presiding Officer

---



## COMMONWEALTH OF VIRGINIA
DEPARTMENT OF HEALTH PROFESSIONS

**Licensed Clinical Social Worker, 0904007017**
**Expires 06/30/2017**
**Current Active**
**Marvin C. Arnold**
**84 Blue Pine Dr.**
**Spring Lake NC 28390**

**Signature**

For Authorized Use Only

**USAMEDDAC Bavaria, Germany**

Name of Military Training Network Affiliate

**DuAnno W. Johnson, SGT, USA**

Signature of Program Director

Holder's Signature

**MARVIN ARNOLD**

This card certifies that the above named individual has successfully completed the written cognitive and skills evaluations in accordance with the curriculum of the American Heart Association for the BLS for Healthcare Providers (CPR & AED) Program. The MTN is an authorized provider of American Heart Association Emergency Cardiovascular Care Courses.

**APR 2013**                    **APR 2015**

Issue Date                      Renewal Date

---

For Authorized Use Only

**USAMEDDAC BAVARIA, GERMANY**

Name of Military Training Network Affiliate

**ANDREA KALUZA, GS-12, RN, MSN**

Signature of Program Director

Holder's Signature

**MARVIN ARNOLD**

This card certifies that the above named individual has successfully completed the written and skills evaluations in accordance with the curriculum of the American Heart Association for the BLS Healthcare Providers (CPR & AED) Program. The MTN is an authorized provider of American Heart Association Emergency Cardiovascular Care Courses.

**MAY 2011**                    **MAY 2013**

Issue Date                      Renewal Date

*ATT #18*

LOUISIANA STATE BOARD OF
SOCIAL WORK EXAMINERS

**7??**                                    **08/31/2013**
NUMBER                                   EXPIRATION DATE

**MARVIN C ARNOLD**
**CMR 457, BOX 419**
**APO, AE, LA 09033**

**LCSW-BACS**

John E. McBride, LCSW
_____        _____
CHAIRPERSON                        CARDHOLDER
_____

23

## FW: (UNCLASSIFIED)                    ATT #19

Arnold, Marvin C Dr CTR US USA MEDCOM MEDDAC-B                    Wed, Sep 1, 2010 at 2:47
<marvin.arnold1@us.army.mil>                                                       PM

Classification: UNCLASSIFIED
Caveats: NONE


-----Original Message-----
From: Vartanian, Vahag X MAJ MIL USA
Sent: Wednesday, September 01, 2010 1:51 PM
To: Blakely, Pamela Mrs CIV USA; Adams, Richard R CTR USA; Arnold,
Marvin C Dr CTR US USA MEDCOM MEDDAC-B; Gage, Giuliana Dr CTR ITA USA;
Hunzeker, Sarah Ms CTR US USA MEDCOM LRMC; Lutsch, Stefan Mr CIV DEU USA
MEDCOM MEDDAC-B; Mader, Manfred F CIV DEU USA MEDCOM MEDDAC-B; Mims,
Kelly P CTR US USA; Powers, Nita J Ms CTR USA; Simons, Joseph Dr CIV USA
MEDCOM MEDDAC-B; Vartanian, Vahag X MAJ MIL USA; Velez, Rick D CTR US
USA
Cc: Patterson, Larry R LTC MIL USA
Subject: (UNCLASSIFIED)

Classification: UNCLASSIFIED
Caveats: NONE

Hello everyone,

I just wanted to say thanks again to every one of you for the hard work
in preparing for JC. Ms. Greene, the surveyor, was very impressed with
everyone's overall positive attitude and the comfortable/theraputic
environment we have established here at BBG BH. I think we did great
and today at 1700 I am going to be in the review VTC at the dental
conference room, in case anyone else wants to come listen to what the
surveyors thought about our clinic.

Most importantly, I wanted to thank Dr. Arnold in particular, for the
outstanding job he did in presenting a FAP case to Ms. Greene and
reviewing it with her. She was very pleased and impressed. So, thank
you for a great job Dr. Arnold! We are fortunate to have your expertise
on our staff. We'll have to celebrate next week sometime...

Ok, we can discuss more tomorrow morning about the official feedback
from the VTC later today. Thanks everyone.

v/r,
MAJ Vartanian
Classification: UNCLASSIFIED
Caveats: NONE

24

## FW: great job! (UNCLASSIFIED)    *ATT #20*

**Arnold, Marvin C Dr CTR US USA MEDCOM MEDDAC-B**    Wed, Sep 1, 2010 at 1:36
<marvin.arnold1@us.army.mil>    PM

    Classification: UNCLASSIFIED
    Caveats: NONE


    ——Original Message——
    From: Patterson, Larry R LTC MIL USA
    Sent: Wednesday, September 01, 2010 12:25 PM
    To: Arnold, Marvin C Dr CTR US USA MEDCOM MEDDAC-B
    Cc: Vartanian, Vaheg X MAJ MIL USA; Olden, Brian J Mr CIV USA MEDCOM
    MEDDAC-B
    Subject: great job! (UNCLASSIFIED)

    Classification: UNCLASSIFIED
    Caveats: NONE

    Dr. A

    Great job today, I hear you were a superstar! Thanks

    Classification: UNCLASSIFIED
    Caveats: NONE

    Classification: UNCLASSIFIED
    Caveats: NONE

25

ATT #21

## 4th Qtr FY2012 BMEDDAC Tracer Team Schedule (as of 3 August 12 rev)

| Team Member | Schweinfurt 31 July | Vilseck (08); Graf (1300) 21 August | Bamberg 29 August | Illesheim (08); Katterbach (1390) 4 Sept | Hohenfels 11 Sept |
|---|---|---|---|---|---|
| Medical Director | Johnson | | Nanda | Kulka | McKay |
| Chief Nurse | Walsh | Bosompem | Sekutera | | |
| Pharmacy | Cross | Cross | Kenisky | Cross | Kenisky |
| Patient Safety | Atkins | Atkins | Atkins | Atkins | Atkins |
| Environment of Care | Zirkelbach | Zirkelbach | Zirkelbach | Zirkelbach | Zirkelbach |
| Physical Security | Lange | Lange | Lange | Lange | Lange |
| Emergency Management | Dinger | Dinger | Dinger | Dinger | Dinger |
| Infection Control | Whitman | Whitman | Whitman | Whitman | Whitman |
| Human Resources | Sandoval-Pfister | Sandoval-Pfister | Sandoval-Pfister | Sandoval-Pfister | Sandoval-Pfister |
| Mgt of Information | Lee | Lee | Lee | Lee | Lee |
| Behavioral Health | Olden | Adams | Olden | Arnold | Arnold |
| Leadership/JC Readiness | JCSO | JCSO | JCSO | JCSO | JCSO |
| Record of Care | Lee/Munson | Lee/Munson | Lee/Munson | Lee/Munson | Lee/Munson |
| Medical Management | Morris-Samuels | Morris-Samuels | Morris-Samuels | Morris-Samuels | Morris-Samuels |
| F/U: 2 QTR FY 12 | JCSO | JCSO | JCSO | JCSO | JCSO |

26

**FW: ERMC Tasker T01-03-02-12 / US v.      (UNCLASSIFIED)** *ATT 22*

Arnold, Marvin C Dr CTR US USA MEDCOM MEDDAC-B
<marvin.arnold1@us.army.mil>

Tue, Mar 6, 2012 at
6:05 PM

Classification: UNCLASSIFIED
Caveats: NONE

----Original Message----
From: Melton, John J MIL USA MEDCOM MEDDAC-B
Sent: Tuesday, March 06, 2012 5:27 PM
To: Arnold, Marvin C Dr CTR US USA MEDCOM MEDDAC-B
Cc: Vartanian, Vahag X MAJ MIL USA; Adams, Richard R CTR USA
Subject: FW: ERMC Tasker T01-03-02-12 / US v. John (UNCLASSIFIED)
Importance: High

Classification: UNCLASSIFIED
Caveats: NONE

Dr. Arnold--

Good afternoon.

I want to assign you to this tasking to serve as an expert witness in the U.S. v.      trial. You would perform
a psychological evaluation of the accused to assist the Defense in preparation for the trial. If used as an
expert, the Defense expects the expert to be present at the trial. The trial will take place in Schweinfurt and is
scheduled 3-5 April 2012.

I know you are busy but would you be able to this?

Thanks.

v/r

LTC John Melton

----Original Message----
From: Batista, Nicolas A Mr CIV USA MEDCOM MEDDAC-B
Sent: Monday, March 05, 2012 10:22 AM
To: Olden, Brian J Mr CIV USA MEDCOM MEDDAC-B; Dougherty, Joseph MIL USA MEDCOM MEDDAC-B;
Barcellos, Michael P SGT MIL USA MEDCOM MEDDAC-B; Calvanico, Tammy L CIV USA MEDCOM
MEDDAC-B; Colburn, Andrew R SFC MIL USA MEDCOM MEDDAC-B; Foster, Tracey X MIL USA; Looney,
Stephen M CPT MIL USA MEDCOM MEDDAC-B; Melton, John J MIL USA MEDCOM MEDDAC-B
Cc: Chickini, Aaron M MIL USA; Derr, Brian M MIL USA; Dinger, Eric S CIV USA MEDCOM MEDDAC-B;
Garland, Jeremiah E SFC MIL USA; Ingrim, Donald D CPT MIL USA; Bundt, Thomas S LTC MIL USA
MEDCOM MEDDAC-B; Shuping, Eric E COL MIL USA MEDCOM MEDDAC-B; Whyatt, Kendra P LTC MIL
USA MEDCOM MEDDAC-B

ATT #22.1

Subject: ERMC Tasker T01-03-02-12 / US v. John (UNCLASSIFIED)
Importance: High

Classification: UNCLASSIFIED
Caveats: NONE

ALCON,

ACKNOWLEDGE RECEIPT OF TASKER BY RETURN EMAIL TO BMEDDAC S3 OPS, MR. BATISTA AT
nicolas.batista@amedd.army.mil

SUSPENSE: NLT 1600 7 Mar 12


TASKED CLINICS/SECTIONS:

- BH (POC)
- BBG


MISSION:

- The Defense is seeking a psychiatrist, psychologist or social worker to serve as an expert witness in the
U.S. v.        trial.  The psychiatrist or social worker will perform a psychological evaluation of the accused to assist
the Defense in preparation for the trial.  If used as an expert, the Defense expects the expert to be present at
the trial.  The trial will take place in Schweinfurt and is scheduled 3-5 April 2012.


TASKS TO CLINICS/SECTION:

- Identify a psychiatrist, psychologist or social worker who can consult with the Defense on the above case.
 Provide name of expert to POCs listed below.

- Questions regarding this will be addressed to the following POC:

- BMEDDAC: Mr. Brian Olden, DSN: 476-3515, brian.olden@amedd.army.mil

- ERMC: Mrs. Carolyn L. Walden, DSN: 371-3123, carolyn.walden@amedd.army.mil/ Mrs. Ida Agamy, DSN:
371-3288, ida.agamy@amedd.army.mil.

V/R,

Nicolas A. Batista
USAMEDDAC Bavaria
S3 Ops/Staff Actions
DSN: 476-4680
Comm: 09662-83-4680
Cell: 0162-296-8178


Classification: UNCLASSIFIED
Caveats: NONE

ATT 22.3

Classification: UNCLASSIFIED
Caveats: NONE

Classification: UNCLASSIFIED
Caveats: NONE

ATT 22.3

27

## Re-integration Questionaire (UNCLASSIFIED)

**Michael, Tracy MAJ MIL USA** <tracy.michael1@eur.army.mil>          Fri, Nov 12, 2010 at 11:50 AM
To: "Arnold, Marvin C Dr CTR US USA MEDCOM MEDDAC-B" <marvin.arnold1@us.army.mil>,

Classification: UNCLASSIFIED
Caveats: NONE

**ATT #23**

Dr. Arnold,

Thanks again for your time and insight over lunch the other day. I intended to get this to you Wednesday after we talked. Please see attached questions/discussion starters and assist with helping us form this into a useful assessment tool/questionnaire that would could use to help with Soldier/family reintegration and resiliency. We're open you any guidance or recommendations on how best to apply it as well. Look forward to getting your feedback.

V/r

MAJ Tracy Michael

Executive Officer

173D Special Troops Battalion (Airborne), 173D ABCT

Warner Barracks, Bamberg, Germany

DSN (314) 469-8678/ CIV +49-[0]951-300-8678

Cell: +49[0]1622728845

tracy.michael1@us.army.mil

tracy.michael1@eur.army.mil

Classification: UNCLASSIFIED
Caveats: NONE

---

 **Post Deployment PIR.docx**
15K

## Re-integration Questionaire (UNCLASSIFIED)          ATT#23.1

**Marvin Arnold**                    :                                   Fri, Nov 12, 2010 at 7:28 PM
To: "Michael, Tracy MAJ MIL USA" <tracy.michael1@eur.army.mil>

Hello Major Michael:

I received the survey and will begin working on it forthwith.  I will do some rearranging of categories and use the most appropriate scale(s) for each question in each category.  For example, I will breakout the questions relating to the spouse from those relating to children.  Regardless, you will of course get the information back for review and you will decide how you will use it.  I have a version of SPSS so I can crunch some numbers after it is administered.

I really enjoyed chatting with you at lunch the other day.  I hope we can do it again some time.  As I said I will work on this.  Do you have a time frame for when you will need this?  Take care.

Dr. Arnold
[Quoted text hidden]
--
Marvin Arnold

## Re-Integration Questionaire (UNCLASSIFIED)

ATT#23.2

**Michael, Tracy MAJ MIL USA** <tracy.michael1@eur.army.mil>                    Sat, Nov 13, 2010 at 1:28 PM
To: Marvin Arnold

Classification: UNCLASSIFIED
Caveats: NONE

Dr. Arnold,

Thanks again for willingness to assist with this. We planned to "administer" the survey the last week of this
month (29 Nov - 2 Dec). On the attached training concept for our resiliency week, you will see a "unit
assessment" listed that will occur in round robin fashion over the four days and hit each company. That's
when we would like to have the survey. Maybe even a few days prior would even allow us to have the surveys
answered and be able to provide actual feedback during that time? I know you're busy and don't want do
impose on you with this, so whatever you're able to do would be a great help to us. Been about two years
since I used SPSS, but I could help with any of the nug work if needed.

V/r

MAJ Tracy Michael
Executive Officer
173D Special Troops Battalion (Airborne), 173D ABCT
Warner Barracks, Bamberg, Germany
DSN (314) 469-8678/ CIV +49-[0]951-300-8678
Cell: +49[0]1622728845
tracy.michael1@us.army.mil
tracy.michael1@eur.army.mil


[Quoted text hidden]
Classification: UNCLASSIFIED
Caveats: NONE



173D STB REINTEGRATION TRAINING CONCEPT_NOV 10.xlsx
13K

28

_ATT #24_

## Fwd: Reintegration helper (UNCLASSIFIED)

**Arnold, Marvin C MAJ RET** <marvin.arnold1@us.army.mil>
Mon, Aug 9, 2010 at 8:53 AM

———— Forwarded message ————
From: "Comeaux, Monika CPT MIL USA" <Monika.Comeaux@EUR.ARMY.MIL>
To: "Turpin, Michael D CPT MIL USA TF REPEL CHAPLAIN" <michael.turpin@afghan.swa.army.mil>,
marvin.arnold1@us.army.mil
Cc:
Date: Fri, 06 Aug 2010 10:04:42 +0200
Subject: Reintegration helper (UNCLASSIFIED)
Classification: UNCLASSIFIED
Caveats: NONE

Chaplain,

DR. Arnold, who I included on this email, is one of the assigned providers who supposed to help BSB with
any and every mental health, counseling, reintegration etc things. He has been over to our unit, talked to the
soldiers and now is on a weekly schedule to give us classes I chose in the topics of stress management,
resiliency etc.

He would be a great person to help us during the resiliency training.

DR. Arnold would actually also love to be on the provider team going downrange. Maybe you could start
dialogue with him and see how he can assist us in your master plan. Once you get to know him and find him
as good of a counselor as I do, maybe he could be requested to go down with the team and then you and him
could meet in person and put your heads together on the way ahead here in garrison.

He has been super helpful, and is not just a civilian provider but retired military officer who was prior enlisted
so unlike many others, he understands military life.

CPT Comeaux

CPT Monika Comeaux

173rd BSB RD Commander

DSN: 469-7560

Cell: (49)0162-272-6767

Alt (49)0151-235-67680

Classification: UNCLASSIFIED
Caveats: NONE

*ATT 24.1*

29

ATT #25

## Arnold, Marvin C Dr CTR US USA MEDCOM MEDDAC-B

| | |
|---|---|
| **From:** | Borden, Melissa L MAJ MIL USA MEDCOM MEDDAC-B |
| **Sent:** | Tuesday, September 18, 2012 11:44 AM |
| **To:** | Giles, Samuel J Mr CIV USA MEDCOM MEDDAC-B; Arnold, Marvin C Dr CTR US USA MEDCOM MEDDAC-B; Summers, Kimberly CTR US USA MEDCOM MEDDAC-B |
| **Cc:** | Tsikata, Godwin A SGT MIL USA |
| **Subject:** | FW: PDP on 20 Sept (UNCLASSIFIED) |

Classification: UNCLASSIFIED
Caveats: NONE

All,

Just a reminder that we will be conducting a PDP at Conn Aid Station on 20 Sept 2012
beginning at 0800.

- MAJ Borden

-----Original Message-----
From: Curley, Justin M MAJ MIL USA MEDCOM MEDDAC-B
Sent: Wednesday, August 22, 2012 4:31 PM
To: Borden, Melissa L MAJ MIL USA MEDCOM MEDDAC-B
Cc: Arnold, Marvin C Dr CTR US USA MEDCOM MEDDAC-B; Giles, Samuel J Mr CIV USA MEDCOM MEDDAC-B
Subject: RE: PDP on 20 Sept (UNCLASSIFIED)

Classification:  UNCLASSIFIED
Caveats: NONE

MAJ Borden,

I think I told you already, but just in case, Mr. Giles and Dr. Arnold will be assisting with
the approximately 85-115 Soldiers doing PDP on 20 September.

Respectfully,

MAJ Curley

Justin M. Curley, MD
MAJ, MC, USA
Chief of Behavioral Health
Schweinfurt Health Clinic
DSN:  354-7048

Classification:  UNCLASSIFIED
Caveats: NONE

Classification: UNCLASSIFIED
Caveats: NONE

1



ATT #26

---

## FW: Audit (UNCLASSIFIED)

---

Arnold, Marvin C Dr CTR US USA MEDCOM MEDDAC-B          Wed, Sep 14, 2011 at 4:21
<marvin.arnold1@us.army.mil>                                                PM

Classification: UNCLASSIFIED
Caveats: NONE


Marvin C. Arnold, PH.D., BACS, BCD
United States Army Health Clinic
Behavioral Health
Bamberg, Germany
DSN: 469-7793
Civ: 0951-300-7793
marvin.arnold1@amedd.army.mil

-----Original Message-----
From: Sumpter, Karen L Ms CIV USA MEDCOM MEDDAC-B
Sent: Wednesday, September 14, 2011 2:05 PM
To: Arnold, Marvin C Dr CTR US USA MEDCOM MEDDAC-B
Cc: Melton, John J LTC MIL USA MEDCOM MEDDAC-B; Sellers, Shaunette D Mrs
CIV USA MEDCOM MEDDAC-B; Schwab, Laurie L Ms CIV USA MEDCOM MEDDAC-B
Subject: Audit (UNCLASSIFIED)

Classification: UNCLASSIFIED
Caveats: NONE

Dr. Arnold,

I have completed an audit of several of your encounters. You
documentation is excellent and you are receiving the appropriate
credit/workload for the work you are performing and documenting.

Please let me know if you have any questions or concerns.

Thanks,


Karen Sumpter, CPC
Coding Provider Trainer
BMEDDAC HQS
Rose Barracks, BLDG 700
DSN 476-4657


This document may contain information covered under the Privacy Act, 5
USC 552(a), and/or the Health Insurance Portability and Accountability

ATT 26.1

Act (PL
104-191) and its various implementing regulations, and must be protected
in accordance with those provisions. Healthcare information is personal
and sensitive and must be treated accordingly. If this correspondence
contains healthcare information it is being provided to you after
appropriate authorization from the patient or under circumstances that
don't require patient authorization. You, the recipient, are obligated
to maintain it in a safe, secure and confidential manner. Rediscloure
without additional patient consent or as permitted by law is prohibited.
Unauthorized rediscloure or failure to maintain confidentiality
subjects you to application of appropriate sanctions. If you have
received this correspondence in error, please notify the sender at once
and destroy any copies you have.

Classification: UNCLASSIFIED
Caveats: NONE

Classification: UNCLASSIFIED
Caveats: NONE

31



**Marvin Arnold <mmearnold@gmail.com>**

---

## Question about motion response

---

**Marvin Arnold** <mmearnold@gmail.com>                        Mon, Mar 2, 2015 at 11:48 PM
To: jdekker@felsc.com

Hello Attorney Dekker:

I have attached the part of the announcement that refers to the 30 days (IF 286). Please look at paragraph b. BLS certification is a requirement for Credentialing. I remind you that this document is dated 23 June 2010 but I can guarantee you that the BLS requirement has not changed. If one does not have it one cannot be credentialed and that has to occur in order to work in the clinical environment. Mr. Kreager had been working in a non-clinical environment which did not require BLS certification and therefore he had to get it before he could be employed in the job. I am sure this is why they took so long to fill the position. As such, my license (state license), does not automatically include BLS certification. You will find mention of my BLS Certification in the resume' and/or application as it is a necessary part of the process of working in a clinical environment.

Marvin Arnold
[Quoted text hidden]
--
Marvin Arnold

    **Candidate Evaluation Referral 30 day issue 2015-03-02.PDF**
    668K

32

[Quoted text hidden]
  [Quoted text hidden]
    [Quoted text hidden]
    **DSN** 314-475-8548 **[1]**

    CIV 09641-83-8548

    Classification: UNCLASSIFIED
    Caveats: NONE

    —

    **Marvin Arnold**

    Links:
    ____
    [1] tel:314-475-8548

---

**Marvin Arnold** <mmeamold@gmail.com>                          Wed, Feb 25, 2015 at 3:26 PM
To: jdekker@felsc.com

Attorney Dekker:

Thank you. I have been giving thought to a response and with your comments I can hone in. It will not be a problem showing that I am better qualified as they admit that I was the better qualified candidate. This is confirmed by Army Personnel who had me being first on the most qualified listing. He was listed as fifth.

I think you are accurate when you allude to them attempting to make the interview that he has manipulated as the sole source for the selection. I will go through a thorough breakdown of what they are attempting in my document to you. First, the questions they allude to was not asked. I will point out that in the ROI particularly my interrogatory I stated two of the questions that were asked: Q - how would you handle being a supervisor? My answer - this is one of the couple of jobs I have had since entering the field of social work in which I was not a supervisor. I went on to give example of supervisory experience I have had both in the military and private sector. This is why I wanted to add my resume' to the discovery as it details my experience as a civilian supervisor.

Another question that was asked was: How would you deal with deadlines? my answer, I would meet them. I went on to say a deadline that when a deadline is not met and that goes without question it is not a deadline. My answer to this question was brief but the point was that deadlines must be met first and foremost. I notice that nothing has been mentioned of these questions and in fact were not mentioned as questions asked. Mr. Olden also asked me how would I deal with management, meaning how I would handle him being my supervisor? I answered these questions in my interrogatory but they did not mention them. My answer was that I would have to find a way to engender a positive mutual respectful relationship with my boss and that I would do so.

There was really never a detailed question list and I was certainly not made aware of it. I will point out the pages of the ROI where these can be found in my note to you.

Another thing I want to do is show why the statements of some if not all of the young ladies who Mr. Olden has recruited to assist him is biased, particularly that of the supervisors, Ms. Scholz and Mr. Adams. The issues of discrimination did not begin and end with this job though this is the one I filed a complaint about. Documents in the ROI, particularly my letter to Col Goodman reflects on the ongoing discrimination. Remember, Mr. Adams is the person who was not qualified for the supervisor job in Bamberg in 2010 but as allowed to return to the U.S. and came back 30 days later and was rehired in the government as he had to terminate in order to go back to the states and he was rehired for the position of supervisor upon his return. He had never been a supervisor. Ms. Scholz is the person I was in competition with for the job she received and did not have to go through a selection process though there was a job announcement for the job. This is also in the ROI. Dr. Felde, much to

my surprise, states in her statement that Mr. Olden is her mentor, so I think think this reduces the impact of her statement. One of the workers, an older lady I did not know answered honestly that I was the better candidate even after Mr. Olden and Mr. Kreager put pressure on her.

When I look at the statements of the other women I can only think that they are under a lot of pressure from Mr. Olden but that is their ethical issue. I do not think anyone of them has any kind of supervisory or managerial experience. Furthermore, when is it that workers in the Federal Government are allowed to select who the supervisor will be? If this were/is the case then anyone who does not look like the people doing the selecting will not be selected. Additionally, I do not see one concrete issue of what is meant by me being, "negative."

I will follow-up on this with more details. Thanks!

Marvin Arnold

[Quoted text hidden]
--
Marvin Arnold

33

**Marvin Arnold <mmearnold@gmail.com>**

---

## My Comments
4 messages

---

**Marvin Arnold <mmearnold@gmail.com>**        Wed, Jan 21, 2015 at 10:55 PM
To: jdekker@felsc.com

Attorney Dekker:

I have attached my last performance evaluation that was done well after I interviewed for the position. As you can see Ms. Scholz wrote and signed this evaluation and said nothing about her evaluation in the comments she made on her response. She is lying about something and under the circumstances what she is saying is pointless.

I do not see the response of at least two of the people who were on the committee.

One of the social workers was on the telephone so what she is saying is questionable as she was not there.

The social worker who was on the telephone as well as the three other negative responses have never managed anything in their lives and cannot make any reasonable comment about what would be good management potential. What I do know is that that they are responding to Mr. Olden's pressure to say what he wants. In fact one of the three is said to have been his _____. I did not see this so I cannot say definitively. Ms. Foxall however, does have information on this.

I am also attaching two messages, one that I sent to Attorney Dettling. These messages are the ones I wanted to ask about in terms of any value in terms of the Interrogatories.

Marvin Arnold

—
Marvin Arnold

**2 attachments**

⌐ **Performance Appraisal 2013-10-17.PDF**
    1834K

⌐ **Foxall Info 2015-01-21.PDF**
    607K

---

**jdekker@felsc.com <jdekker@felsc.com>**        Thu, Jan 22, 2015 at 11:20 AM
To: Marvin Arnold <mmearnold@gmail.com>

Hi. Thanks for sending all the documents.

Is this performance appraisal been included in the ROI? I will send it along to the agency anyway. If you have "unlimited potential" why didn't they promote you!

With respect to the medical documents, most of them seem to relate to some eye issues you were having. Do you have any records that relate to stress, anxiety, etc.? I just want to double check before I send the documents off to the agency. (Also, I will not be sending your request for medical records as part of the production as they contain your SSN etc.

34

ATT #27

## Arnold, Marvin C Dr CTR US USA MEDCOM MEDDAC-B

| | |
|---|---|
| **From:** | Arnold, Marvin C Dr CTR US USA MEDCOM MEDDAC-B |
| **Sent:** | Thursday, September 06, 2012 9:27 AM |
| **To:** | Scholz, Deborah A CIV USA MEDCOM MEDDAC-B |
| **Cc:** | Makela, Anna CPT MIL USA; Olden, Brian J Mr CIV USA MEDCOM MEDDAC-B; Melton, John J LTC MIL USA MEDCOM MEDDAC-B; Bowers, Chadwick A LTC MIL USA MEDCOM MEDDAC-B |
| **Subject:** | RE: Coverage at Bamberg (UNCLASSIFIED) |
| **Categories:** | Red Category |

Classification: UNCLASSIFIED
Caveats: NONE

What you are saying is incorrect. The Military Police had both my cell phone number and my home phone number. This can be verified with SSGT Rodriquez who was on the front desk of the MP station. While in Bamberg I spoke to Both to Cpt Makela and PVT Ochoa. I specifically spoke to PVT Ochoa about the on-call packet. Because I had a Dental appointment (I have an approved leave for it) and needed to leave by 1400 hours things became rushed as Cpt Makela was having her computer looked at. We were able to talk briefly for approximately 15 minutes and planned to talk more the next week. I left the clinic rushing to get back to Schweinfurt for my Dental Appointment.

On the way back to Schweinfurt it occurred to me that I did not have the on-call bag. I pulled into a rest stop and called PVT Ochoa. We agreed that I would call the Military Police and give them my cell phone and home phone number so they could contact me which I did. As I mentioned I spoke to SSGT Rodriques then and again when I got back to Schweinfurt. To assure that the MP had my numbers I called them again the next day; I again spoke to SSGT Rodriquez.

To imply that I did not perform my duty and that I put soldiers and their families at risk is incorrect and misleading. This could have been clarified immediately if some had simply called or emailed me.

Marvin C. Arnold, Ph.D., BACS, BCD
United States Army Health Clinic
Behavior Health-Family Advocacy
DSN: 469-7793/354-6231

-----Original Message-----
From: Scholz, Deborah A CIV USA MEDCOM MEDDAC-B
Sent: Wednesday, September 05, 2012 2:33 PM
To: Arnold, Marvin C Dr CTR US USA MEDCOM MEDDAC-B
Cc: Makela, Anna CPT MIL USA; Olden, Brian J Mr CIV USA MEDCOM MEDDAC-B; Melton, John J LTC MIL USA MEDCOM MEDDAC-B; Bowers, Chadwick A LTC MIL USA MEDCOM MEDDAC-B
Subject: Coverage at Bamberg
Importance: High

Dr. Arnold,

I was advised by CPT Makela, Chief Behavioral Health, that you did not take the Bamberg Family Advocacy on call cell phone with you on Friday and there was no coverage from Friday, 31 August thru Tues., 4 September. This put soldiers and families at risk. During the time that you provide coverage to Bamberg, in the absence of Ms. Powers, please ensure that you

1

ATT 27.1

have the Bamberg FAP cell phone with you at all times. Also, please advise the reception
staff and the person in charge of the Behavioral Health Clinic in Bamberg when you are
leaving the clinic or arriving late so that they know where you are if they need to reach
you.

We appreciate your support in helping Bamberg and ensure that you will provide good
comprehensive coverage.

Deborah A. Scholz
LCSW
Social Work Supervisor, Ansbach, Bamberg and Schweinfurt
467-2850 Ansbach home office

Classification: UNCLASSIFIED
Caveats: NONE

2

## <u>REFERENCES</u>

## PAGE 2

1. Alleged Interview Questions and Declarations of panel members
2. Scholz's message to Olden dated 17 August 2012
3. Arnold's performance evaluation written and signed by Scholz and endorsed by the Clinic Commander 4 February 2013

# SENIOR SYSTEM CIVILIAN EVALUATION REPORT

For use of this form, see AR 690-400; the proponent agency is ASA(M&RA)

## PART I - ADMINISTRATIVE DATA

a. NAME *(Last, First, Middle Initial)*
Arnold, Marvin C.

b. POSITION TITLE, PAY PLAN SERIES AND GRADE
Family Advocacy Social Worker, GS 0185-12

c. ORGANIZATION/INSTALLATION
Social Work Service, USAHC Schweinfurt

d. REASON FOR SUBMISSION
[✓] ANNUAL   [ ] SPECIAL   [ ] INTERN

e. PERIOD COVERED *(YYYYMMDD)*
FROM 20120703   THRU 20121203

f. RATED MOS
5

g. RATEE COPY *(Check one and date)*
[✓] GIVEN TO RATEE   [ ] FORWARDED TO RATEE

## PART II - AUTHENTICATION

a. NAME OF RATER *(Last, First, Middle Initial)*
Scholz, Deborah A.

SIGNATURE
SCHOLZ.DEBORAH.A.1155409698

DATE *(YYYYMMDD)*
20130204

GRADE/RANK, ORGANIZATION, DUTY ASSIGNMENT
Social Work Supervisor USAHC Schweinfurt/Bamberg/Katterbach/Illesheim

b. NAME OF INTERMEDIATE RATER *(Last, First, MI)*

SIGNATURE

DATE *(YYYYMMDD)*

GRADE/RANK, ORGANIZATION, DUTY ASSIGNMENT

c. NAME OF SENIOR RATER *(Last, First, Middle Initial/if used)*
Bowers, Chadwick A.

SIGNATURE
BOWERS.CHADWICK.ALLEN.1145853432

DATE *(YYYYMMDD)*
20130204

GRADE/RANK, ORGANIZATION, DUTY ASSIGNMENT
O-5 LTC(P) USAHC Schweinfurt, Commander

d. RATEE: I understand my signature does not constitute agreement or disagreement with the evaluations of the Rater and Senior Rater, and merely verifies Part I and Part IV data.

SIGNATURE OF RATEE
ARNOLD.MARVIN.CARNELL.1143696359

DATE *(YYYYMMDD)*
20130205

## PART III - PERFORMANCE AWARD/QUALITY STEP INCREASE

| a. SES - AWARD, BONUS/ SALARY INCREASE | RECOMMENDATIONS | | | | b. ST, SL, CM, GS, WS - PERFORMANCE AWARD/QSI | |
|---|---|---|---|---|---|---|
| | RATING (1) | SALARY (2) | | PERFORMANCE AWARD - BONUS (3) | | PERCENT OF SALARY *(INCLUDES Locality Pay)* ____ % (OR) |
| | | | | | | AMOUNT $ ____ (OR) |
| | | YES | NO | YES | NO | QSI (GS with Successful Level 1 Rating Only; minimum of 52 weeks must have elapsed since last QSI) |
| RECOMMENDING OFFICIALS | | | | | | TO (Grade/Step): |
| RATER | | | | | | AWARD APPROVED BY |
| INTERMEDIATE RATER | | | | | | |
| PERFORMANCE REVIEW BOARD | | | | | | DATE (YYYYMMDD) | FUND CITE |
| SENIOR RATER | | rS | | S | | |

## PART IV - DUTY DESCRIPTION *(Rater)*

DAILY DUTIES AND SCOPE *(To include as appropriate, people, equipment, facilities and dollars)*  Position Description *(DA Form 374)* is correct.   [✓] YES   [ ] NO

Provides comprehensive Social Work Service Family Advocacy Program clinical services to the US Army Garrison Schweinfurt communities. Performs within the standards of AR 608-18 and USAMH Social Work Service policies and procedures. Conducts comprehensive and complex risk assessments, clinical interviews, and psychosocial assessment of children and adults for all Family Advocacy Program referrals. Obtains relevant data from legal, investigatory, medical command, social service agencies, school, or resource programs to compile information and present for a status determination of abuse or neglect to the Family Advocacy Program Case Review Committee. Provides short-term individual, couples, family and group therapy. Provides on call services for family violence incidents as scheduled. Develops treatment plans based on identified problems, psychosocial factors and treatment capabilities. Informs the FAP supervisor of all high risk incidents and administrative concerns.

## PART V - VALUES *(Rater)*

| VALUES | BULLET COMMENTS |
|---|---|
| Loyalty | Courage and compassion exhibited when working with Soldiers and family members. |
| Duty | |
| Respect | Demonstrates devotion to duty. |
| Selfless service | |
| Honor | Steadfast in loyalty and dedication to the work with Soldiers and family members. |
| Integrity | |
| Personal courage | |

| PERIOD COVERED (YYYYMMDD) 20120703 thru 20121203 | RATEE'S NAME Arnold. Marvin C. |
|---|---|

## PART VI - PERFORMANCE EVALUATION (Rater)

a PERFORMANCE DURING THIS RATING PERIOD

(Comparison of individual objectives against accomplishments and DA-established performance standards resulted in the following objectives ratings

| ☑ | Excellence 75% or More Obj | ☐ | Excellence 25-74% Obj | ☐ | Success All or Excellence | ☐ | Needs Improvement 1 or More Obj | ☐ | Fails 1 or More Obj |
|---|---|---|---|---|---|---|---|---|---|

Includes Excellence in Org Mgt/Ldshp OR EEO/AA Ob for supv/mgr    ☐ Yes   ☑ No

b BULLET EXAMPLES

Dr. Arnold has provided assessment and treatment to 29 Family Advocacy cases since his transfer to Schweinfurt in May 2012 thru. Dec 2012. His presentations to the Case Review Committee are clear and a result of thorough assessment and meet the requirement of being presented within 30 days of receipt. He also provides ongoing services to patients whose cases do not meet the criteria for abuse or neglect at the CRC. therefore helping the patient make changes to prevent future reports of abuse or neglect. (E)

Treatment planning and clinical intervention with patients is done with expertise resulting in positive change and excellent engagement in therapy with his patients. His clinical skills are exceptional. He has complied with the BMEDDAC requirement of completions of treatment plans by the third sessions. He has also assisted Behavioral Health with post deployment screenings and and has done JAHCO tracers at the request of the Behavioral Health Chief at BMEDDAC. (E)

He has established relationships with community agencies and commanders that are positive. FAP workers do not fall under APPES and there for no comments received. and he has not received any substantiated complaints from any other source in this rating period. He has participiated in all required meetings when he is present in the clinic and complies with local SOPs, MEDCOM and ERMC guidance regarding FAP. He has maintained his BLS and licensure as required. (E)

Dr. Arnold willingly provided coverage at USAHC Bamberg, Social Work Service/Family Advocacy. during the TDY and leave of the assigned Family Advocacy social worker. He has not been required to provide administrative coverage for the Social Work Supervisor for Schweinfurt during this rating period. (E)

## PART VII - INTERMEDIATE RATER (Optional)

BULLET COMMENTS

## PART VIII - SENIOR RATER (if used) or RATER (no senior rater used)

OVERALL PERFORMANCE RATING

| ☒ 2 | } SUCCESSFUL |
|---|---|
| 3 | |
| 4 | FAIR |
| 5 | UNSUCCESSFUL (MUST Have Senior Rater Review) |

## PART IX - SENIOR RATER (if used)

BULLET COMMENTS (Performance/Potential)

o Dr. Marvin Arnold possesses unlimited potential to serve in the highest positions in the FAP/Social Work field: promote immediately to Chief, Social Work Services
o Dr. Arnold is highly respected by his patients because of his compassion and detailed treatment plans that meet the specific needs of each individual or family
o Successfully faced challenges in the absence of local onsite leadership and excelled
o Critical to the successful deployment of 1-91 Cavalry and essential to the positive re-integration of Task Force Black Hawk with post deployment mental health screenings

A completed DA Form 7222-1 was received with this report and considered in my evaluation and review.

☑ YES    NO (Explain)

REVERSE, DA FORM 7222, MAR 2010



## Resume'

**Marvin Arnold** <mmearnold@gmail.com>                    Thu, Feb 26, 2015 at 7:04 PM
To: jdekker@felsc.com

Attorney Dekker:

I am sending my resume' again to point not only the many many Family Advocacy jobs I have had but to also point the formal training in Family Advocacy I received from the military. I also want to point that the resume' shows that I was a supervisor in the civilian sector beginning years ago.

This is my last attachment. Thanks a bunch!

--
Marvin Arnold

_____

**resume26Apr13.pdfll.pdf**
107K

Resume of          84 Blue Pine Drive
Marvin C. Arnold      Spring Lake, NC 28390
Ph/Fax: 09721-6756047    E-mail: mmearnold@gmail.com

## CIVILIAN EDUCATION

PH.D. - St. Louis University, St. Louis, Missouri, April 1984
    Major: Social Work
    Concentration: Research/Policy

M.S.W. - Washington University, St. Louis, Missouri, August 1978
    Major: Social Work
    Concentration: Administration/Direct Services

B.S. - Washington University, St. Louis, Missouri, August 1976
    Major - Psychology
    Minor - Mathematics

## MILITARY EDUCATION

United States Naval War College Seminar Program
Fort Meade, Maryland August 1994 - June 1995
National Security and Force Planning
Diploma June 1995

Command and General Staff College (CGSC), graduated Aug 93, Fort Leavenworth, Kansas

Family Advocacy Staff Training Advance Course (FASTA), graduated 1990, Trier, Germany

Family Advocacy Staff Training Course (FAST), graduated 1989, Bad Kissingen, Germany

Combined Armed Services Staff School (CAS$^3$), graduated 1988, Fort Leavenworth, Kansas

Officers' Advance Course, graduated 1987, Fort Sam Houston, Texas

Officers' Basic Course, graduated 1980, Fort Sam Houston, Texas

Officers' Candidate School, graduated 1977, Fort Benning, Georgia

## EMPLOYMENT

Choctow Contracting Services
1 April 2013 – Present
Program Manager
Oversee the operation of seven (7) Family Programs

<u>U.S. Government, United States Army Health Clinic Schweinfurt</u>
**3 July 2013 – 15 OCTOBER 2013**
**Behavior Health-Family Advocacy Clinical Social Worker**
Work under the overall direction of the Health Clinic Commander.
Provide Family Advocacy and Psycho/Social psycho-therapeutic services to military members in the Bavaria Medical Department Activity foot print, many whom are deploying and returning from Iraq and Afghanistan, and their families. In addition to Therapeutic and Family Advocacy Services I provide services to clients who present with a variety of treatment issues, e.g. Post-Traumatic Stress Disorder (Post Traumatic Stress Disorder), Marriage and Family Therapy Problems, Stress Management Problems, Depression, Anxiety and other therapeutic diagnoses per Diagnostic and Statistical Manual IV. Provide Suicide Prevention Services and other services per AR 40-501 as requested. Serve as a Clinical Social Worker/Therapist in the U.S. Civil Service as of 13 Feb 2010. In Family Advocacy I work independently from receipt of initial referral and/or identification of known or suspected abusers/or victims to resolution. Conducts interviews, and make psycho-social assessments with particular emphasis on evaluating the scope and extent of violence. If significant safety issues prevail make recommendations for and take action to effect removal and protection of vulnerable victims from the abuser. Work with medical and law enforcement agencies, especially when children or others are involved requiring special handling to prevent further trauma. Develop treatment plans based on identified problems, psychosocial factors and treatment capabilities. Present identified problems and proposed treatment plans to the Case Review Committee (Case Review Committee). Refer clients for treatment in accordance with Case Review Committee recommendations. I am responsible for Crisis Intervention and 24 hour on-call services. Work closely with hospital staff, schools, CID, MP, Army Community Services and other organizations to assure accurate identification and correct handling of known or suspected abuse cases. Develop and explain Family Advocacy Program policy and procedures and techniques for identifying and handling domestic violence cases. Provide training of professional, technical, and support staff. Perform Medical Evaluation Boards, Mental Status Examinations related to discharges and severe Mental Health Conditions. Provide workshops/presentations on Suicide prevention and Resiliency Training for Providers and the general population.

<u>U.S. Government, United States Army Health Clinic Bamberg</u>
**20 November 2011 – 1 July 2012**
**Behavior Health-Family Advocacy Clinical Social Worker**
Work under the overall direction of the Chief, Behavioral Health with overall direction from the Health Clinic Commander.
Provide Family Advocacy and Psycho/Social psycho-therapeutic services to military members in the Bavaria Medical Department Activity foot print, many whom are deploying and returning from Iraq and Afghanistan, and their families. In addition to Therapeutic and Family Advocacy Services I provide services to clients who present with a variety of treatment issues, e.g. Post-Traumatic Stress Disorder (Post Traumatic Stress Disorder), Marriage and Family Therapy Problems, Stress Management Problems, Depression, Anxiety and other therapeutic diagnoses per Diagnostic and Statistical Manual IV. Provide Suicide Prevention Services and other services per AR 40-501 as requested. Serve as a Family Advocacy Social Worker/Therapist in the U.S. Civil Service as of 13 Feb 2010. In Family Advocacy I work independently from receipt of initial referral and/or identification of known or suspected abusers/or victims to resolution. Conducts interviews, and make psycho-social assessments with particular emphasis on evaluating the scope and extent of violence. If significant safety issues prevail make recommendations for and take action to effect removal and protection of vulnerable victims from the abuser. Work with medical and law enforcement agencies, especially when children or others are involved requiring special handling to prevent further trauma. Develop treatment plans based on identified problems, psychosocial factors and treatment capabilities. Present identified problems and proposed treatment plans to the Case

2

Review Committee (CRC). Refer clients for treatment in accordance with Case Review Committee recommendations. Responsible for Crisis Intervention and 24 hour on-call services. Work closely with hospital staff, schools, CID, MP, Army Community Services and other organizations to assure accurate identification and correct handling of known or suspected abuse cases. Develop and explain Family Advocacy Program policy and procedures and techniques for identifying and handling domestic violence cases. Provide training of professional, technical, and support staff. Perform Medical Evaluation Boards, Mental Status Examinations related to discharges and severe Mental Health Conditions. Provide workshops/presentations on Suicide prevention and Resiliency Training for Providers and the general population.

U.S. Government, United States Army Health Clinic Bamberg
13 February 2010 – 19 November 2011
Behavior Health-Family Advocacy Clinical Social Worker
Work under the overall direction of the Chief, Behavioral Health with overall direction from the Health Clinic Commander.
Provide Family Advocacy and Psycho/Social psycho-therapeutic services to military members in the Bavaria Medical Department Activity foot print, many whom are deploying and returning from Iraq and Afghanistan, and their families. In addition to Therapeutic and Family Advocacy Services I provide services to clients who present with a variety of treatment issues, e.g. Post Traumatic Stress Disorder (Post Traumatic Stress Disorder), Marriage and Family Therapy Problems, Stress Management Problems, Depression, Anxiety and other therapeutic diagnoses per Diagnostic and Statistical Manual IV. Provide Suicide Prevention Services and other services per AR 40-501 as requested. Serve as a Family Advocacy Social Worker/Therapist in the U.S. Civil Service as of 13 Feb 2010. In Family Advocacy I work independently from receipt of initial referral and/or identification of known or suspected abusers/or victims to resolution. Conducts interviews, and make psycho-social assessments with particular emphasis on evaluating the scope and extent of violence. If significant safety issues prevail make recommendations for and take action to effect removal and protection of vulnerable victims from the abuser. Work with medical and law enforcement agencies, especially when children or others are involved requiring special handling to prevent further trauma. Develop treatment plans based on identified problems, psychosocial factors and treatment capabilities. Present identified problems and proposed treatment plans to the Case Review Committee (CRC). Refer clients for treatment in accordance with Case Review Committee recommendations. Responsible for Crisis Intervention and 24 hour on-call services. Work closely with hospital staff, schools, CID, MP, Army Community Services and other organizations to assure accurate identification and correct handling of known or suspected abuse cases. Develop and explain Family Advocacy Program policy and procedures and techniques for identifying and handling domestic violence cases. Provide training of professional, technical, and support staff. Perform Medical Evaluation Boards, Mental Status Examinations related to discharges and severe Mental Health Conditions. Provide workshops/presentations on Suicide prevention and Resiliency Training for Providers and the general population.

Choctaw Enterprising Contracting
1 October 2009 – 13 February 2010
United States Army Health Clinic Bamberg (Contract Employee)
Family Advocacy Program Therapist
Work under the overall direction of the Chief, Behavioral Health.
Provide Family Advocacy and Psycho/Social psycho-therapeutic services to military members in the Bavaria Medical Department Activity foot print, many whom are deploying and returning from Iraq and Afghanistan, and their families. In addition to Therapeutic and Family Advocacy Services I provide services to clients who present with a variety of treatment issues, e.g. Post Traumatic Stress Disorder

(Post Traumatic Stress Disorder), Marriage and Family Therapy Problems, Stress Management Problems, Depression, Anxiety and other therapeutic diagnoses per Diagnostic and Statistical Manual IV. Provide Suicide Prevention Services and other services per AR 40-501 as requested. Serve as a Clinical Social Worker/Therapist in the U.S. Civil Service as of 13 Feb 2010. In Family Advocacy I work independently from receipt of initial referral and/or identification of known or suspected abusers/or victims to resolution. Conducts interviews, and make psycho-social assessments with particular emphasis on evaluating the scope and extent of violence. If significant safety issues prevail make recommendations for and take action to effect removal and protection of vulnerable victims from the abuser. Work with medical and law enforcement agencies, especially when children or others are involved requiring special handling to prevent further trauma. Develop treatment plans based on identified problems, psychosocial factors and treatment capabilities. Present identified problems and proposed treatment plans to the Case Review Committee (Case Review Committee). Refer clients for treatment in accordance with Case Review Committee recommendations. Responsible for Crisis Intervention and 24 hour on-call services. Work closely with hospital staff, schools, CID, MP, Army Community Services and other organizations to assure accurate identification and correct handling of known or suspected abuse cases. Develop and explain Family Advocacy Program policy and procedures and techniques for identifying and handling domestic violence cases. Provide training of professional, technical, and support staff. Perform Medical Evaluation Boards, Mental Status Examinations related to discharges and severe Mental Health Conditions. Provide workshops/presentations on Suicide prevention and Resiliency Training for Providers and the general population.

Choctaw Enterprising Contracting
**8 June 2009 – 30 September 2009**
**United States Army Health Clinic Schweinfurt (Contract Employee)**
**Family Advocacy Program Therapist**
Work under the overall direction of the Chief, Social Work Service and Chief, Behavioral Health. Provide Family Advocacy and Psycho/Social psycho-therapeutic services to military members in the Bavaria Medical Department Activity foot print, many whom are deploying and returning from Iraq and Afghanistan, and their families. In addition to Therapeutic and Family Advocacy Services I provide services to clients who present with a variety of treatment issues, e.g. Post Traumatic Stress Disorder (Post Traumatic Stress Disorder), Marriage and Family Therapy Problems, Stress Management Problems, Depression, Anxiety and other therapeutic diagnoses per Diagnostic and Statistical Manual IV. Provide Suicide Prevention Services and other services per AR 40-501 as requested. Serve as a Family Advocacy Social Worker/Therapist contract employee. In Family Advocacy I work independently from receipt of initial referral and/or identification of known or suspected abusers/or victims to resolution. Conducts interviews, and make psycho-social assessments with particular emphasis on evaluating the scope and extent of violence. If significant safety issues prevail make recommendations for and take action to effect removal and protection of vulnerable victims from the abuser. Work with medical and law enforcement agencies, especially when children or others are involved requiring special handling to prevent further trauma. Develop treatment plans based on identified problems, psychosocial factors and treatment capabilities. Present identified problems and proposed treatment plans to the Case Review Committee (Case Review Committee). Refer clients for treatment in accordance with Case Review Committee recommendations. Responsible for Crisis Intervention and 24 hour on-call services. Work closely with hospital staff, schools, CID, MP, Army Community Services and other organizations to assure accurate identification and correct handling of known or suspected abuse cases. Develop and explain Family Advocacy Program policy and procedures and techniques for identifying and handling domestic violence cases. Provide training of professional, technical, and support staff. Perform Medical Evaluation Boards, Mental Status Examinations related to discharges and severe Mental Health Conditions. Provide workshops/presentations on Suicide prevention and Resiliency Training for Providers and the general

population.

<u>Council on Social Work Education</u>
**1 February 2008 – 31 May 2009**
I was an Accreditation Specialist for the Council on Social Work Accreditation. The Council's Commission on Accreditation (COA) is responsible for developing accreditation standards that define competent preparation for social work practice and ensuring that social work programs meet them. In accordance with the requirements of the Council's recognition body, the Council for Higher Education Accreditation, the CSWE Office of Social Work Accreditation and Educational Excellence (OSWAEE) administers a multi-step accreditation process that involves program self-studies, site visits, and COA reviews. The Accreditation Specialist provides technical assistance to social work programs seeking candidacy or undergoing accreditation review. The position facilitates and assists commissioners with detailed understanding of the accreditation processes and procedures and provides detailed background and clarifying information about programs under Commission review. The Accreditation Specialist serves as a critical point of contact to committees, writes reports, assisted in training workshops for commissioners, programs, and site visitors. Resolved administrative problems by coordinating preparation of reports, analyzing data and identifying solutions. Developed administrative staff by providing information, educational opportunities, and experiential growth opportunities.
<u>Grambling State University (GSU)</u>
August 2007 – Feb 2008
**Associate Professor**
Associate Professor in the School of Social Work. I taught a variety of courses in the Masters and Bachelors programs to include Administration and Public Policy as it relates to social work, Research, Statistics and Social Policy. I created and advised systems and procedures by analyzing operating practices, record keeping systems, forms control and budgetary and personnel requirements, implementing changes. I was Responsible for student advisement and Practicum Placement Liaison for students placed in various agencies throughout North-West Louisiana. Maintained professional and technical knowledge by attending educational workshops, reviewing professional publications; establishing personal networks; participating in professional societies. Performed various School of Social Work and university committee assignments; assisted with policy formulation and development. Maintained community relations by attending jointly sponsored School of Social Work, community and University functions.


<u>Grambling University School of Social Work</u>
July 2006 – July 2007
**Associate Dean/Associate Professor**
Associate Dean, School of Social Work. The Associate Dean is responsible for the overall management of the School of Social Work reporting directly to the Dean, College of Professional Studies. In addition to overseeing the day to day operations of the school duties included scheduling of classes for the baccalaureate and master's programs, faculty assignments and evaluation, and interaction with student organizations. Formulated, planned and monitored policies and procedures. Implemented and coordinated School of Social Work authority decisions in conjunction with the Provost. Liaison with other schools and departments within the university such as Finance and Marketing. Managed and Supervised the academic faculty and other staff. Managed the school budget and funding and coordinated grant and research funding. Developed and promoted a policy and performance framework, which contributed to the operational and strategic functioning of the school. As the Associate Dean I assured that students were placed into candidacy for graduation on time and that they graduated on time after meeting the requirements of the respective programs. Additional duties involved committee assignments

and participation, carrying out the administrative assignments from the President and Provost and attending a variety of university functions on and off campus. As Associate Dean I also taught classes in Policy and Administration, Statistics, Research Design and Advanced Research Design for the baccalaureate and master's programs.

Grambling State University (GSU)
August 2004 – July 2006
**Associate Professor**
Associate Professor in the School of Social Work. I taught a variety of courses in the Masters and Bachelors programs to include Administration and Public Policy as it relates to social work, Research, Statistics and Social Policy. I created and advised systems and procedures by analyzing operating practices, record keeping systems, forms control and budgetary and personnel requirements, implementing changes. I was Responsible for student advisement and Practicum Placement Liaison for students placed in various agencies throughout North-West Louisiana. Maintained professional and technical knowledge by attending educational workshops, reviewing professional publications, establishing personal networks, participating in professional societies. Performed various School of Social Work and university committee assignments; assisted with policy formulation and development. Maintained community relations by attending jointly sponsored School of Social Work, community and University functions.

GJM INC.
December 1999 - July 2004
Behavioral Health Corporation/President/CEO- Managed the day-to-day operations of the Corporation to include clinical services, budgets, administration and policy issues. Reviewed Documentation and contracts. Provided contract Family Services, Employee Assistance, Individual, Marital and Family Therapy to about 50,000 military, Department of Defense Schools and civil service personnel and their immediate family members at U.S. in Bavaria, Germany. Managed hiring, refining and bringing on new hires and their training. Worked on the company budget, planned for staffing and effective business operation strategies. Developed Marketing material. Created and provided training and educational programs. Achieved my financial objectives by anticipating requirements; submitting information for budget, scheduled expenditures, monitored costs and analyzed variance. I contacted prospective contractors for either direct contracting or subcontracting opportunities. I networked with government and private concerns to engage in the development of proposed mutual contract opportunities. Interviewed, hired and discharged employees as warranted. Developed public relations and engaged in structuring methods of advertising for future contract needs. I performed other duties as necessitated by corporate development. I also provided contract responsibilities for the extant contracts with the U.S. Government and Private Industry.

Sole Proprietor
1 October 98 – 27 December 99 (65,000/Yr.)
Incorporated 27 December 99. Contracted with the United States Government, 10 Feb 99 - 9 Feb 01, to provide Psycho/Social Services to military families serving in Bavaria, Germany. I provided Psycho/Social services to people residing in four different locations. I contacted prospective contractors for either direct contracting or subcontracting opportunities. I networked with government and private concerns to engage in the development of proposed mutual contract opportunities. Developed public relations and engaged in structuring methods of advertising for future contract needs. I performed other duties as necessitated by corporate development. I also provided contract responsibilities for the extant contracts with the U.S. Government and Private Industry. Disorders treated included, but were not limited to:

6

Mood, Depression, Panic, Anxiety, Personality, Gambling, ADHD, Learning Disabilities, Adjustments, Obsessive Compulsive Disorder, Phobias, Eating, PTSD, Sexual, Dissociative Disorder, Alcohol Abuse, Drug Abuse and Psychosis. I managed administrative and clinical concerns of the proprietorship, to include billing, public relations and advertising. I managed all facets of the budget.

United States Army
12 May 98 - 1 October 98 (Army Retirement)
Chief, Social Work Service (SWS): United States Army Medical Department Activity, Wurzburg, Germany. I ensured compliance with Army Energy and Water Conservation Program policies. As Chief, I managed approximately 75 people, Social Workers, Counselors and administrative support personnel in delivering a variety of Social Services to families incorporating 10 different clinics in Southern Germany with the U.S. Military. Managed the supervisory staff whose grades are GS-12 and above. I Chaired the Family Advocacy Case Management Team (FACRC) at several locations throughout Southern Germany. The FACRC is responsible for Child and Spouse Abuse determinations, prevention and treatment services. I directed the clinical team in providing treatment services to military personnel and their families, government service employees and Department of Defense Schools personnel and families as per DSM-IV diagnoses. We also provided 24 hour on-call crisis services. As Chief I completed special projects by organizing and coordinating information and requirements, planning, arranging, and meeting schedules and monitored results. I achieved the financial objectives of the department by anticipating requirements, submitting information for budget preparation in the PBAC, scheduled expenditures and monitored costs. I assisted the Hospital Commander in planning effective operation strategies. Created and trained staff for educational programs. Worked with the Risk Management Committee on defining, documenting, implementing and tracking departmental operating procedures and metrics.

United States Army
July 95 - May 98
Chief, Community Mental Health Service (CMHS): United States Army Medical Department Activity, Camp Zama, Japan. I ensured compliance with Army Energy and Water Conservation Program policies. As Chief of the Mental Health Clinic, I was responsible for managing a variety of Army Mental Health programs, with a staff of approximately 15 people. Chaired the Family Advocacy Case Review Committee (FACRC, formerly the FACMT), which made determinations regarding allegations of Family Violence. I supervised the monthly In-Service Training assigned therapists to treat people presenting with a variety of mental health conditions as per DSM-IV. I performed Psychological Autopsies as requested by Department of the Army. Responsible for the clinic budget relating to appropriated funds employees as well as contract personnel. The chief was directly responsible for Clinic Policy. As Chief I completed special projects by organizing and coordinating information and requirements, planning, arranging, and meeting schedules and monitored results. I achieved the financial objectives of the department by anticipating requirements, submitting information for budget preparation in the PBAC, scheduled expenditures and monitored costs. I assisted the Hospital Commander in planning effective operation strategies. Created and trained staff for educational programs. I worked with the Risk Management Committee on defining, documenting, implementing and tracking departmental operating procedures and metrics. I maintained administrative staff by recruiting, selecting, orienting, and training employees, maintaining a safe and secure work environment; developed personal growth and opportunities.

United States Army
July 91 - July 95
Staff Researcher, Department of Military Psychiatry, Walter Reed Army Institute of Research, Washington, D.C. I ensured compliance with Army Energy and Water Conservation Program policies. Directed a staff of Research Assistants in providing Research Protocols on Family Research and did the

7

investigative studies on Soldiers and Families relating to the military environment. The protocols became significant information relating to the assessment of why soldiers choose to stay in the military, assessments of the military climate and studies of the reactions of military families to military spouses being deployed to engage in combat. I was responsible for budgetary and policy development relating to specific research protocols and supervised four Research Assistants. I completed special projects by organizing and coordinating information and requirements, planning, arranging and meeting schedules and monitoring results. I accomplished staff results by communicating job expectations, planning, monitoring and appraising job results; coaching, counseling, and disciplining employees; initiating, coordinating, and enforcing systems, policies and procedures.

Unitéd States Army
July 87 - June 91
Chief, Social Work Services, 196th Station Hospital, Supreme Headquarters Allied Powers Europe (SHAPE), Belgium. I supervised a staff of 8 people who were responsible for providing Family Services and other Psycho/Social Services to U.S. and NATO forces at SHAPE. I ensured compliance with Army Energy and Water Conservation Program policies. As Chief of the Clinic, I was responsible for managing a variety of Army Mental Health programs. Chaired the Family Advocacy Case Review Committee (FACRC, formerly the FACMT), which made determinations regarding allegations of Family Violence. I supervised the monthly In-Service Training assigned therapists to treat people presenting with a variety of mental health conditions as per DSM-IV. I was Responsible for the clinic budget relating to appropriated funds employees as well as contract personnel. The chief was directly responsible for Clinic Policy. As Chief I completed special projects by organizing and coordinating information and requirements, planning, arranging, and meeting schedules and monitored results. I achieved the financial objectives of the department by anticipating requirements, submitting information for budget preparation in the PBAC, scheduled expenditures and monitored costs. I assisted the Hospital Commander in planning effective operation strategies. Created and trained staff for educational programs. I worked with the Risk Management Committee on defining, documenting, implementing and tracking departmental operating procedures and metrics. I maintained administrative staff by recruiting, selecting, orienting, and training employees, maintaining a safe and secure work environment; developed personal growth and opportunities.

Unitéd States Army
August 85 - December 86
Chief, Research and Training Branch, Division of Human Resources: Walter Reed Army Medical Center, Washington, D.C. I supervised the staff that provided education and training of members of Walter Reed Army Medical Center about Racial Discrimination, Sexual Harassment and Organizational Effectiveness. Provided specialized educational workshops and training to various sections of the hospital upon request in their attempts to deal with a Hostile Environment and decreased effective communications.

Unitéd States Army
January 85 - August 85
Research Coordinator and Chief, Affirmative Action Division: Walter Reed Army Medical Center, Washington, D.C. I provided ongoing statistics, both qualitative and quantitative to the command to assess the racial climate at Walter Reed. This included providing information on gender and racial percentages of minorities in the workplace relative to command positions. Inquiries were followed up to determine what happened and how to use knowledge learned to feedback to command for change.

United States Army
September 84 - January 85
I was Chief, Equal Opportunity Division, Walter Reed Army Medical Center, Washington, D.C. I supervised a staff of Equal Opportunity Specialist who provided EO and EEO Training for all personnel working at the Walter Reed Army Medical Center. The section was responsible for developing video tapes of EO and EEO situations for training purposes. WE provided yearly training for all sections of the hospital.

United States Army
August 83 - August 84
I was Chief, Family Support Division, - Fort Polk, Louisiana. I served as the commands expert relative to Psycho/Social issues such as child abuse, neglect and spouse abuse. Provided command assistance in the development of military family life programs and initiatives to improve the quality of life for soldiers at Fort Polk, Louisiana. The section developed a variety of Family Assistance programs for the population. One such program was the, Off Post Community Center. This program was provided to assist primarily young, married soldiers with obtaining services in a Trailer Park for military families. Services included Transportation, Information & Referral, Educational and other Self Help classes. The services were developed after surveys of the population demonstrated the need for those services. I was involved in the development of the budget and recommendations for change in the allocation of funds.

United States Army
January 83 - July 83
I was the Officer in Charge (OIC) if the Division Mental Health Clinic, Fort Polk Louisiana. This position was known as Officer in Charge (OIC) of Mental Hygiene Consultation Services (MHCS). I supervised officers and civilians who provided Mental Health and Marriage and Family Services, to include diagnoses and treatment of mental health conditions as per DSM-IV. Services included individual, family, group and marital counseling. Disorders treated included, but were not limited to: Mood, Depression, Panic, Anxiety, Personality, Gambling, ADHD, Learning Disabilities, Adjustments, Obsessive Compulsive Disorder, Phobias, Eating, PTSD, Sexual, Dissociative Disorder, Alcohol Abuse, Drug Abuse and Psychosis. I was responsible for developing policy relating to the clinic.

## TEACHING EXPERIENCE

Grambling State University (GSU
    Associate Professor – Taught a variety of social work courses in the Masters and Bachelor Programs, August 2004 - Present

Louisiana State University Shreveport (LSUS)
    Adjunct Professor – Taught Financial Management for Human Services in the Health Services Administration Department        January, 2002 – June 2004

University of Maryland, Baltimore, Maryland
    Lecturer - Taught a variety of courses in the MSW program, June 93 - June 95

City Colleges of Chicago, Brussels, Belgium
    Lecturer - Taught a variety of Behavioral Science Courses, June 88 - June 91

Catholic University of America
    Lecturer - Taught courses in Program Evaluation and Research, June 85 - May 86, Washington, D.C.

**Florissant Valley Community College**
Instructor in Human Sciences, January 81 - December 82, St. Louis, Missouri

**St. Louis University School of Social Service**
Adjunct Assistant Professor, September 79 - December 79, St. Louis, Missouri

**Boston University SHAPE, Belgium**
Adjunct Assistant Professor, September 87- August 89

OTHER EMPLOYMENT

**Contract**
Contract with the United States Army Japan, to provide Alcohol and Drugs Education and Training Workshops, for the Far East Addictions Conferences, Camp Zama, Japan
Aug 2000 and Jul 1999

**St. Louis Comprehensive Neighborhood Health Clinic**
I was a Consultant/Therapist, February 79 - December 82, St. Louis, Missouri. I provided Group Therapy for Alcoholism Treatment and provided general individual and group therapy for the local Health Clinic. I primarily provided group therapy for people referred by the court for driving violations after consuming drugs or alcohol. Individuals entered the group at any point and left after 12 weeks. Individual counseling was also a part of the program.

**Services Inc. (Social Service Agency)**
I was Co-founder and President, January 79 - September 80, St. Louis, Missouri. Agency co-founded with then spouse to provide counseling services to people in the greater St. Louis area. Focal point to the agencies services was the Home Visit. The company discontinued when spouse focused on other interest. There were no debts incurred in the dissolution of the corporation.

**Missouri Division of Family Services**
I was a Social Service Supervisor, September 78 - September 80, St. Louis County, Missouri. I supervised Protective Services and Social Services who delivered services through St. Louis County.

Social Service Worker, May 76 - May 78, St. Louis, Missouri. I provided Protective Services to clients in the St. Louis City area.

Caseworker, May 74 - May 76, St. Louis, Missouri

Income Maintenance Caseworker, January 73 - May 74, St. Louis, Missouri

**Big Brothers and Big Sisters of America**
Caseworker, April 77 - September 77, St. Louis, Missouri

**Phelps Vocational High School**
I was an Educational Counselor, December 71 - December 72, Washington, D.C.

I was a Manager/Salesman, August 70 - December 71, Washington, D.C.

<u>CB&Q Railroad</u>
Revising Clerk, January 69 - December 69, St. Louis, Missouri and East St. Louis, Illinois

<u>D.C. Superior Court</u>
I was a Bailiff, January 67 - December 68, D.C. Superior Court - Washington, D.C.

<center>OTHER MILITARY EXPERIENCE</center>

<u>United States Army Reserve</u>
Medical Social Work Officer, 1979 - 1983, St. Louis, Missouri

Engineer Officer, 1978 - 1979, St. Louis, Missouri

<u>United States National Guard</u>
Engineer Officer, 1977, St. Louis, Missouri

Administrative Clerk, 1976, St. Louis, Missouri

<u>United States Air Force Reserve</u>
Medical Technician, 1975 - 1976, St. Louis, Missouri

<u>United States Air Force, December 62 - December 66</u>
Tactical Air Command (TAC) - Phang Rang, Vietnam
Tactical Air Command (TAC) - George AFB, California
Tactical Air Command (TAC) - Edwards AFB, California
United States Air Force Security Service (USAFSS) - Trabzon, AFS, Turkey

<u>Decorations and Awards</u>
Meritorious Service Medal
National Defense Service Medal
Vietnam Service Medal
Army Commendation Medal
Army Medal
Overseas Ribbon

<u>Publications</u>

The Effects of Racial Identity on Self-Concept in Interracial Children, St. Louis University, St. Louis, Missouri, 1984

Racial Identity and Self-Concept, University of Ohio, 1986

Family Violence Considerations, AMEDD Journal, 1994

The Effects of Parental Deployment on Childhood Behavior, WRAIR, 1994

<center>11</center>

<u>Specialized Study</u>

I attended the Annual Conference of the Traumatic Incident Reduction Association (TIRA), August, 2000, Kansas City, Mo.

International Attention Deficit Hyperactivity Conference, Salzburg, Austria, May, 1999

Conference on Child Victimization, Amsterdam, The Netherlands, August, 1997

I attended the 1995 National Symposium on Child Victimization, Washington, D.C.

The Institute for Research in Metapsychology Conference, 1994, San Jose, California

The Institute for Research in Metapsychology Conference, 1993, East Grinstead, Haywards Heath, England

International Society on Traumatic Stress Studies Conference, 1992, Amsterdam, Holland

Uniformed Services University of the Health Sciences, Social Work Conference, 1989, Willingen, Germany

Uniformed Services University of the Health Sciences, Social Work Conference, 1988, Willingen, Germany

Family Advocacy Conference, September 87, Wiesbaden, Germany

I attended the Conference on Depression in Children, October 86, Washington Psychiatric Institute, Washington, D.C.

Management Skills Workshop, June - July 86, Defense Systems Management College, Fort Belvoir, Virginia

Conference on Interracial Families, October 85, Chicago Theological Seminary, Chicago, Illinois

Conference on Interracial Families, July 85, Columbia University, New York, New York

Social Work Management Course, October 84, Fitzsimmons Army Medical Center, Aurora, Colorado

I attended the U.S. Army Social Work Practice Course, November 83, Walter Reed Army Medical Center, Washington, D.C.

U.S. Army Battalion Training Management Course, Platoon Leaders Workshop, February 82, St. Louis, Missouri

U.S. Army Company Commanders Course, 1982, St. Louis, Missouri

U.S. Army Holistic Health Conference, 1982, Marriotsville, Maryland

U.S. Army Medical Research Course, 1982, Fitzsimmons AMC, Aurora, Colorado

12

Equal Opportunity Workshop, 1980, Missouri Department of Social Services, St. Louis, Missouri

Pre-Employment Interviewing Course, 1980, Missouri Department of Social Services, St. Louis, Missouri

Performance Appraisal Course, 1980, Missouri Department of Social Services, St. Louis, Missouri

Family Therapy, Dr. Virginia Satir, 1977 (graduate credit), Washington University, St. Louis, Missouri

Reality Therapy, Dr. William Glasser, 1976 (graduate credit), Webster College, St. Louis, Missouri

Summer Institute on Counseling and Alcoholism and Family Studies, June 75, Columbia, Missouri

Missouri State Alcoholism Training and Information Program, February 75, Washington University, St. Louis, Missouri

Malcolm Bliss Mental Health Center Substance Abuse Course, January 75, Malcolm Bliss Mental Health Center, St. Louis, Missouri

**Fellowship**
Council on Social Work Education Fellowship, September 80 - February 83, Doctoral Studies

**License/Certification**
Board Certified Diplomate in Clinical Social Work, American Board of Examiners, 1988

Diplomat in Clinical Social Work, 1987 (NASW)

Member, Academy of Certified Social Workers (ACSW), 1983

NASW National Register of Clinical Social Workers

Licensed in the state of Texas, Licensed Clinical Social Worker (LCSW), Advanced Clinical Practitioner (ACP), 1986

Licensed in the state of Michigan, Certified Social Worker-Clinical, 2002

Licensed in the state of Louisiana, Board Approved Clinical Supervisor (BACS), 2003

Licensed in the state of Louisiana, Licensed Clinical Social Worker (LCSW), 2002

Licensed in the state of Louisiana, Licensed Marriage and Family Therapist (LMFT), 2004

**Speaking Engagements**
Workshop on Ethics and Cultural Diversity for the Northwest Louisiana Regional Chapter of the Association of Black Social workers (ABSW), Shreveport, Louisiana, June 2005.

Workshop on Cultural Diversity sponsored by the National Association of Social Workers (NASW), New Orleans, Louisiana, February 2005.

13

Workshop on Cultural Diversity sponsored by the National Association of Social Workers (NASW), Alexandria, Louisiana, November 2004.

Ethics Workshop for the Northwest Louisiana Regional Chapter of the Association of Black Social Workers, Shreveport, Louisiana, June 2003.

Traumatic Stress Conference, Walter Reed Army Medical Center, Washington, D.C., 1995

Conference on Traumatic Stress, San Jose, California, May 1994

Conference for the Institute for Research on Metapsychology, Haywards Heath, England, November 93

Veterans Administration Conference on Desert Storm Families, December 92, Orlando, Florida

Conference on Transcultural Families, October 86, University of Ohio/United States Army Family Support Center, Arlington, Virginia

Conference on Racial Relationships and Identities, Chicago Theological Seminary, June 85, Chicago, Illinois

Conference on Excellence in Social Work, April 85, Washington University, St. Louis, Missouri

Affiliations
National Association of Social Workers (NASW), member and past District Coordinator

George Warren Brown School of Social Work Alumni Association, past Treasurer

References
Dr. Jesse Harris, Dean (Emeritus), School of Social Work, University of Maryland at Baltimore 6320 Frostwork Row, Columbia, MD 21044; Jharris@ssw.umaryland.edu

Dr. Andre Stevenson, Giant Steps Consulting, CEO and Senior Consultant, Alexandria, VA 14000 Jerico Park Road, Bowie, MD 20715; astevenson@bowiestate.edu

Dr. Mark Hinton, Chief of Psychiatry, Department of Psychiatry, United States Air Force 4256 Comache Dr. Carrollton, TX 75010; markhintonmd@hotmail.com .

14



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
Office of Federal Operations
P.O. Box 77960
Washington, DC 20013

March 22, 2016

Marvin C. Arnold
84 Blue Pine Dr
Spring Lake, NC 28390

      RE:    Marvin C. Arnold v. Department of the Army
               EEOC Appeal No. 0120152389

Dear Mr. Arnold:

This is in response to your letter dated December 3, 2015, requesting the status of the above-referenced appeal.

Your appeal is currently pending assignment to an attorney who will prepare the draft decision. When the Commission issues this decision after appropriate supervisory review, we will send it to your address of record. Unfortunately, we are unable to provide you with a time frame as to when you can expect to receive it. The EEOC receives a large number of appeals, and due to the varying complexity of each case, it is difficult to predict when a final decision will be issued. Please rest assured, however, that when an attorney is assigned to your case he or she will review all of the evidence of record and will put forth every effort to process your appeal as expeditiously as possible.

If you have questions regarding the processing of your client's appeal, please contact the Office of Federal Operations at ofo.eeoc@ceoc.gov.

We hope this information is helpful to you.

                    Sincerely,

                    /s/ Robert J. Barnhart
                    Robert J. Barnhart
                    Assistant Director
                    Compliance and Control Division
                    Office of Federal Operations