# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

MARVIN ARNOLD,

    *Plaintiff*,

v.

MARK T. ESPER, Secretary of the Army,

    *Defendant.*

No. 16-cv-2207 (DLF)

## MEMORANDUM OPINION

Plaintiff Marvin Arnold alleges that the United States Army violated the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. § 621 *et seq.*, when it refused to promote him. Before the Court are the parties' cross-motions for summary judgment, Dkts. 41, 43. For the reasons that follow, the Court will deny Arnold's Motion for Summary Judgment and grant the Army's Cross-Motion for Summary Judgment.

### I.    BACKGROUND

In 2012, the Army issued a job announcement seeking qualified applicants to fill a vacancy for a supervisory social worker position. *See* Def.'s Cross-Mot. for Summ. J. & Opp'n Ex. 2, at 2, Dkt. 43-2. Applicants had to have at least one year of experience "equivalent to the GS-12 grade level in the Federal Service," *id*. Ex. 5, at 10, Dkt. 43-5, as well as "four years of post-graduate clinical or counseling experience and two years [of experience] in the field of domestic violence and/or child abuse and neglect," *id.* Ex. 5, at 11. Applicants were also required to have a Master of Social Work degree, to "qualify for and maintain credentials as an independently licensed clinical social worker," and to have "[a] current, valid, and unrestricted . . . state license to practice clinical social work." *Id.*

Arnold applied for the position, but the Army ultimately selected a candidate named Don Kreager, who was twenty years younger. *Id.* Ex. 2, at 3. Both Arnold and Kreager had more than twenty years of experience, including supervisory experience, as well as the requisite Master of Social Work degree. Arnold had about thirty years of experience in social work, had served as a supervisor in 2007, and had a master's degree and a doctoral degree. *Id.* Ex. 5, at 21–29. Kreager had over twenty years of experience as a social worker and a master's degree. *Id.* Ex. 5, at 34–38. At the time of his application, Kreager was also performing supervisory duties in the program with the vacancy. *Id.* Ex. 5, at 34–35.

To choose among several qualified candidates, the selecting official, Brian Olden, considered the information in the applications, instituted a panel interview process, and checked the candidates' references. The process began when Pamela Kelly, a human resources specialist, reviewed the applications and issued a Merit Promotion Certificate of Eligibles, or a list of qualified applicants. *Id.* Ex. 5, at 17–19, 99–100. Although Kreager inadvertently submitted an expired license, *id.* Ex. 2, at 4, he had a current license, *id.* Ex. 3, at 2–3, Dkt. 43-3, and Kelly included Kreager in the Certificate of Eligibles, *id.* Ex. 6, ¶ 4, Dkt. 43-6. Olden then chose to interview Arnold and Kreager, and he selected six other Army employees to serve on the interview panel. *Id.* Ex. 5, at 46, 67. After the interviews, two of the panelists shared their views with Olden verbally, but most separately shared their views by email. *Id.* Ex. 5, at 69; *see also id.* Ex. 5, at 91, 98. The panelists generally favored Kreager, though one panelist indicated that both candidates would perform adequately. *Id.* Ex. 5, at 69. Olden also checked references for both candidates by contacting current and former supervisors, including some that were not listed as references in the candidates' applications. *Id.* Ex. 5, at 70–71. According to Olden, he selected Kreager because he was the best overall candidate: he had the necessary experience, he

2

performed better during his interview, and he received better reviews from his references. *Id.* Ex. 5, at 69–71.

Arnold, however, contends that he was passed over because of his age. To support his motion for summary judgment, Arnold alleges that both Olden and Deborah Scholz, an interview panelist and one of Arnold's former supervisors, commented on his age before he was interviewed. Pl.'s Reply at 3–4, Dkt. 46. Arnold cites a February 10, 2018 email he sent to the Army's attorney that recounted several instances in which Scholz discussed how Arnold and other men dye their hair:

> She was fixated on the color of my hair. On at least [three] occasions she would beg[i]n by making reference to the color of my hair. She would go on to talk about how some men do it at home (color) rather than going to a salon or hav[ing] someone else do it. She would talk about what various people did who she knows. . . . On every occasion when she did this she would always ask me if I did my hair myself or did I have someone else do it. I would sit silently and say absolutely nothing until she talked about something else or left my office. This went on constantly with her.

*Id.* Ex. 2, at 1, Dkt. 46-2. Arnold also asserts, without citation to any evidence, that at a meeting held almost a year before his interview on October 5, 2009, *id.* at 3, Olden asked about Arnold's age and after Arnold "stat[ed] his age to the group[,] one participant said 'damn, I did not know that you are [*sic*] that old,'" *id.* at 4. According to Arnold, the group then "laughed and went on for approximately 15 minutes about [his] age." *Id.*

In his complaint, Arnold also made several additional allegations that he mentioned only in passing, if at all, in his motion for summary judgment. First, he alleges that Scholz asked him to identify his age at two meetings. Compl. at 3, Dkt. 25. At one meeting, "[o]n the first day that [Scholz] sat down to talk to the staff," Scholz "began by asking various people their age," including, presumably, Arnold. *Id.* The second incident occurred at a "subsequent meeting"

3

when Scholz "asked [Arnold about] his age but no one else." *Id.* Arnold does not provide any dates or other context for these remarks. Second, Arnold states that Scholz wrote a particular "memorandum . . . to attempt to show that [Arnold's] age was responsible for him making what she characterized as a mistake relating to soldiers and their families." *Id.* That "memorandum," which Arnold attached to his complaint, was a September 5, 2012 email that admonished Arnold for failing to take the "on call cell phone" with him the previous weekend. *Id.* Ex. 4, at 1, Dkt. 25-4. It makes no reference to Arnold's age. Finally, Arnold alleges that in 2010 he heard that the "clinic commander" made a discriminatory comment when discussing whether to promote Arnold for a different position. *Id.* at 5. Arnold has no firsthand knowledge of this incident, but he alleges that two individuals who were present for the discussion told him that the clinic commander "went into a rage when the suggestion was made to make [Arnold] the supervisor[,] and [the clinic commander] stated, 'he will not come back here . . ., he is too damn old.'" *Id.* Without identifying how, Arnold contends that he "subsequently found out" that Olden "contacted [the clinic commander], who stopped the promotion." *Id.* at 6; *see also* Pl.'s Reply at 4.

## II.     LEGAL STANDARD

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law," and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). At this stage, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But the nonmoving party must still establish

4

more than the "mere existence of a scintilla of evidence" to survive summary judgment; "there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Id.* at 252. In other words, a party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). And if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," a court should grant summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Because Arnold is proceeding *pro se*, the Court will hold him "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam). Even so, the Court "need not accept inferences unsupported by the facts alleged in the complaint or legal conclusions cast in the form of factual allegations." *Kaemmerling v. Lappin*, 553 F.3d 669, 677 (D.C. Cir. 2008) (internal quotation marks omitted).

The ADEA provides that "[a]ll personnel actions affecting employees or applicants for employment who are at least 40 years of age . . . in military departments . . . [and] in executive agencies . . . shall be made free from any discrimination based on age." 29 U.S.C. § 633a(a). When a plaintiff relies on circumstantial, rather than direct, evidence to establish discrimination, the familiar burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), applies. In a "failure to promote case[]," the plaintiff must first establish a prima facie case of discrimination by showing that "(1) the plaintiff is at least forty years of age; (2) the plaintiff was qualified for the position in question; (3) the plaintiff was not promoted; and (4) the plaintiff was disadvantaged in favor of a younger person." *Forman v. Small*, 271 F.3d 285, 292 (D.C. Cir. 2001). The burden then shifts to the employer to articulate a "non-discriminatory

5

explanation for the challenged personnel action." *Ford v. Mabus*, 629 F.3d 198, 201 (D.C. Cir. 2010). At that point, the plaintiff, "as part of his ultimate burden of persuasion, must come forward with evidence that would allow a jury to credit his evidence of age discrimination and discredit the employer's seemingly nondiscriminatory motivation." *Steele v. Mattis*, 899 F.3d 943, 948 (D.C. Cir. 2018). He may satisfy that obligation "either indirectly by showing the employer's reason is pretextual or directly by showing that it was more likely than not that the employer was motivated by discrimination." *Id.* (internal quotation marks omitted).

The D.C. Circuit has stressed that courts should tread carefully when evaluating employers' personnel decisions. "Even if a court suspects that a job applicant was victimized by poor selection procedures[,] it may not second-guess an employer's personnel decision absent demonstrably discriminatory motive." *Fischbach v. D.C. Dep't of Corr.*, 86 F.3d 1180, 1183 (D.C. Cir. 1996) (alteration and internal quotation marks omitted). A court's role is not to evaluate the "correctness or desirability" of the non-discriminatory reasons, but to decide "whether the employer honestly believes in the reasons it offers." *Id.* (internal quotation marks omitted).

### III.   ANALYSIS

The Army concedes that Arnold has established a prima facie case, but it argues that Olden chose to promote a different candidate for a legitimate, nondiscriminatory reason: Kreager received the recommendation of the selection panel and was a better overall candidate. Def.'s Cross-Mot. for Summ. J. & Opp'n at 12, Dkt. 43. The Army emphasizes that Kraeger had the necessary experience, his references provided positive reviews, and he performed better during his interview. *Id.* at 12–13.

In response, Arnold points to several pieces of evidence to establish that a reasonable factfinder could infer that the Army's rationale was pretextual. He emphasizes his qualifications, and he argues that Olden did not appropriately rely on his chosen recommenders, that Kreager was less qualified, and that Kreager was ineligible because he submitted an expired license with his application. Pl.'s Mot. for Summ. J. at 4, 6–8; Pl.'s Reply at 4, 5–6, 11–12, 13–14. He further argues that Kreager was selected before the interview process began and the process was a sham designed to conceal the discriminatory reason for Kreager's selection. Pl.'s Mot. for Summ. J. at 5, 8–9; Pl.'s Reply at 12–13, 18–19. Finally, he asserts that Olden and Scholz made comments about his age before he was interviewed and that those comments suggest a discriminatory motive. Pl.'s Reply at 3–4. Drawing all reasonable inferences in Arnold's favor, the Court cannot conclude that a reasonable jury could find that Arnold was not selected for promotion because of his age.

### A. Arnold's Comparative Credentials

Courts generally must "respect [an] employer's unfettered discretion to choose among qualified candidates." *Fischbach*, 86 F.3d at 1183. Although "[e]vidence indicating that an employer misjudged an employee's performance or qualifications is, of course, relevant to the question whether its stated reason is a pretext masking prohibited discrimination," liability under the anti-discrimination laws "cannot rest solely upon a judge's determination that an employer misjudged the relative qualifications of admittedly qualified candidates." *Id.* Similarly, a "plaintiff's perception of himself, and of his work performance, is not relevant." *Smith v. Chamber of Commerce*, 645 F. Supp. 604, 608 (D.D.C. 1986) (citing *Smith v. Flax*, 618 F.2d 1062, 1067 (4th Cir. 1980)). To establish pretext, "the qualifications gap [must be] 'great enough to be inherently indicative of discrimination'—that is, . . . the plaintiff [must be] 'markedly more qualified,' 'substantially more qualified,' or 'significantly better qualified' than

7

the successful candidate." *Hamilton v. Geithner*, 666 F.3d 1344, 1352 (D.C. Cir. 2012) (quoting *Holcomb v. Powell*, 433 F.3d 889, 897 (D.C. Cir. 2006)).

Both Kreager and Arnold were well qualified for the supervisory social worker position. Although Arnold worked in the field for a longer period of time, Kreager had more recent supervisory experience, and Kreager's more recent supervisory experience was in the same program as the vacancy. Moreover, Arnold does not dispute that Kreager received more positive reviews from his references. Indeed, Arnold attaches an unquestionably negative review from Scholz, a former supervisor, to his motion for summary judgment. *See* Pl.'s Mot. for Summ. J. Ex. 13, at 1 ("I did not hire Dr. Arnold, and I would not hire him again or extend him."). But Arnold argues that Scholz's evaluation cannot be trusted, and he suggests that Olden should have relied exclusively on evaluations from the references he listed in his application. *See, e.g.*, Pl.'s Mot. for Summ. J. at 6 ("It is not clear why he did not just use the information about Plaintiff's past supervisors who Plaintiff placed on the resume[s] that had been submitted."); *see also id.* Ex. 9. Even if the Court were to agree that the Army's process did not produce the best result, Kreager's credentials were not demonstrably worse than Arnold's credentials, and evidence of "poor selection procedures" does not establish discrimination. *Fischbach*, 86 F.3d at 1183 (internal quotation marks omitted); *see also Morris v. McCarthy*, 825 F.3d 658, 671 (D.C. Cir. 2016) (explaining that a discrimination plaintiff "cannot survive summary judgment merely by asserting that her employer made a bad decision").

That Kreager inadvertently submitted an expired license with his application did not render him unqualified for the position. The job announcement provided that "[a] current, valid, and unrestricted . . . state license to practice clinical social work . . . is required and must be maintained." Def.'s Cross-Mot. for Summ. J. & Opp'n Ex. 5, at 11. Kreager had the required

valid license, *id.* Ex. 3 at 2–3, and the Army electronically verified that he had that license, as is its practice, *id.* Ex. 4, at 1–2, Dkt. 43-4. Even if Kreager did not have a valid license, Arnold does not allege, much less identify any evidence that suggests, that Pamela Kelly, the human resource specialist who compiled the list of eligible candidates, had a discriminatory motive for including Kreager on that list. To the contrary, Kelly's decision to include Arnold on the list suggests that she did not discriminate against Arnold on the basis of age.

In sum, because Kreager had sufficiently similar—if not superior—qualifications, the Army had "unfettered discretion to choose among qualified candidates." *Fischbach*, 86 F.3d at 1183.

### B. The Selection Process

Arnold raises a litany of objections to the selection process. He alleges that Olden had already selected Kreager before Arnold's interview, that the interview panel was hastily created to mask the discriminatory motive behind Kreager's selection, Pl.'s Mot. for Summ. J. at 5, 8, and that the panel members were "likely compromised and . . . blatantly lied and were carrying out the orders of . . . Olden," *id.* at 6, 8 (quotation), 9. In support of his theory, Arnold alleges, without citation to any evidence, that Scholz "was hired for the same job without having to meet [similar] conditions," like the requirements that an applicant interview and submit references. Pl.'s Reply at 21. He alleges that Olden failed to contact all of the references he listed in his application and that Olden purposely considered "a reference from Mr. A, a [g]ay man who [Arnold] had previously reported to the Inspector General for sexual harassment." Pl.'s Mot. for Summ. J. at 6. He complains that Olden considered a reference from Scholz, whom he confusingly criticizes because she once gave him a positive review, *id.* at 8, and because she allegedly "had [Kreager] write a Memorandum for Record that he sent to . . . Olden with a concocted story about something occurring in a Family Advocacy Meeting that had no bearing

9

on reality," *id.* at 6. According to Arnold, the memorandum, which he attached to his motion for summary judgment, *id.* Ex. 11, recounted a "manufactured incident that no one else on the committee was aware of and was designed to shed a negative light on [Arnold] during the time of his application for promotion," *id.* at 7. Arnold also alleges that Olden exerted undue influence over one interview panelist because she "consider[ed] [Olden] a mentor." *Id.* at 9. These allegations are not supported by the record.

Under Rule 56(c), a party who bears the burden of production must "cit[e] to particular parts of materials in the record" to survive summary judgment, Fed. R. Civ. P. 56(c)(1), and when his factual allegations are supported by an affidavit or declaration, that affidavit or declaration must be "made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated," Fed. R. Civ. P. 56(c)(4). In other words, a plaintiff cannot rely on an "unsupported claim of conspiracy, derived only from [the plaintiff's] speculation regarding the intentions of third parties of which []he has no personal knowledge." *Kilby-Robb v. Devos*, 246 F. Supp. 3d 182, 199 (D.D.C. 2017).

The evidence Arnold cites in support of his claim that the selection process was a sham does not come close to satisfying the evidentiary requirements of Rule 56. And at times, Arnold concedes as much. For example, he asserts that he has "reason to believe" that one of the interview panelists had a "[r]omantic relationship" with Olden that "influenced her role on the panel" and that Olden and the panelist "may now be married," but he admits that he "has not verified this information." Pl.'s Mot. for Summ. J. at 9.

The two pieces of record evidence that come closest to supporting his conspiracy allegations are the Merit Promotion Certificate of Eligibles and an email from Olden notifying

10

him of his interview. *See id.* at 5. The Certificate of Eligibles states that the "selecting official . . . is responsible for answering inquiries about procedures used to choose among those certified" and that the form "must be returned by [August 8, 2012]." *Id.* Ex. 4, at 1, Dkt. 41-4. Because Arnold was only *notified* of his interview on August 8 and did not actually interview until about a week after August 8, he contends that the form "establishes that . . . Olden had made his selection of [Kreager] before [Arnold] was interviewed." *Id.* at 5. But this evidence is, at best, a "scintilla of evidence" that is insufficient to establish that a "jury could reasonably find for the plaintiff." *Liberty Lobby*, 477 U.S. at 252. Moreover, Kelly, not Olden, issued the form, and as noted, Arnold has provided no evidence that Kelly had a discriminatory motive. And although Olden's failure to copy all of the panelists on the August 8, 2012 email notifying him of his interview could suggest "that [Olden] rushed to pull together a panel for an interview the outcome [of] which was already known," *id.* at 5; *see also id.* Ex. 5, it is not sufficient to permit a reasonable jury to return a verdict for Arnold. *Liberty Lobby*, 477 U.S. at 249 ("[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.").

Arnold protests that he was deprived of necessary information, in large part because the individuals he deposed did not remember relevant details about his interview and because he could not locate Kelly or one of the interview panelists. Pl.'s Mot. for Summ. J. at 4, 8–9; Pl.'s Reply at 13–14. But under Rule 56, Arnold bears the burden of supporting his allegations with citations to "affidavits, declarations, or other competent evidence, setting forth specific facts showing that there is a genuine issue for trial." *Kilby-Robb*, 246 F. Supp. 3d at 192. And the deposition testimony Arnold elicited contradicts his theory. *Cf. Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly

11

contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."). For example, two members of the interview panel testified that they were not aware of any plan by Olden to "hold[] a job open to give . . . Kreager time to attempt to qualify for the job," Pl.'s Mot. for Summ. J. Ex. 15, at 40 (quotation), Dkt. 41-15; *id.* Ex. 16, at 44, Dkt. 41-16, and they had never "received any information that . . . Kreager had already been selected" before Kreager's or Arnold's interviews, *id.* Ex. 15, at 9–10; *id.* Ex. 16, at 10 (quotation). Without more, the Court cannot conclude that Arnold's accusations about Olden's machinations amount to more than an "unsupported claim of conspiracy, derived only from [Arnold's] speculation regarding the intentions of third parties of which []he has no personal knowledge." *Kilby-Robb*, 246 F. Supp. 3d at 199.

### C. Arnold's Specific Evidence of Age Discrimination

Even if Olden did manipulate the selection process, Arnold has not provided sufficient evidence to show that a reasonable jury could find that Olden failed to promote Arnold because of his age. *Cf. id.* at 200 ("[T]his theory, even if credited, does nothing to establish that the 'senior officials' who 'orchestrated' [the plaintiff's] nonselection did so because of her race, age, or color."). To support his claim that relevant decisionmakers were motivated by his age, Arnold emphasizes two additional pieces of evidence. First, Arnold cites a February 10, 2018 email in which he recounted that Scholz, "[o]n at least [three] occasions," discussed how he and other men dye their hair. Pl.'s Reply Ex. 2, at 1; *see also id.* at 4. Second, he asserts that at a meeting held almost a year before his interview, Olden asked him about his age. According to Arnold, another coworker then commented that Arnold was older than expected and the group "laughed and went on for approximately 15 minutes about [Arnold's] age." *Id.* at 4. These allegations,

assuming they can be supported by admissible evidence, do not create a genuine issue of material fact.

Although age-based statements can be relevant to a finding of pretext, "an isolated [age]-based remark unrelated to the relevant employment decision [cannot], without more, permit a jury to infer discrimination." *Morris*, 825 F.3d at 669; *see also id.* at 669, 672 (holding that the plaintiff established pretext, in large part because the decisionmaker did not make a few "stray" remarks but instead made "repeated, disparaging comments about white employees," including "[t]he little white woman better stand in line . . . . This is [the Environmental Protection Agency]; we can whip her into shape," "[i]f the white woman up there won't promote [a black employee], I will," "those white boys will learn a lesson now," and a comment about "nasty little white boys" (alterations omitted)). Here, the cited remarks were few in number; they do not appear to have been made during, or in close temporal proximity to, the decision-making process; and they did not trade on "arbitrary stereotypes and prejudices about older workers' abilities" or otherwise suggest that Arnold was inferior because of his age. *Steele*, 899 F.3d at 951 (internal quotation marks omitted); *see also id.* at 950 (holding that summary judgment was inappropriate, in part because a participant in the disputed termination decision told the plaintiff, among other things, that "older employees are 'stubborn,' 'difficult to work with,' and 'cantankerous'," and the participant once "pointed to a particular older person as a case study in why it's not good to have lots of older employees" (internal quotation marks omitted)). In other words, neither the "number," nor the "tenor," nor the timing of the cited remarks support the conclusion that a reasonable jury could find that the Army chose not to promote Arnold because of his age. *Morris*, 825 F.3d at 670 (explaining that several racially-charged statements were "readily distinguishable—whether because of their pervasiveness, severity, or the role of the

13

speaker in the adverse action—from those [the D.C. Circuit] has said would not permit a jury to infer discrimination").

The other allegations in Arnold's complaint do not change this conclusion. *See Richardson v. United States*, 193 F.3d 545, 548 (D.C. Cir. 1999) (explaining that district courts must read all filings by a *pro se* plaintiff together). Arnold alleges that Scholz asked him to identify his age in two meetings at some point during his employment, Compl. at 3, and that she emailed him a "memorandum" on September 5, 2012 that allegedly attempted to blame his age for his failure to carry an "on call cell phone" the previous weekend, *id.* Ex. 4, at 1. He also states that he heard that Olden played a role in a 2010 decision not to promote Arnold to a different position and that the decisionmaker there made a discriminatory comment. *Id.* at 5. But these assertions fail to show pretext for the same reasons that his conspiracy allegations fail: they are unsupported by the evidence. The only evidence Arnold cites to support any of these allegations is the September 5, 2012 "memorandum" Scholz wrote, and that memorandum does not reference Arnold's age at all. No reasonable jury could find, on the basis of the evidence in the record, that the Army choose not to promote Arnold because of his age.[1]

## CONCLUSION

For the foregoing reasons, the Court denies Arnold's Motion for Summary Judgment and grants the Army's Cross-Motion for Summary Judgment. A separate order consistent with this decision accompanies this memorandum opinion.

---

[1] Arnold also alleges that he was forced to "leave Germany [in 2013] in less than 45 days, the minimum time for a person to report somewhere else," and he contends that he "subsequently learned that forcing [him] out would make it easier for the [Army] in the [d]iscriminatory selection process." Pl.'s Reply at 7. But Arnold does not explain how his transfer "would make it easier" for the Army to discriminate against him or how it otherwise suggests that the 2012 decision not to promote him was motivated by age discrimination. Without more, the Court cannot conclude that Arnold's transfer supports an inference of pretext.

_____
DABNEY L. FRIEDRICH
United States District Judge

December 21, 2018